UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____ )
                                     )
DISABILITY LAW CENTER, INC.          )
                                     )
        Plaintiff,                   )
                                     )
            v.                       )        Civil Action No. 07-cv-10463-MLW
                                     )
MASSACHUSETTS DEPARTMENT             )
OF CORRECTION, et al.                )
                                     )
        Defendants.                  )
_____ )

**ORDER ON DISABILITY LAW CENTER, INC.'S RENEWED MOTION
TO COMPEL PRODUCTION OF DOCUMENTS BY
MASSACHUSETTS CORRECTIONAL HEALTH PROGRAM**

January 21, 2011

Boal, M.J.

INTRODUCTION

        Plaintiff Disability Law Center, Inc. ("DLC") has sued the Massachusetts Department of

Corrections ("DOC") along with several DOC officials, challenging the placement of mentally ill

prisoners in segregation facilities run by DOC.  DLC alleges that such placement constitutes

cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the

United States Constitution, and that the DOC's failure to address the problem violates both the

Rehabilitation Act of 1973, 29 U.S.C. § 794, and the American with Disabilities Act, 42 U.S.C. §

12131, et seq.  DLC, a not-for-profit Massachusetts corporation, has brought suit on behalf of all

Massachusetts prisoners with mental illnesses.

        DLC served a subpoena on non-party University of Massachusetts Correctional Health

Program ("UMCHP") seeking certain documents from UMCHP.  From 2003 to June 30, 2007, UMCHP provided medical and mental health services to prisoners in DOC facilities.[1]

This matter is now before the Court on DLC's motion to compel production of documents by UMCHP, which has asserted that the documents are protected by the psychotherapist-patient privilege.[2]  For the following reasons, DLC's motion is ALLOWED in part and DENIED in part, as set forth below.

### PROCEDURAL BACKGROUND

DLC commenced this case on March 8, 2007.  (Docket No. 1).  On October 9, 2007, DLC caused a subpoena to be served on UMCHP seeking the production of certain documents regarding the care provided to certain prisoners by UMCHP.  (See Declaration of Alison E. Hickey in Support of Plaintiff's Motion to Compel Production of Documents from Third Party University of Massachusetts Correctional Health Program Pursuant to a Subpoena, Docket No. 63, at Exhibit A).  UMCHP initially objected to the subpoena on the grounds that it was overly broad in scope and sought documents protected by the attorney-client and/or medical peer review privilege.  (See id. at Exhibit B).  DLC and UMCHP engaged in negotiations regarding UMCHP's objections to the subpoena but were not able to resolve their disputes. (See id. at Exhibits C to F).

On July 31, 2008, DLC filed a motion to compel production of documents by UMCHP.

_____

[1] In 2003, UMCHP succeeded to another program within the University of Massachusetts Medical School, whose contract with the DOC for the provision of medical and mental health services began in 1998.

[2] DLC cannot obtain these documents from the DOC, as DOC has represented that they are not within DOC's possession, custody or control.

(Docket No. 61). UMCHP filed an opposition to the motion, an accompanying memorandum, and a motion requesting that the District Court stay discovery. (Docket Nos. 72-74). DLC objected to the production of the documents on the grounds that the documents sought by DLC were irrelevant and were protected from disclosure under HIPAA, the attorney-client privilege, and the psychotherapist-patient privilege. (Docket No. 73). At that time, UMCHP indicated that it would release records for which DLC provided a valid authorization. (Id. at p. 2).

On March 4, 2009, the District Court stayed the case while DLC and the DOC pursued settlement negotiations. On March 22, 2009, the District Court denied DLC's motion to compel documents without prejudice. (Docket No. 88). The District Court also granted UMCHP's request for a stay of discovery without prejudice to reconsideration if requested. (Id.).

The District Court lifted the stay of discovery between DLC and DOC on February 9, 2010, after settlement negotiations proved unsuccessful. On April 26, 2010, DLC filed a motion to lift the stay of discovery between it and UMCHP and to enter its renewed motion to compel production of documents from UMCHP. (Docket No. 123).

<u>The August 2010 District Court Proceedings</u>

On August 11, 2010, the District Court held a hearing concerning DLC's motion to lift the stay of discovery between it and UMCHP and to allow DLC's renewed motion to compel UMCHP to produce documents. The District Court found that the documents sought by DLC were relevant to the case pursuant to Fed. R. Civ. P. 26(b)(1). (Docket No. 134). In addition, the District Court found that the revised protective order satisfied the requirements of HIPAA. (Id.) Accordingly, after the hearing, the sole remaining issue was whether the federal psychotherapist-patient privilege precludes the production of any or all of the documents sought

by DLC from UMCHP.  (Id.)

By order dated August 12, 2010, the District Court lifted the stay of discovery between DLC and UMCHP.  (Id.).  The District Court also ordered the parties to cooperate in attempting to obtain releases from inmates or their representatives, whose medical or mental health records are involved in the documents sought by DLC.  (Id.).  In addition, the District Court ordered UMCHP to file the following documents by August 27, 2010:

(1)  Supplemental memoranda addressing the applicability of the psychotherapist-patient privilege to the documents at issue and whether the privilege has been waived with regard to any or all the documents;

(2) One or more affidavits addressing what, if anything, inmates at DOC facilities were told regarding the confidentiality of their communications to psychotherapists in the course of the diagnosis or treatment that they received while in DOC custody during the relevant period;

(3) A privilege log regarding the documents to which UMCHP asserts the federal psychotherapist-patient privilege applies; and

(4) Under seal redacted and unredacted copies of the documents sought by DLC for possible in camera review. (Id.).

UMCHP complied with the District Court's August 12, 2010 order (Docket Nos. 139-141), and, inter alia, filed under seal redacted and unredacted copies of the documents sought by DLC for in camera review.   DLC responded to UMCHP's submissions on September 3, 2010. (Docket No. 142).  On September 10, 2010, UMCHP filed a reply to DLC's memorandum. (Docket No. 143).

<u>The January 2011 Proceedings Before This Court</u>

On October 1, 2010, Chief Judge Mark L. Wolf referred the case to this Court for discovery only.  (Docket No. 146).  On January 5, 2011, after having reviewed the records <u>in camera</u>, this Court held a hearing on the instant motion.  DOC reaffirmed that it takes no position with respect to the instant motion.[3]

At the hearing, the parties stated that DLC had provided releases for a number of inmates' mental health records, which rendered the motion to compel moot as to some of the records sought by DLC.  As of the date of the hearing, the mental health records of only four inmates remained at issue.

At the hearing, DLC stated that it had provided UMCHP with a release from the brother and next of kin of one inmate.  UMCHP rejected this release arguing that a release for the records of a deceased inmate is only valid if it is executed by a legally appointed administrator or executor of the estate.  DLC had also provided UMCHP with a release from the executor for the estate of another inmate that expired prior to the production of documents.  UMCHP argued that the release is therefore not valid.  DLC maintained that the release had not expired at the time it was provided to UMCHP and therefore is valid.

Accordingly, in order to facilitate the resolution of the remaining issues presented by the instant motion, after expressing its preliminary view that some of UMCHP's redactions were not supported by the federal psychotherapist-patient privilege, this Court ordered UMCHP to file under seal redacted and unredacted copies of the mental health records of the four inmates at

---

[3] In response to the District Court's July 27, 2010 order, DOC stated that it took no position with respect to the subject motion to compel.  (Docket No. 130).

issue for further in camera review.  (Docket No. 163).  In addition, this Court ordered UMCHP

to file, pursuant to Fed. R. Civ. P. 45(d)(2), a revised and more detailed privilege log regarding

the records remaining at issue to which UMCHP asserts the federal psychotherapist-patient

privilege applies.  (Id.).  Finally, the Court ordered DLC to file certain documents with respect to

the release that had arguably expired.  (Id.).

On January 12, 2011, DLC informed this Court that DLC had provided UMCHP with a

new release for the inmate's estate whose release had expired.  UMCHP informed DLC that it

would accept that release and would provide DLC with the requested records.  Accordingly, only

records related to three inmates remain at issue.

UMCHP has provided to the Court both redacted and unredacted copies of the records of

inmates that UMCHP still contends are subject to the psychotherapist-patient privilege (the

"Records").   Nonetheless, in response to this Court's comments regarding its preliminary review

regarding some of the redactions, UMCHP unredacted some portions of the documents.  The

only issue before the Court is whether the redacted portions of the Records are subject to the

psychotherapist-patient privilege and, if so, whether the privilege has been impliedly or

expressly waived.  After having reviewed the unredacted documents in camera, for the following

reasons, this Court finds that DLC has provided a valid waiver with respect to one of the

remaining inmates' records but that the pscyhotherapist-patient privilege applies to the

remaining redacted information.

<u>STATEMENT OF FACTS</u>

UMCHP was the sole provider of medical and mental health services to prisoners in

DOC facilities from 1998 to 2007.  By the instant motion, DLC seeks, among other things,

suicide and suicide related morbidity and mortality reviews in UMCHP's possession, and all notes or other documentation related thereto, for inmates in segregation or segregation-like units for the time period from September 15, 2005 until UMCHP ceased providing mental health services to DOC, in or about July 2007 (the "Morbidity and Mortality Files").  UMCHP and DOC have advised DLC that Morbidity and Mortality reviews were conducted for ten inmates, all of whom committed suicide.  (Docket No. 142, p. 6).

The Morbidity and Mortality Files contain medical and mental health records of inmates. (5/10/10 Affidavit of Dyana Nickl, Docket No. 124-4 (" 5/10/10 Nickl Aff.") at ¶ 3).  Those files include progress notes from medical providers, physician orders, mental health evaluation forms, mental health progress notes, laboratory test results, specialty consult records, medication records, medical history and screening forms filled out by the medical providers at UMCHP, sick call requests, as well as medical records from outside medical care providers and consultants. (Id.).  UMCHP asserts that some of the documents included in the Morbidity and Mortality Files are protected by the psychotherapist-patient privilege.

UMCHP does not have a policy or procedure specific to the confidentiality of inmates' communications with psychotherapists.  (8/26/10 Affidavit of Dyana Nickl, Docket No. 141("8/26/10 Nyckl Aff."), at ¶ 4).  It does, however, have privacy and confidentiality policies that apply to all healthcare treatment.  (Id. at ¶ 5 and Exhibits A to C thereof).

UMCHP policy generally precludes the release of health information absent a release. Policy No. 62.01, entitled "Release of Health Record Information to Department of Correction and Other Individuals," states that "[n]o health record information may be released to anyone, except DOC Health Services personnel without the written consent of the inmate."  (Exhibit A to

8/26/10 Nickl Aff. at p. 1).  A release must be executed by the inmate or his/her executor and be current (within 60 days).  (Id.).

The policy contains certain limited exceptions to the general preclusion of release of health record information.  For example, it states that "[t]he Department of Correction Superintendents or designee may request clinical information on a "need to know" basis as defined. . . .  In all cases, any information provided under this provision shall be limited to the most pertinent details and shall not include access to the medical record, except by the Director of DOC Health Services and/or any Superintendent."  (Id. at p. 3).  "Need to know" is defined as "the release of health record information by the most senior qualified health personnel on site (Health Services Administrator or Medical Director) to Superintendent or designee to preserve the health of the inmate concerned; to enhance the care of the inmate; to protect the health of others; to exercise the duty to warn others when their safety is threatened."

Policy No. 62.01 also allows access to health information by attorneys of the Department of Correction and UMCHP "without the consent of the inmate for the purpose of defending the Department against suit or when the Department is seeking a court order for compliance with medical treatment procedures."  (Id. at p. 2).

Policy No. 61.00, entitled "Confidentiality of Health Records and Health Information" provides for the confidentiality and storage of health records, and the protection of the inmate's confidentiality from disclosure of certain confidences entrusted to practitioners during a course of treatment.  Only individuals who require access to health records for the purpose of providing mental, dental, or mental health services, audit and quality improvement activities will have access to the health care record.  (8/26/10 Nickl Aff. at ¶ 8 and Exhibit B thereto).

-8-

Finally, Policy No. 9.00, entitled "Privacy of Care," provides that "[h]ealthcare procedures will be performed in privacy with consideration for the safety and security for the healthcare provider."  (Exhibit C to 8/26/10 Nickl Aff. at p. 1).  It also provides that "[w]hen the presence of security staff is required for the staff safety, every effort will be made to provide auditory and visual privacy."  (Id.).

Inmates are informed of the existence of the UMCHP policies and procedures, and copies of all policies and procedures, including all of the policies noted above, were available in the library at each DOC institution prior to July 2007.  (8/26/10 Nickl Aff. at ¶ 10).  UMCHP has not stated what, if anything, an inmate was told by his or her psychotherapist with regard to the confidentiality of their communications.  (Id. at ¶ 11).  DLC acknowledged at the hearing that there is no evidence that the inmates in question were individually advised regarding UMCHP policies and procedures concerning inmates' medical records.

ANALYSIS

I.      <u>Standard of Review</u>

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).  <u>Miller v. Allstate Fire & Cas. Ins. Co.</u>, No. 07-260, 2009 WL 700142, *2 (W.D. Pa. Mar. 17, 2009) (citation omitted).  Thus, the production sought by DLC must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) either admissible in itself or

reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).

Pursuant to the District Court's August 12, 2010 Order, the documents sought by DLC are

relevant and must be produced, unless they are privileged.

Rule 45 provides that a person subject to a subpoena may within a specified time period

avoid or limit compliance in a number of ways: (1) by serving written objections pursuant to

Rule 45(c)(2)(B); (2) by moving to quash or modify pursuant to Rule 45(c)(3); or (3) by moving

for a protective order under Rule 26(c).  Fed. R. Civ. P. 45(c).  If the responding party chooses

the first option, the party serving the subpoena may then move the issuing court for an order

compelling production or inspection.  Fed. R. Civ. P. 45(c)(2)(B)(i).

A person withholding subpoenaed information on the basis of privilege must "(i)

expressly make the claim; and (ii) describe the nature of the withheld documents ... in a manner

that, without revealing information itself privileged or protected, will enable the parties to assess

the claim."  Fed. R. Civ. P. 45(d)(2)(A).

II.     Choice of Law

Fed. R. Evid. 501 provides, in relevant part:

> Except as otherwise required by the Constitution of the United States or provided
> by Act of Congress or in rules prescribed by the Supreme Court pursuant to
> statutory authority, the privilege of a witness, person, government, State, or
> political subdivision thereof shall be governed by the principles of the common
> law as they may be interpreted by the courts of the United States in the light of
> reason or experience. . . .

 Thus, because DLC has brought federal question claims, federal common law regarding

privilege applies.[4]  See United States v. Whitney, No. 05-40005-FDS, 2006 WL 2927531, *2 (D.

---

[4] In their pleadings, the parties rely on Massachusetts law of privilege.  As noted by the
District Court, this reliance is mistaken to the extent that the parties argue that this Court must

Mass. Aug. 11, 2006) ("the existence of any privilege in a federal proceeding is clearly governed by federal, not state, law.").

III.     The Psychotherapist-Patient Privilege

The federal psychotherapist-patient privilege was first recognized by the United States Supreme Court in Jaffee v. Redmond, 518 U.S. 1, 9-10 (1996). "Like the spousal and attorney-client privileges," the Supreme Court held, "the psychotherapist-patient privilege is rooted in the imperative need for confidence and trust." Id. at 10 (internal punctuation and citation omitted). Thus, the Supreme Court found, "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." Id. Because "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment[,]" the Supreme Court rejected a balancing test applied by various courts, and refused to make the application of the privilege "contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure[.]" Id. at 10, 17. Finally, the Supreme Court recognized that the privilege "serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." Id. at 11. The Supreme Court did not attempt to flesh out the full contours of the privilege stating that "it is neither necessary nor feasible to delineate its full contours in a way that would govern all conceivable future questions in this area." Id. at

---

follow the state law of privilege. While the Court may look to state law to fill in gaps in federal common law, state law cannot supply the rule of decision. See Speaker v. County of San Bernardino, 82 F. Supp. 2d 1105, 1109 (C.D. Cal. 2000).

18 (internal punctuation and citation omitted).

The burden is on the party asserting the privilege to establish that the privilege applies. In re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71, 73 (1st Cir. 1999).  "Hence, a party asserting the psychotherapist-patient privilege must show that the allegedly privileged communications were made (1) confidentially (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis or treatment."  Id.  Once that showing has been made, the privilege is absolute.  See Jaffee, 518 U.S. at 17.  Thus, a Court may not permit opposing counsel "to see [covered] materials . . . regardless of its assessment of the interests of justice."  In re Sealed Case (Medical Records), 381 F.3d 1205, 1214 (D.D.C. 2004) (internal quotation marks omitted).  Therefore, if a court determines that the privilege applies, a protective order permitting the disclosure of the covered materials to opposing counsel would not be appropriate.  See id.

IV.    Implied Waiver

The Supreme Court has recognized that, as in the case of other testimonial privileges, the patient may waive the psychotherapist-patient privilege.  Jaffee, 518 U.S. at 15 n. 14.  DLC argues that the psychotherapist-patient privilege has been waived because, according to UMCHP policies, an inmate is advised that communications will be disclosed in certain situations, and thus are not confidential.  (DLC Memo at 4-5).[5]  This Court disagrees.

"Waiver is the voluntary and intentional relinquishment of a known right."  United States v. Wimberly, 60 F.3d 281, 285 (7th Cir. 1995).  A reading of UMCHP policies establishes that it agreed to keep any information revealed during treatment confidential except in very specific

---

[5] Cites to "DLC Memo" refer to the Response of Disability Law Center to the University of Massachusetts Correctional Health Program's Memorandum Regarding the Psychotherapist-Patient Privilege and Other Submissions (Docket No. 142).

circumstances.  UMCHP policies inform the inmates that their records may be accessed in the event of litigation: "Attorneys for the Department of Correction and UMass Correctional Facility may be allowed access to the medical record without the consent of the inmate for the purposes of defending the Department against suit . . ."  (Exhibit A to 8/26/10 Nickl Aff.).  Inmates are informed of the existence of the policies, which are also available at each facility's library.  (See 8/26/10 Nickl Aff. at ¶ 10).

UMCHP's policies regarding confidentiality have to be read as a whole.  A fair reading of the policies is that the overriding intent was to keep inmates' medical records, including mental health records, confidential.  The policies themselves cannot be viewed as a waiver by the inmates of their rights to confidentiality.  While the policies mention the possibility that inmates' records may be accessed by attorneys for the DOC and UMCHP under certain circumstances, nothing in the policies advises the inmates that the records may be disseminated to others outside of DOC or UMCHP.  Moreover, there is no evidence that any of the inmates at issue actually read the policies or signed any acknowledgment form.  In sum, this Court concludes that UMCHP policies do not create an implied waiver of the psychotherapist-patient privilege so that the inmates' mental health records become discoverable by DLC.

V.   Express Waiver Of The Privilege By Inmates' Next of Kin

UMCHP acknowledges that an express waiver of each of the inmates' privilege could be obtained from the inmate himself or herself, of if the inmate is deceased,[6] from the executor of

---

[6] UMCHP's position with respect to the redacted documents assumes that the psychotherapist-patient privilege survives the death of the patient, and DLC has not disputed that contention.  In Jaffee, the Supreme Court compared the psychotherapist-patient privilege to the attorney-client privilege.  Jaffee, 518 U.S. at 10 ("Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and

his estate.  (See Docket 139, p. 6).  DLC maintains that it is sufficient to obtain an express

waiver from a "representative" of the inmate's estate, such as next of kin.  DLC has obtained a

release from one inmate's brother and next of kin.  At the hearing, DLC represented that both of

the inmate's parents are deceased, and the inmate had no spouse or children.  UMCHP does not

challenge this assertion.  DLC further represented that because there was no estate to administer,

no executor or administrator was ever appointed.  DLC argues that this release should be

sufficient to waive the privilege on behalf of the inmate and release the records to DLC.

UMCHP has refused to accept this waiver and will accept only a waiver from an administrator or

executor.  (UMCHP Memo at 6, n. 2).[7]

The parties have not provided, nor has this Court found, any federal caselaw directly

speaking to this issue.  Nevertheless, the Supreme Court prescribed several rules of privilege that

were not enacted by Congress as part of the Federal Rules of Evidence.  One of these was Rule

504, which included a psychotherapist-patient privilege.  Courts have looked at unenacted Rule

504 as a resource for help in defining the contours of the privilege, although less so after the

Supreme Court's decision in Jaffee.  Rothstein, Paul, et al., Federal Testimonial Privileges, § 3:9

(2d ed. 2009-2010).  The fact that Congress did not enact this rule into law does not lessen its

value as a resource to define the scope of the privilege.  See United States v. Romo, 413 F.3d

---

trust.'") (quotations omitted).  Therefore, the holding in Swidler & Berlin v. United States
suggests that the psychotherapist-patient privilege survives the death of the patient.  524 U.S.
399, 407-08 (1998) (holding that the attorney-client privilege is absolute and survives the death
of the client).

[7] Cites to "UMCHP Memo" refer to Non-Party, University of Massachusetts Correctional
Health Program's, Memorandum Regarding the Applicability of the Psychotherapist-Patient
Privilege to the Materials Sought by Plaintiff in its Motion to Compel, Docket No. 139.

1044, 1047-48 (9th Cir. 2005) (citations omitted) ("because the Supreme Court has recognized the psychotherapist-patient privilege and cited favorably to proposed Rule 504 as proposed, 'the contents of the Proposed Rule have considerable force and should be consulted when the psychotherapist-patient privilege is invoked.'").   The rule was not rejected by Congress because of any decision that it was in error on the merits, but on the theory that rules of privilege should be left to the federal courts.   See In re August 1993 Regular Grand Jury (Medical Corp. Subpoena II), 854 F. Supp. 1392, 1396 (S.D. Ind. 1993).

Proposed Rule 504 states that "[t]he privilege may be claimed by the patient, by his guardian or conservator, or by the personal representative of a deceased patient."  The rule does not define who qualifies as a personal representative.  The use of the phrase personal representative would appear to refer to a person who manages the legal affairs of another, such as an executor or administrator.  See BLACK'S LAW DICTIONARY at 1304 (7th ed. 1999) (defining personal representative as "[a] person who manages the legal affairs of another because of incapacity or death, such as the executor of an estate.").  The definition of the phrase "personal representative," however, does not explicitly foreclose the possibility that someone other than a legally appointed executor or administrator may manage the legal affairs of a deceased individual in the absence of a legally appointed representative.

Some jurisdictions explicitly allow heirs or next of kin to waive medical privileges.  See, e.g., Thomas v. State, 656 N.E.2d 819, 822 (Ind. Ct. App. 1995) ("[t]he privilege is held by the patient and only the patient, or his heirs or personal representatives after his death, may waive the privilege"); Sun Health Corp. v. Myers, 205 Ariz. 315, 319 (Ariz. App. Div. 2003) ("heirs or a decedent's next of kind may waive the decedent's [doctor-patient] privilege").

In the context of the attorney-client privilege,[8] Wigmore has noted, "the power of an heir may also be conceded if we remember that the heir, first, is at least equally interested [as the executor] in preserving the ancestor's reputation, and, second, has an equal [to the executor] moral claim to protect the deceased's property rights from unwarranted diminution."  8 Wigmore on Evidence § 2391 (1961).  Accordingly, "it is usually agreed that the deceased's . . . representative (and probably also the heir) may waive the privilege."  Id.

Here, recognizing waiver of the privilege by the inmate's brother and next of kin would appear appropriate, particularly where there is no executor or administrator or other immediate family member available to represent the deceased inmate's interests.  Next of kin are able to represent the deceased's interest in a manner equivalent to the executor.  Accordingly, this Court finds that the inmate's brother and next of kin may waive the psychotherapist-patient privilege on behalf of the deceased inmate and orders UMCHP to produce an unredacted copy of those records to DLC.

VI.     Analysis of Records

Here, DLC argues that the privilege log and other general descriptions of the allegedly privileged material provided by UMCHP are not sufficient to determine whether the Records are in fact protected by the psychotherapist-patient privilege.  (See DLC Memo at 3-4).  While the Court is mindful of DLC's concerns regarding the privilege log, this Court reviewed the Records and determined that the redacted information is indeed covered by the psychotherapist-patient

---

[8] As stated in footnote 7, supra, in Jaffee, the Supreme Court compared the psychotherapist-patient privilege to the attorney-client privilege.  Jaffee, 518 U.S. at 10.  In addition, in defining the contours of the psychotherapist-patient privilege, courts have relied on cases defining the attorney-client privilege.  See, e.g., Hucko v. City of Oak Forest, 185 F.R.D. 526, 529 (N.D. Ill. 1999).

privilege.[9]  Based on this Court's initial review, the Court expressed concern that materials such as, inter alia, dates, signatures, the first sentence of progress notes stating that a meeting occurred, and administrative notes, were not privileged.  UMCHP is no longer seeking to redact such material.  This Court's re-review of the documents compels the conclusion that the remaining redactions are appropriate.  Indeed, the bulk of the redacted information contains progress notes, which represents core privileged material.  See Jaffee, 518 U.S. at 18 (" . . . the notes taken during their counseling sessions are protected from compelled disclosure . . .").  Accordingly, UMCHP will only be ordered to produce the documents for which there is no valid waiver, but in redacted form.

ORDER

For the foregoing reasons, this Court ALLOWS DLC's motion to compel in part and DENIES it in part, and orders that, within one week of the date of this decision:

1. UMCHP shall produce an unredacted copy of the Records of the inmate for which DLC has provided a next of kin release; and

2. UMCHP shall produce a copy of the remaining redacted Records.

 /s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

---

[9] In addition, the Court ordered UMCHP to file a more detailed privilege log, which it did on January 7, 2011.