UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DISABILITY LAW CENTER, INC.,<br><br>      Plaintiff,<br><br>     v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION; HAROLD W. CLARKE, COMMISSIONER OF THE MASSACHUSETTS DEPARTMENT OF CORRECTION, in his official capacity; JAMES BENDER, DEPUTY COMMISSIONER OF THE MASSACHUSETTS DEPARTMENT OF CORRECTION, in his official capacity; VERONICA MADDEN, ASSOCIATE COMMISSIONER OF REENTRY AND REINTEGRATION OF THE MASSACHUSETTS DEPARTMENT OF CORRECTION, in her official capacity; JOHN MARSHALL, JR., ACTING SUPERINTENDENT OF MCI-CEDAR JUNCTION AND ASSISTANT DEPUTY COMMISSIONER – NORTHERN SECTOR, in his official capacities; and TIMOTHY HALL, ACTING ASSISTANT DEPUTY COMMISSIONER – SOUTHERN SECTOR, in his official capacity,<br><br>      Defendants | CIVIL ACTION<br>NO. 07-10463 (MLW) |

**JOINT STATUS REPORT OF THE PARTIES**

  Pursuant to this Court's Amended Scheduling Order (Docket No. 119), Plaintiff Disability Law Center, Inc. ("DLC") and Defendants (collectively, "DOC") hereby jointly submit this status report to the Court in advance of the March 28, 2011 Status Conference.

**I.  PROSPECTS FOR SETTLEMENT**

  **A.  Plaintiff's Statement:**

  As this Court is aware, the parties engaged in substantial settlement negotiations in 2007, 2008, and 2009. Those negotiations terminated in or about November 2009. *See* Plaintiff's

Request to Lift the Stay of Discovery and Proposed Amended Scheduling Order, dated November 6, 2009 (Docket No. 110).  On February 8, 2011 representatives of counsel for the parties and a Deputy Commissioner of Correction met for several hours to discuss whether to reopen settlement discussions.[1]  The participants engaged in a frank, open and confidential discussion of the status of the case and the possibilities for settlement.  The meeting included some discussion of possible settlement frameworks.  The parties have scheduled additional confidential settlement meetings and have agreed to a format for the meetings.  The initial meetings will take place in the next two weeks.

While it is impossible to predict the outcome of the scheduled settlement discussions, the parties have agreed to move forward as quickly as possible and in good faith.  Because both parties desire to continue to move this case forward, neither party is requesting a stay of this litigation during the settlement discussions at this time.

DLC is available to provide the Court with additional information at the Status Conference, as needed.

**B.     Defendants' Statement:**

Following the most recent site visits of DLC's experts to DOC facilities, DLC counsel initiated contact with defendants' counsel to suggest exploring whether it might be beneficial to reinstitute discussions of a possible settlement.[2]  Counsel for the parties and DOC Deputy Commissioner Veronica Madden met on February 8, 2011. Additional meetings are scheduled for March 29, March 30 and April 8, 2011.

---

[1] DOC implies in Section I.B that DLC initiated contact regarding settlement as a result of its experts visits.  That statement is unfounded.

[2] On his fourth and final site visit, DLC's expert psychologist, Dr. Craig Haney, interviewed inmates at MCI-Cedar Junction, Souza Baranowski Correctional Center (SBCC), and Old Colony Correctional Center (OCCC) from November 29 through December 3, 2010. On her sixth and final site visit, DLC's expert psychiatrist, Dr. Kathryn Burns, interviewed inmates at OCCC, MCI-Cedar Junction, SBCC, and MCI-Framingham from January 3 through January 7, 2011.

**II.   SUMMARY JUDGMENT**

    A.   <u>**Plaintiff's Statement:**</u>

Because discovery is not yet complete (as discussed below), DLC reports that it has insufficient information at this time to determine whether a motion for summary judgment is or will be in order. Among other things, DLC will need to consider its experts' reports, any report of DOC's expert, the deposition testimony of DOC's expert and forthcoming productions from DOC and/or MHM Services Inc. ("MHM"), DOC's mental health care provider, before it can decide whether to file a motion for summary judgment.

In response to DOC's statement below, in Section II.B, DLC does not believe that a joint status report to the Court is an appropriate vehicle for a party to preview its purported arguments for summary judgment, and DLC disputes both the unsupported factual claims and legal arguments made by DOC in its statement. For example, DLC's experts have informed DLC that a significant number of prisoners with serious mental illness remain in segregation units, including the DDU. Similarly, because DOC's document production -- including documents pertaining to DOC's "new initiatives" -- is not complete, *see* Section III.A, DLC cannot evaluate DOC's claim that because of a number of "significant initiatives to enhance the delivery of mental health services [made] throughout the course of this litigation," DLC cannot sustain its burden.

    B.   <u>**Defendants' Statement:**</u>

For the following reasons, the defendants believe that upon completion of expert discovery, there will be a proper basis for defendants to file a motion for summary judgment:

The complaint seeks prospective relief upon its averment that the defendants subject certain inmates with serious mental illness to segregated confinement, in contravention of the Eighth and Fourteenth Amendments to the United States Constitution, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the American with Disabilities Act, 42 U.S.C. § 12131, *et seq*. DLC asks the Court to (1) enjoin defendants from confining inmates with serious mental illness in

segregation for more than one week, and (2) require DOC to construct maximum security mental health residential treatment units as an alternative to segregation. Because adjudication of this case is subject to the Prison Litigation Reform Act, 18 U.S.C.A. § 3626, the existence of a *current and ongoing* federal right is the prerequisite for prospective relief to issue. See <u>Kosilek v. Maloney</u>, 221 F.Supp.2d 156, 183 (D.Mass. 2002) (Wolf, C.J.) ("the fact that this case now only involves possible declaratory and prospective injunctive relief, rather than monetary damages, is important. The court must focus on the circumstances at the time of trial…").

Prior to the initiation of this litigation, DOC had commenced significant initiatives to enhance the delivery of mental health services, and the process has been ongoing throughout the course of this litigation.[3] In this regard, defendants have drawn on the expertise and recommendations of their expert psychiatrist, Dr. Jeffrey Metzner. The status of defendants' initiatives includes the following:

1.    DOC has implemented a definition of Serious Mental Illness (SMI) consistent with definitions utilized in other jurisdictions. SMI is a clinical designation made by qualified mental health clinicians based upon diagnosis and the inmate's level of functional impairment. This

---

[3] Defendants apprised the Court of the initiatives at the initial scheduling conference, and have updated the Court over the course of this litigation. See Docket No. 39, February 21, 2008, Defendants' Motion for a Status Conference, ¶ 2 - describing the December 2006 Request for Response for a mental health vendor to provide improved mental health services; provisions of DOC's November 2007 Draft Plan for the Management of Mental Health Needs within the Massachusetts Department of Correction, and the opening of the Secure Treatment Program at SBCC; Docket No. 117, January 26, 2010, Memorandum in Support of Defendants' Proposed Amended Scheduling Order (Redacted Version) (¶ 1 – relocation of maximum security RTU to OCCC as first step in conversion of OCCC to a specialized facility for mentally ill inmates; ¶ 2 - development of a mental health classification process; ¶ 3 creation of a BMU at MCI-Cedar Junction; ¶ 4 – adoption of an exclusionary rule to preclude confinement of inmates with serious mental illness in the DDU beyond and established period of time).

designation defines the population of inmates for whom long-term segregation may be "contraindicated."

2. DOC has implemented a mental health classification system. Mental health classification is a clinical assessment of the level of mental health services required for each inmate as an individual. The levels of service for mentally ill inmates range from case management, to an "outpatient" level of treatment, to residential treatment, to inpatient psychiatric hospitalization.

3. DOC excludes inmates with SMI from long-term segregation, *i.e.*, segregation in the Department Disciplinary Unit (DDU)). Inmates with SMI who are excluded from the DDU are placed in one of two maximum security mental health units, the 15 bed Secure Treatment Program (STP) at the Souza Baranowski Correctional Center (opened February 2008), and the 10 bed Behavior Management Unit (BMU) at MCI-Cedar Junction (opened July 2010). These units provide SMI inmates with approximately 15 hours of weekly out-of-cell mental health treatment and approximately 10 hours of weekly out-of-cell recreation.

4. Inmates with SMI who are in short-term segregation units are being provided weekly out-of-cell clinical contact. Every month, the Central Office Segregation Review Committee, consisting of DOC's Deputy and Assistant Deputy Commissioners; DOC's Directors of Behavioral Health and the Central Inmate Disciplinary Unit; and the mental health provider's Director of Clinical Services, reviews inmates with SMI who are segregated over 30 days in order to hasten their removal from segregation.

5. Inmates who require a "residential" level of care, but who do not require the STP or BMU level of security, are placed in a Residential Treatment Unit (RTU). OCCC operates a

maximum security RTU (50 beds) and a medium security RTU (86 beds). There are medium security RTUs at the North Central Correctional Center (39 beds) and MCI-Framingham (40 beds for women), for a total of 215 RTU beds in DOC.

6. OCCC's operational mission has changed so that the facility now specializes in the treatment needs of male inmates with mental illness.

7. DOC has completed most of the required physical plant renovations for an Intensive Treatment Unit (ITU) at MCI-Framingham to manage inmates in mental health crisis.

8. DOC is formalizing the process for incorporating mental health input in the disciplinary process.

9. DOC is revising its mental health policies to incorporate the new initiatives.

10. DOC has enhanced its Inmate Management System (IMS) to identify mental health classification, SMI status, and incidents of self-injurious behavior by type.

Defendants do not believe that there is a basis for DLC to sustain its burden of proving a current and ongoing violation of federal rights.

III. **CURRENT SCHEDULING ORDER**

    A. **Plaintiff's Statement**

As the Court is aware, on February 7, 2011, DLC filed a Motion to Extend the Deadline for Expert Disclosure and for a Scheduling Conference to Address Remaining Pretrial Deadlines (Docket No. 172). Discovery in this matter closed on December 3, 2010. DOC's production of certain categories of documents remain outstanding as of the date of this report, including (1) certain prisoner mental health and medical records; (2) electronically stored information ("ESI") from fourteen DOC current and former employees which hit for a narrowly tailored list of 34

relevant search terms and the names of certain prisoners; and (3) other more specific documents identified by DLC in a December 10, 2010 letter to DOC counsel (following a meet & confer between the parties with respect to the outstanding discovery).  *See* Joint Status Report of the Parties, dated March 15, 2011 (Docket No. 184) (discussing current status of outstanding discovery more thoroughly, including discovery also outstanding from third party MHM).

On March 18, 2011, this Court (Boal, MJ) ordered DOC to produce the outstanding prisoner records on a rolling basis, with production completed on or before April 15, 2011 (Docket No. 187).  In order to proceed with a scheduling order, DLC requests that this Court enter similar deadlines for DOC's production of the remaining outstanding ESI and other documents.  Further, because the forward-progress of this litigation depends on completion of DOC's productions, DLC requests that the Court enter a scheduling order that proceeds from those deadlines.

Finally, DLC agrees with the scheduling recommendations made by Magistrate Judge Boal in her status report dated March 23, 2011 (Docket No. 188).

**B.     Defendants' Statement:**

Defendants concur with the scheduling recommendations set forth in the Status Report of Magistrate Judge Boal (Docket Entry 188).

Respectfully submitted,

| **DISABILITY LAW CENTER, INC.,** | **THE DEFENDANTS,** |
|---|---|
| By its attorneys, | By their attorneys, |
| | NANCY ANKERS WHITE |
| | Special Assistant Attorney General |
| /s/  Carol E. Head | /s/  William D. Saltzman |
| David Yamin, BBO #562216 | William D. Saltzman |
| david.yamin@bingham.com | BBO #439749 |
| Carol E. Head, BBO #652170 | wdsaltzman@doc.state.ma.us |
| carol.head@bingham.com | Charles W. Anderson Jr. |
| Alison Hickey Silveira, BBO #666814 | BBO # 635016 |

A/74048772.1                                                   7

    alison.silveira@bingham.com
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA  02110-1726
(617) 951-8000

Richard M. Glassman, BBO #544381
    rglassman@dlc-ma.org
Nancy Jane Murphy, BBO #663749
    nmurphy@dlc-ma.org
DISABILITY LAW CENTER, INC.
11 Beacon Street, Suite 925
Boston, MA  02108
(617)723-8455

James Pingeon, BBO #541852
    jpingeon@plsma.org
Leslie Walker, BBO #546627
    lwalker@plsma.org
Bonnie Tenneriello, BBO #662132
    btenneriello@plsma.org
PRISONERS' LEGAL SERVICES, INC.
8 Winter Street, 11th Floor
Boston, MA  02108
(617) 482-2773

Robert Fleischner, BBO #171320
    rfleischner@cpr-ma.org
CENTER FOR PUBLIC REPRESENTATION
22 Green Street
Northampton, MA  01060
(413) 587-6265

James S. Rollins
    *admitted pro hac vice*
    james.rollins@nelsonmullins.com
NELSON, MULLINS, RILEY &
SCARBOROUGH LLP
One Post Office Square, 30th Floor
Boston, MA  02109-2127
(617) 573-4722

Dated:  March 25, 2011

cwanderson@doc.state.ma.us
Sheryl Grant
BBO #647071
sfgrant@doc.state.ma.us
Department of Correction Legal Division
70 Franklin Street, Suite 600
Boston, Massachusetts 02110
(617) 727-3300, Ext. 154

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 25, 2011.

                                                    /s/*Carol E. Head*