# EXHIBIT E





*The Commonwealth of Massachusetts*
*Executive Office of Public Safety and Security*
*Department of Correction*
*Legal Division*
*70 Franklin St., Suite 600*
*Boston, Massachusetts 02110-1327*
*Tel:(617-727-3300 Ext. 124)*
*www.mass.gov/doc*

**Deval L. Patrick**
Governor

**Timothy P. Murray**
Lieutenant Governor

**Mary Elizabeth Heffernan**
Secretary

**Harold W. Clarke**
Commissioner

**James R. Bender**
**Veronica M. Madden**
*Deputy Commissioners*

**Karen Hetherson**
*Acting Deputy Commissioner*

**Nancy Ankers White**
General Counsel

July 8, 2010

By Hand
Carol E. Head, Esq.
Bingham McCutchen LLP
One Federal Street
Boston, Massachusetts 02110-1726

Disability Law Center v. Massachusetts Department of Correction, et al.
D.Mass. No. 07-cv-10463-MLW

Dear Carol:

This letter is in response to the February 12, 2010 letter from Attorney Alison Silveira Hickey requesting the production of numerous documents. The response tracks your request paragraph by paragraph. Please note that the tracking set forth below supersedes the documents lists previously provided to your office by electronic mail, to the extent that the lists may differ. Any errors discovered in the identification and Bates numbering of documents already provided are noted in the inventory contained in this letter. Specific objections and comments are stated in the pertinent paragraphs. I have addressed general issues as follows:

Counsel Eyes Only    Documents are provided for DLC's counsel, law office staff and retained experts only. We expect that these documents will not be shared with any current or former prisoner. If any attorney representing DLC intends to do so, please notify me so that I may seek a protective order.

Settlement Documents    Documents generated for the purpose of settlement discussions are not provided, except that documents containing data collected during the period of settlement negotiations are provided.

Attorney-Client Privilege    All Department of Correction attorney-client communications made subsequent to January 5, 2007 (the date of Attorney James Rollins's letter to Kathleen Dennehy) concerning matters asserted in the complaint, are privileged attorney-client communications. Department of Correction attorney-client

communications made prior to January 5, 2007 may also be privileged, and we will address any such communications on a case-by-case basis as the issue may arise. Given the relatively short time period for addressing the first phase of your request for production of documents, our priority has been identifying and providing non-privileged responsive documents, not on generating logs of privileged attorney-client communications.

    <u>Dr. Metzner Communications</u>        All written communications with Dr. Metzner have been by Department of Correction counsel. Meetings with Dr. Metzner have been convened with Department of Correction Counsel present. All recommendations provided by Dr. Metzner in connection with his December 7 and 8, 2009 site visit were oral. All communications with Dr. Metzner are privileged. The scheduling order requires expert designation and disclosure pursuant to Fed.R.Civ.P. 26(a)(2) on February 7, 2011. At that time, we will provide any required non-privileged information.

    <u>Current Department of Correction Initiatives</u>        We consider that documents concerning current ongoing initiatives by the Department of Correction to improve the provision of mental health services to fall within the scope of the attorney-client privilege. In the spirit of cooperation, we have provided information on these initiatives as the plans have crystallized, and we will continue to provide documents when it is practical to do so.

    <u>Redaction of Non-Responsive Material</u>    As   a   general   matter,   entries contained in documents (e.g., minutes) that do not concern matters asserted in the complaint have been redacted.

    <u>Redaction of Security Documents</u> – Documents that describe the operational details of segregation units, including operations procedures and post orders have been redacted. Should you wish to examine the original of any such document you may schedule an appointment to view the document at my office.

    <u>Notes</u>  In Requests 2(e) and 2(f), you have requested the provision of paper notes kept by individuals who participated in committees and meetings. Compliance with this aspect of your request for production would require considerable attorney time to identify and contact all persons who participated in committees and meetings to determine whether they have individual notes, as well as the time that would have to be expended by these individuals to locate any notes kept. In some instances, persons who participated no longer work for the Department of Correction. The documents provided to you will afford you the opportunity to review committee and meeting minutes. I anticipate that you then will have a better idea of the material you seek. In the interest of minimizing the burden and expense of litigation. I request that you narrow your paper notes request to specific meeting dates and committee meetings.

    <u>Costs</u>  In accordance with United States District Court Local Rule 26.6(B)(2), the defendants require payment for the documents provided. A total of 21,493 documents

3

have been provided pursuant to this response, excluding extra copies. The total cost for copying (at $.20 per page) is $4,298.60. Please provide a check in this amount made payable to the Commonwealth of Massachusetts no later than August 1, 2010. The production of these documents also required the expenditure of considerable staff time for document searching, redacting and copying. The defendants will waive the associated costs for staff time with respect to the documents provided herein but reserve the right to seek reimbursement for the staff costs associated with additional document production.

      <u>Supplements</u>  The defendants will supplement their response to the request for production as additional documents become available or upon a schedule to be determined by the mutual agreement of counsel. In the interest of minimizing the burden and expense of litigation, please identify the categories of documents provided below for which you do and do not require supplements.

### PARAGRAPH 2 - <u>Documents to be Produced by Defendants in the First Phase</u>

### REQUEST 2(a) – <u>Policies and Procedures for Segregation and Special Units</u>

All Standard Operating Procedures, which are described in 103 DOC 104.06-.07, and any other internal policies and/or operating manuals concerning operation of any segregation unit or residential treatment program. This request is limited at the present time, by agreement of the parties, to each DOC facility which houses either a segregation unit or any other type of residential treatment program for Prisoners with Mental Disorders, as defined in the First RFP, and specifically seeks all internal policies concerning the operation of those units.

### RESPONSE 2(a) – <u>Policies and Procedures for Segregation and Special Units</u>

      Pursuant to Defendants' April 25, 2008 Response to Request for Production of Documents, Defendants provided the following:

#### <u>Secure Treatment Program ("STP")</u>

Secure Treatment Program description;
Program Schedule, Phase I;
Program Schedule, Phase II;
Program Schedule, Transition Phase;
Admissions Agreement;
Guidelines for Phase Progression and Program Completion;
Incentives/Matrix Table.

The following documents are provided.

| Prison | Document | Bates Numbers |
|--------|----------|---------------|
| SBCC | 103 CMR 423, Special Management Units, Annual Review (9/3/09) | 2(a) SBCC 1 |

4

| | 103 CMR 423, Special Management Units, Commissioner Review (7/27/09) | 2(a) SBCC 2 |
|---|---|---|
| | 103 CMR 423, Special Management Units (effective 11/10/06) | 2(a) SBCC 3-32 |
| | 103 CMR 423, Special Management Units, Annual Review (3/2/09) | 2(a) SBCC 33 |
| | 103 CMR 423, Special Management Units, Annual Review (3/26/08) | 2(a) SBCC 34 |
| | 103 CMR 423, Special Management Units, Annual Review (2/4/08) | 2(a) SBCC 35 |
| | 103 CMR 423, Special Management Units, Annual Review (12/12/06) | 2(a) SBCC 36 |
| | 103 CMR 423, Special Management Units, Annual Review (10/4/06) | 2(a) SBCC 37 |
| | 103 CMR 423, Special Management Units, Annual Review (10/25/05) | 2(a) SBCC 38 |
| | 103 CMR 423, Special Management Units, Annual Review (7/21/05) | 2(a) SBCC 39 |
| | SMU Inmate Orientation Handbook (10/4/09) | 2(a) SBCC 40-59 |
| | SMU Inmate Orientation Handbook, Spanish (10/4/09) | 2(a) SBCC 60-81 |
| | SMU Inmate Orientation Handbook (1/13/09) | 2(a) SBCC 82-100 |
| | SMU Inmate Orientation Handbook, Spanish (1/13/09) | 2(a) SBCC 101-121 |
| | SMU Inmate Orientation Handbook (4/30/07) | 2(a) SBCC 122-136 |
| | SMU Inmate Orientation Handbook (7/6/06) | 2(a) SBCC 137-151 |
| | SMU Inmate Orientation Handbook (7/11/05) | 2(a) SBCC 152-165 |
| | STP description (undated) | 2(a) SBCC 166-179 |
| | Erroneous Page | 2(a) SBCC 180 |
| | SBCC RTU Program Booklet | 2(a) SBCC 181-186 |
| | SBCC RTU Mission Statement | 2(a) SBCC 187 |
| | SBCC RTU Weekly Participation Log Form | 2(a) SBCC 188 |
| | SBCC RTU Brochure | 2(a) SBCC 189-190 |
| | SBCC RTU Group Attendance Policy | 2(a) SBCC 191 |
| | SBCC RTU Glossary of Terms | 2(a) SBCC 192 |
| | SBCC RTU Orientation Packet | 2(a) SBCC 193-207 |
| | SBCC RTU MHM Admission & | 2(a) SBCC 208-210 |

| | Discharge Policy | |
|---|---|---|
| | STP Operations Procedures (2/09) with Cover (3/2/09) Redacted | 2(a) SBCC 211-240 |
| | Memorandum from Commissioner Clarke re: STP Opening (3/28/08) | 2(a) SBCC 241 |
| | STP Inmate Handbook (3/2/09) | 2(a) SBCC 242-267; 406-431 (second copy) |
| | STP Operations Procedures (1/08) with Cover (3/6/08) Redacted | 2(a) SBCC 268-289; 311-331 (second copy) |
| | STP Inmate Handbook (3/5/08) | 2(a) SBCC 290-310 |
| | Diversion Unit Operations Procedures Draft 1.2 (October, 2007) Redacted | 2(a) SBCC 362-381 |
| | STP Inmate Orientation Handbook | 2(a) SBCC 382-405 |
| | STP Inmate Handbook (3/30/10) with Cover Memorandum, Roland Rheault to Thomas Dickhaut (3/26/10) detailing revisions | 2(a) SBCC 532-557 Note: There are no documents numbered 2(a) SBCC 432-531. |
| | STP Multidisciplinary Treatment Plan Form | Provided on CD |
| | STP Treatment Plan Update Form | Provided on CD |
| | STP Participation Log Form | Provided on CD |
| | STP Progress Note Form | Provided on CD |
| | MHM RTU Program Manual | Provided on CD |
| | MHM RTU Referral Form (MCI-Framingham) | Provided on CD |
| | MHM RTU Attendance Form | Provided on CD |
| MCI-Shirley | 103 CMR 423, Special Management Units, Cover and Procedural Statement (10/27/09) | 2(a) Shirley 1-10 |
| | 103 CMR 423, Special Management Units, Cover and Procedural Statement (2/10/09) | 2(a) Shirley 11-19 |
| | 103 CMR 423, Special Management Units, Cover and Procedural Statement (3/10/08) | 2(a) Shirley 20-30 |
| | SMU Post Orders Lieutenant (4/28/09) Redacted | 2(a) Shirley 31-48 |
| | SMU Post Orders Sergeant (4/28/09) Redacted | 2(a) Shirley 49-66 |
| | SMU I and II Post Orders Correction Officer (4/17/09) Redacted | 2(a) Shirley 67-98 |
| | MCI-Shirley Inmate Handbook 2010 | 2(a) Shirley 99-137 |
| NCCI | 103 CMR 423, Special Management Units, Annual Review (10/23/09) | 2(a) NCCI 1 |
| | 103 CMR 423, Special Management | 2(a) NCCI 2-11 |

6

| | | |
|---|---|---|
| | Units, Annual Review (10/10/08), Commissioner Review (3/12/08) 103 CMR 423 (effective 11/10/06) | |
| | NCCI SMU Unit Operating Procedures (10/23/07) Redacted | 2(a) NCCI 12-33 |
| | NCCI SMU Inmate Handbook (10/8/08) | 2(a) NCCI 34-42 |
| | 103 CMR 423, Special Management, Annual Review (12/23/05) | 2(a) NCCI 43 |
| | NCCI SMU Unit Operating Procedures (9/5/07) Redacted | 2(a) NCCI 44-85 |
| | NCCI SMU Unit Operating Procedures (2006) Redacted | 2(a) NCCI 86-127 |
| | NCCI SMU Unit Operating Procedures (2005) Redacted | 2(a) NCCI 128-168 |
| | NCCI RTU brochure (undated) | 2(a) NCCI 169-172 |
| | NCCI RTU brochure (5/18/07 draft) | 2(a) NCCI 173-176 |
| | NCCI RTU Treatment Unit Group Schedule (undated) | 2(a) NCCI 177 |
| | NCCI RTU Orientation Packet (undated) | 2(a) NCCI 178-186 |
| | NCCI RTU Orientation Packet (undated) | 2(a) NCCI 187-195 |
| | NCCI RTU Orientation Packet (draft 5/16/07) | 2(a) NCCI 196-204 |
| **MCI-Concord** | SMU Operations Manual (5/21/08) Redacted | 2(a) Concord 1-47 |
| | SMU Operations Manual (12/31/07) Redacted | 2(a) Concord 48-93 |
| | SMU Operations Manual (11/28/06) Redacted | 2(a) Concord 94-138 |
| | SMU Operations Manual (5/12/05) Redacted | 2(a) Concord 139-181 |
| **MCI-Framingham** | Close Custody Unit Post Order, Section 1, Correction Officer (5/12/09) Redacted | 2(a) Framingham 7-12 |
| | Close Custody Unit Post Order, Section 1, Sergeant (2/19/08) Redacted | 2(a) Framingham 13-16 |
| | Close Custody Unit Post Order, Section 1, Correction Officer (2/19/08) Redacted | 2(a) Framingham 1-6 |
| | Close Custody Unit Post Order, Correction Officer (2007) Redacted | 2(a) Framingham 17-24 |
| | Close Custody Unit Post Order, Correction Officer (2006) Redacted | 2(a) Framingham 25-32 |

| | | |
|---|---|---|
| | Close Custody Unit Post Order, Correction Officer (2005) Redacted | 2(a) Framingham 33-40 |
| | Barton RTU Post Order, Correction Officer, Section 1 (4/12/09) Redacted | 2(a) Framingham 41-45 |
| | Barton RTU Post Order, Correction Officer, Section 1 (2/19/08) Redacted | 2(a) Framingham 46-52 |
| | Barton RTU Post Order, Correction Officer (2007) Redacted | 2(a) Framingham 53-58 |
| | Barton RTU Post Order, Correction Officer (2006) Redacted | 2(a) Framingham 59-64 |
| | Barton RTU Post Order, Correction Officer (2005) Redacted | 2(a) Framingham 65-70 |
| | Townline RTU (Correctional Recovery Academy) Post Order, Correction Officer, Section 1 (10/21/09) Redacted | 2(a) Framingham 71-75 |
| | Townline RTU (Correctional Recovery Academy) Post Order, Correction Officer, Section 1 (2/21/08) (Note: No post order archived for 2007) Redacted | 2(a) Framingham 76-80 |
| | Townline RTU (Correctional Recovery Academy) Post Order, Correction Officer (2006) Redacted | 2(a) Framingham 81-86 |
| | Townline RTU (Correctional Recovery Academy) Post Order, Correction Officer (2005) Redacted | 2(a) Framingham 87-92 |
| | Brewster I (First Step Program) Post Order, Correction Officer, Section 1 (4/12/09) Redacted | 2(a) Framingham 93-98 |
| | Brewster I (First Step Program) Post Order, Correction Officer, Section 1 (4/12/08) (Note: No post order archived for 2007) Redacted | 2(a) Framingham 99-104 |
| | Brewster I (First Step Program) Post Order, Correction Officer (2006) Redacted | 2(a) Framingham 105-110 |
| | Brewster I (First Step Program) Post Order, Correction Officer (2005) Redacted | 2(a) Framingham 111-116 |
| | CCU Orientation Manual (July 2008) | 2(a) Framingham 117-121 |
| | Barton Unit RTU brochure (undated) | 2(a) Framingham 122-123 |
| | First Step Program Rules and Regulations (undated) | 2(a) Framingham 124 |

8

| | | |
|---|---|---|
| | Spectrum Health Systems Group Rules | 2(a) Framingham 125 |
| | Correctional Recovery Academy Participant Handbook (undated) | 2(a) Framingham 126-135 |
| **MCI-Cedar Junction** | DDU Inmate Orientation Manual (1/15/10) | 2(a) Cedar Junction 1-21 |
| | DDU Inmate Orientation Manual (1/16/09) | 2(a) Cedar Junction 22-39 |
| | Ten Block Inmate Handbook (1/11/10) | 2(a) Cedar Junction 40-56 |
| | DDU Inmate Orientation Manual (1/25/08) | 2(a) Cedar Junction 57-76 |
| | Note: Group Insurance Form Attached in Error | 2(a) Cedar Junction 77 |
| | DDU Inmate Orientation Manual (January 2007) | 2(a) Cedar Junction 78-95 |
| | Ten Block Inmate Handbook (9/7/09) | 2(a) Cedar Junction 96-114 |
| | Ten Block Inmate Handbook (4/15/08) | 2(a) Cedar Junction 115-135 |
| | Ten Block Inmate Handbook (5/16/05) | 2(a) Cedar Junction 136-153 |
| | DDU Operations Manual (1/15/10) Redacted | 2(a) Cedar Junction 154-196 |
| | DDU Operations Manual (1/16/09) Redacted | 2(a) Cedar Junction 197-229 |
| | DDU Operations Manual (January 2007) Redacted | 2(a) Cedar Junction 266-306 |
| | DDU Operations Manual (January 2006) Redacted | 2(a) Cedar Junction 230-265 |
| | DDU Operations Manual (1/29/08) Redacted | 2(a) Cedar Junction 307-354 |
| | DDU Review Sheet, 2/16/05 | 2(a) Cedar Junction 355 |
| | DDU Operations Manual (September 2005) Redacted | 2(a) Cedar Junction 356-400 |
| | Ten Block Standard Operating Procedures (1/11/10) Redacted | 2(a) Cedar Junction 401-425 |
| | Ten Block Standard Operating Procedures (7/7/09) Redacted | 2(a) Cedar Junction 426-454 |
| | Ten Block Standard Operating Procedures (4/18/08) Redacted | 2(a) Cedar Junction 455-489 |
| **MCI-Norfolk** | 103 CMR 423, Special Management Units, Annual Review (8/7/09) | 2(a) Norfolk 1 |
| | 103 CMR 423, Special Management Units, Annual Review (3/26/08) | 2(a) Norfolk 2 |
| | 103 CMR 423, Special Management | 2(a) Norfolk 3 |

| | | |
|---|---|---|
| | Units, Annual Review (1/7/08) | |
| | 103 CMR 423, Special Management Units, Annual Review (10/2/06) | 2(a) Norfolk 4 |
| | 103 CMR 423, Special Management Units, Annual Review (10/27/05) | 2(a) Norfolk 5 |
| | SMU Rules & Regulations (7/21/09) | 2(a) Norfolk 6-22 |
| | SMU Rules & Regulations (11/4/08) | 2(a) Norfolk 23-38 |
| | SMU Rules & Regulations (10/18/07) | 2(a) Norfolk 39-54 |
| | SMU Rules & Regulations (9/7/06) | 2(a) Norfolk 55-70 |
| | SMU Rules & Regulations (5/17/06) | 2(a) Norfolk 71-84 |
| | SMU Rules & Regulations (11/12/04) | 2(a) Norfolk 85-95 |
| | SMU Post Order OIC 7/3 § I (2/1/10) Redacted | 2(a) Norfolk 96-99 |
| | SMU Post Order OIC 7/3 § IV (2/1/10) Redacted | 2(a) Norfolk 100-104 |
| | SMU Post Order OIC 7/3 § I (2/28/09) Redacted | 2(a) Norfolk 105 |
| | SMU Post Order OIC 7/3 § IV (2/28/09) Redacted | 2(a) Norfolk 106-107 |
| | SMU Post Order OIC 7/3 § I (2/6/08) Redacted | 2(a) Norfolk 108 |
| | SMU Post Order OIC 7/3 § IV (2/6/08) Redacted | 2(a) Norfolk 109-112 |
| | SMU Post Order OIC 7/3 § I (1/9/07) Redacted | 2(a) Norfolk 113 |
| | SMU Post Order OIC 7/3 § IV (1/9/07) Redacted | 2(a) Norfolk 114-117 |
| | SMU Post Order OIC 7/3 § I (9/12/06) Redacted | 2(a) Norfolk 118 |
| | SMU Post Order OIC 7/3 § IV (9/12/06) Redacted | 2(a) Norfolk 119-121 |
| | SMU Post Order Sgt. § I (2/1/10) Redacted | 2(a) Norfolk 122-123 |
| | SMU Post Order Sgt. § IV (2/1/10) Redacted | 2(a) Norfolk 124-129 |
| | SMU Post Order Sgt. § I (2/28/09) Redacted | 2(a) Norfolk 130-131 |
| | SMU Post Order Sgt. § IV (2/28/09) Redacted | 2(a) Norfolk 132-136 |
| | SMU Post Order Sgt. § I (2/6/08) Redacted | 2(a) Norfolk 137-138 |
| | SMU Post Order Sgt. § IV (2/6/08) Redacted | 2(a) Norfolk 139-146 |

|  | SMU Post Order Sgt. § I (1/9/07) Redacted | 2(a) Norfolk 147-148 |
|---|---|---|
|  | SMU Post Order Sgt. § IV (1/9/07) Redacted | 2(a) Norfolk 149-155 |
|  | SMU Post Order Sgt. § I (9/12/06) Redacted | 2(a) Norfolk 156-157 |
|  | SMU Post Order Sgt. § IV (9/12/06) Redacted | 2(a) Norfolk 158-164 |
|  | SMU Post Order COI § I (2/1/10) Redacted | 2(a) Norfolk 173-175 |
|  | SMU Post Order COI § IV (2/1/10) Redacted | 2(a) Norfolk 165-172 |
|  | SMU Post Order COI § I (2/28/09) Redacted | 2(a) Norfolk 181-183 |
|  | SMU Post Order COI § IV (2//28/09) Redacted | 2(a) Norfolk 184-188 |
|  | SMU Post Order COI § I (2/6/08) Redacted | 2(a) Norfolk 189-191 |
|  | SMU Post Order COI § IV (2/6/08) Redacted | 2(a) Norfolk 192-198 |
|  | SMU Post Order COI § I (1/9/07) Redacted | 2(a) Norfolk 199-201; 219-221 (second copy) |
|  | SMU Post Order COI § IV (1/9/07) Redacted | 2(a) Norfolk 212-218 |
|  | SMU Post Order COI § I (9/12/06) Redacted | 2(a) Norfolk 202-204 |
|  | SMU Post Order COI § IV (9/12/06) Redacted | 2(a) Norfolk 205-211; 225-231 (second copy) |
| OCCC | Segregation Unit Post Orders, (5/23/09), with addendum Redacted | OCCC 2(a) 1-18 |
|  | Segregation Unit Post Orders, (5/23/08), with addenda Redacted | OCCC 2(a) 19-36 |
|  | Segregation Unit Post Orders, (5/23/07), with addenda Redacted | OCCC 2(a) 37-57 |
|  | OCCC Special Management Unit Procedural Statement (2/23/06) | OCCC 2(a) 58 |
|  | Segregation Unit Post Orders (5/23/06) Redacted | OCCC 2(a) 59-74 |
|  | Segregation Unit Post Orders, (5/23/05) Redacted | OCCC 2(a) 75-89 |
|  | Multi-Purpose Unit (RTU) Post Orders, Correction Officer (1/22/10) Redacted | 2(a) OCCC 90-100 |
|  | Multi-Purpose Unit (RTU) Post Orders, Correction Officer (3/23/09) Redacted | 2(a) OCCC 101-111 |

11

| | Multi-Purpose Unit (RTU) Post Orders, Correction Officer (3/23/07), with addenda and 10/12/07 | 2(a) OCCC 112-128; 157-158 |
|---|---|---|
| | Multi-Purpose Unit (RTU) Post Orders, Correction Officer (3/23/08) Redacted | 2(a) OCCC 129-140 |
| | Multi-Purpose Unit (RTU) Post Orders, Correction Officer (3/23/06), with addenda Redacted | 2(a) OCCC 141-155 |
| | Multi-Purpose Unit (RTU) Post Orders, Correction Officer (3/10/05) Redacted | 2(a) OCCC 156; 159-171 |

| High Risk Offender Program Document | Bates Numbers |
|---|---|
| DDU Program Description | 2(a) High Risk Offender 1-2 |
| High Risk Offender Program/DDU Programming/Restrictive Blocks | 2(a) High Risk Offender 3-13 |
| Application Form | 2(a) High Risk Offender 14-15 |
| Spectrum Report, High Risk Offender Programming (7/31/09) | 2(a) High Risk Offender 16-21 |
| High Risk Offender Phase I Meetings Tracking Form (Sample, inmate names and identifiers redacted) | 2(a) High Risk Offender 22 |
| High Risk Offender Program attendance sheet (Sample, inmate names and identifiers redacted) | 2(a) High Risk Offender 23-24 |
| IMS Programs/Work Attendance (Sample, inmate names and identifiers redacted) | 2(a) High Risk Offender 25 |
| High Risk Offender Program Intake Assessment (Sample, inmate names and identifiers redacted) | 2(a) High Risk Offender 26 |
| High Risk Offender Program Periodic Reviews (Sample, inmate names and identifiers redacted) | 2(a) High Risk Offender 27-28 |

**REQUEST 2(b) – 103 DOC 650 Institutional Procedures**

The Institutional Policy and Procedures Manuals designed to implement the 103 DOC 650 policy, including, but not limited to, the procedures set forth in 103 DOC 650.01, .03, .07, .09, and .12.

**RESPONSE 2(b) -103 DOC 650 Institutional Procedures**

The following documents are provided:

| Prison | Document | Bates Numbers |
|---|---|---|
| SBCC (Note- | 103 DOC 650 Cover (12/23/09), | 2(b) SBCC 1-84 |

12

| Bates Stamp mislabeled "MCI-Cedar Junction" | PDCU Review (11/23/09), Health Service Review (11/23/09), Policy (11/09) and SBCC Procedures (12/23/09) | |
|---|---|---|
| | Memorandum re: Alternative Watch Cells (5/11/09) | 2(b) SBCC 85 |
| | 103 DOC 650 Cover (11/10/09), Health Services Memorandum (7/10/09), and SBCC Procedures (11/09) | 2(b) SBCC 86-101 |
| | 103 DOC 650 Cover (8/18/08) and SBCC Procedures (11/08) | 2(b) SBCC 102-118 |
| | Memorandum re: Alternative Watch Cells (6/9/09) | 2(b) SBCC 119 |
| | SBCC Procedures (8/08) | 2(b) SBCC 120-129 |
| | SBCC Procedures (8/18/08) and SBCC Q-5 Procedures (8/19/08) | 2(b) SBCC 130-132 |
| | Memorandum re: Alternative Watch Cells (8/18/08) | 2(b) SBCC 133 |
| | Health Services Review (3/10/08) | 2(b) SBCC 134-140 |
| | Memorandum re: Alternative Watch Cells (4/1/08) | 2(b) SBCC 141 |
| | SBCC Procedures (1/08) | 2(b) SBCC 142-153; 155 |
| | Memorandum re: Alternative Watch Cells (3/27/08) | 2(b) SBCC 154 |
| | 103 DOC 650 3/17/08 Cover and SBCC Procedures (1/08) | 2(b) SBCC 156-170 |
| | 103 DOC 650 Cover (3/13/07) and SBCC Procedures (6/06) | 2(b) SBCC 171-185 |
| | 103 DOC 650 Memo (6/1/06) re: alternative watch cells | 2(b) SBCC 186 |
| | 103 DOC 650 Cover (9/8/06), Health Services Review (5/11/06) and SBCC Procedures (6/06) | 2(b) SBCC 187-201 |
| | Memorandum re: Alternative Watch Cells (6/1/06) | 2(b) SBCC 202 |
| | Cover (3/7/06), Health Services Review (6/20/05) and SBCC Procedures (6/05) | 2(b) SBCC 204-217 |
| | Memorandum re: Alternative Watch Cells (1/4/06) | 2(b) SBCC 218 |
| | 103 DOC 650 Cover (11/9/04), PDCU Review (4/20/04), SBCC Procedures (11/04) | 2(b) SBCC 219-232 |
| | Memorandum re: Alternative Watch Cells (11/9/04) | 2(b) SBCC 233 |

13

| | Memorandum re: Alternative Watch Cells (5/11/09) | 2(b) SBCC 234 |
|---|---|---|
| | Memorandum re: Alternative Watch Cells (8/18/08) | 2(b) SBCC 235 |
| | Memorandum re: Alternative Watch Cells (4/1/08) | 2(b) SBCC 237 |
| | Memorandum re: Alternative Watch Cells (4/1/08) | 2(b) SBCC 236 |
| **MCI-Shirley** | 103 DOC 650 Cover and Procedural Statement (2/5/10) | 2(b) Shirley 1-10 |
| | Cover Memorandum (12/3/09) | 2(b) Shirley 11 |
| | 103 DOC 650 Cover and Procedural Statement (3/6/09) | 2(b) Shirley 12-20 |
| | 103 DOC 650 Cover and Procedural Statement (8/19/09) | 2(b) Shirley 21-29 |
| | 103 DOC 650 Cover and Procedural Statement (4/2/08) | 2(b) Shirley 30-38 |
| | 103 DOC 650 Cover and Procedural Statement (10/19/07) | 2(b) Shirley 39-51 |
| | 103 DOC 650 Cover and Procedural Statement (8/1/05) | 2(b) Shirley 52-60 |
| **NCCI** | 103 DOC 650 Cover and Procedural Statement (medium) (3/23/09) | 2(b) NCCI 1-12 |
| | 103 DOC 650 Cover and Procedural Statement (medium) (3/13/08) | 2(b) NCCI 13-24 |
| | 103 DOC 650 Cover and Procedural Statement (medium) (12/12/07) | 2(b) NCCI 25-35 |
| | 103 DOC 650 Cover and Procedural Statement (medium) (12/15/06) | 2(b) NCCI 36-46 |
| | 103 DOC 650 Cover and Procedural Statement (medium) (2/08/06) | 2(b) NCCI 47-56 |
| | 103 DOC 650 Cover and Procedural Statement (medium) (2/28/05) | 2(b) NCCI 57-67 |
| **MCI-Concord** | 103 DOC 650 Cover (11/2/09) and Procedural Statement (7/09) | 2(b) Concord 1-12 |
| | 103 DOC 650 Cover (7/28/08) and Procedural Statement (3/08) | 2(b) Concord 13-23 |
| | 103 DOC 650 Cover (6/28/07) and Procedural Statement (6/07) | 2(b) Concord 24-34 |
| | Memorandum re: Mental Health Screens (11/16/07) | 2(b) Concord 35-36 |
| | 103 DOC 650 Cover (2/21/06) and Procedural Statement (1/06) | 2(b) Concord 37-45 |
| **MCI-Framingham** | 103 DOC 650 Procedural Statement (10/21/09) | 2(b) Framingham 1-24 |
| | 103 DOC 650 Procedural Statement | 2(b) Framingham 25-45 |

14

|  | (7/28/08) |  |
| --- | --- | --- |
|  | 103 DOC 650 Procedural Statement (7/12/07) | 2(b) Framingham 46-65 |
|  | *103 DOC 650 Procedural Statement (8/4/06) is not available* | N/A |
|  | 103 DOC 650 Procedural Statement (8/15/05) | 2(b) Framingham 66-83; 84-101 (extra copy) |
| **MCI-Cedar Junction** | 103 DOC 650 Cover (5/9/08) and Procedural Statement (3/08) | 2(b) Cedar Junction 1-17; 38-54 (extra copy) |
|  | 103 DOC 650 Cover (9/25/06) and Procedural Statement (9/06) | 2(b) Cedar Junction 18-27 |
|  | 103 DOC Procedural Statement (1/27/05) | 2(b) Cedar Junction 28-37 |
| **MCI-Norfolk** | 103 DOC 650 Cover and Procedural Statement (2/2/10) | 2(b) Norfolk 1-16 |
|  | 103 DOC 650 Cover and Procedural Statement (7/14/09) | 2(b) Norfolk 17-32 |
|  | 103 DOC 650 Cover and Procedural Statement (3/15/07) | 2(b) Norfolk 33-43 |
|  | 103 DOC 650 Cover and Procedural Statement (7/3/06) | 2(b) Norfolk 44-54 |
|  | 103 DOC 650 Cover and Procedural Statement (8/2/05) | 2(b) Norfolk 55-64 |
| **OCCC** | 103 DOC 650 Procedural Statement (3/14/10) | 2(b) OCCC 1-26 |
|  | 103 DOC 650 Cover (6/23/09) and Procedural Statement (6/23/09) | 2(b) OCCC -27-34 |
|  | 103 DOC 650 Cover (2/18/09) and Procedural Statement (2/19/09) | 2(b) OCCC 35-42 |
|  | 103 DOC 650 Cover (3/10/09) and requested changes (3/9/09) | 2(b) OCCC 43-50 |
|  | 103 DOC 650 Cover (2/4/08) and Procedural Statement (1/31/08) | 2(b) OCCC 51-65 |
|  | 103 DOC 650 Cover (3/8/07) and Procedural Statement | 2(b) OCCC 66-88 |

## REQUEST 2(c) – 103 DOC 650 Annual Reviews

The Annual Policy Review of 103 DOC 650 with respect to Mental Health Services for the years 2007, 2008, 2009 and 2010 (if available). This is intended to supplement the documents produced by Defendants on April 25, 2008 which included such policy reviews for the years 2004, 2005 and 2006.

## RESPONSE 2(c) -103 DOC 650 Annual Reviews

15

Pursuant to Defendants' April 25, 2008 Response to Request for Production of Documents, Defendants provided the following:

103 DOC 650 (July 2002)
103 DOC 650 (May 2003)
103 DOC 650 (April 2004)
103 DOC 650 (June 2005)
103 DOC 650 (June 2006)
103 DOC 650 (October 2006)
103 DOC 650 (April 2007)
103 DOC 650 (October 2007)
103 DOC 650 (March 2008)


103 DOC 650 Amendment Cover Memoranda:

April 1, 1999;
May 10, 1999;
February 17, 2000;
June 10, 2002;
June 10, 2002;
May 12, 2003;
April 20, 2004;
June 20, 2005;
May 11, 2006;
October 10, 2006

The following documents are provided:

| Document | Bates Numbers |
| --- | --- |
| Cover Memorandum (2/22/10) | 2(c) DOC 650 4-8 |
| Cover Memorandum (11/23/09) | 2(c) DOC 650 8-10 |
| Cover Memorandum (7/10/09) | 2(c) DOC 650 11 |
| Cover Memoranda (3/10/08) | 2(c) DOC 650 12-18 |
| Cover Memorandum (10/3/07; 10/2/07) | 2(c) DOC 650 19-20 |
| Cover Memorandum (4/12/07) | 2(c) DOC 650 21 |
| 103 DOC 650 (February 2010) | 2(c) DOC 650 22-84 |
| 103 DOC 650 (November 2009) | 2(c) DOC 650 85-147 |
| 103 DOC 650 (July 2009) | 2(c) DOC 650 148-210 |

## REQUEST 2(d) – Non-Privileged Files of Larry Weiner, Terre Marshall and Veronica Madden

All non-privileged paper documents contained in the files of Lawrence Weiner, Terre Marshall, and Veronica Madden concerning any of the issues in the Complaint, including but not limited to

16

(1) the development and/or decision-making process with respect to any contemplated units or programs designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial) including but not limited to those for whom segregation may be clinically contraindicated,

(2) more broadly, the provision of mental health services to prisoners housed in any of the DOC's segregation units and/or maximum security residential programs designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial), and

(3) the development of any criteria or definitions to be used in determining whether segregation is clinically contraindicated.

**RESPONSE 2(d) – Non-Privileged Files of Larry Weiner, Terre Marshall and Veronica Madden**

(1)   **Contemplated Units or Programs**

Objections   This request is overly broad to the extent that it seeks documents pertaining to "maximum security residential program designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial)." The term "Mental Disorder" encompasses all "Mental Disorders" categorized and described by the current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"). The Department's maximum security Secure Treatment Program ("STP" and Residential Treatment Unit ("RTU") are designed to provide services for a selected sub-set of prisoners with "Mental Disorders." Further, this request is overly broad and confusing to the extent that it seeks documents pertaining to "other prisoners for whom such units may be beneficial." As this request is structured, the reference to "other prisoners" appears to encompass prisoners who do not have Mental Disorders, and therefore, would not have need for mental health treatment services in maximum security residential programs.

Documents concerning current ongoing initiatives by the Department of Correction to improve the provision of mental health services to fall within the scope of the attorney-client privilege. Defendants will provide information on these initiatives as the plans crystallize and when it is practical to do so.

**Larry Weiner**

| Department of Mental Health ("DMH") Segregation Review Document | Bates Numbers |
|---|---|
| DMH Review Schedule | 2(d) Larry Weiner 1 |
| DMH final report MCI-Framingham 6/26/09 review and cover (8/28/09) | 2(d) Larry Weiner 2-11 |
| DOC response to 1/23/09 DMH review MCI-Framingham (6/2/09) | 2(d) Larry Weiner 12-14 |

| | |
|---|---|
| DMH final report SBCC 12/4/09 review and cover (1/29/10) | 2(d) Larry Weiner 15-24 |
| DOC response to 5/15/09 DMH review SBCC (9/15/09) | 2(d) Larry Weiner 25-28 |
| DMH final report MCI-Framingham 1/23/09 review and cover (4/17/09) | 2(d) Larry Weiner 29-40 |
| DMH final report SBCC 5/15/09 review and cover (7/31/09) | 2(d) Larry Weiner 41-51 |
| DOC response to 9/25/09 DMH review MCI-Cedar Junction (2/16/10) | 2(d) Larry Weiner 52-53 (Note: second 53 mislabeled) |
| DMH final report MCI-Cedar Junction 9/15/09 review and cover (11/18/09) | 2(d) Larry Weiner 54-65 |
| DOC response to 2/6/09 DMH review MCI-Cedar Junction and cover (8/3/09) | 2(d) Larry Weiner 66-68 |
| DMH final report MCI-Cedar Junction 2/6/09 review and cover (5/7/09) | 2(d) Larry Weiner 69-80 |
| DMH final report OCCC 3/6/09 review and cover (5/7/09) | 2(d) Larry Weiner 81-90 |
| DOC response to 4/10/09 DMH review MCI-Concord and cover (7/31/09) | 2(d) Larry Weiner 91-93 |
| DMH final report MCI-Concord 4/10/09 review and cover (6/11/09) | 2(d) Larry Weiner 94-103 |
| DMH final report MCI-Norfolk 6/19/09 review and cover (8/7/09) | 2(d) Larry Weiner 104-107 |
| DMH final report NCCI 4/24/09 review and cover (6/11/09) | 2(d) Larry Weiner 108-115 |
| DMH follow-up report MCI-Shirley 10/2/09 review and cover (11/6/09) | 2(d) Larry Weiner 116-123 |
| DOC response to 3/27/09 DMH review MCI-Shirley and cover (8/14/09) | 2(d) Larry Weiner 124-126 |
| DMH final report MCI-Shirley 3/27/09 review and cover (5/29/09) | 2(d) Larry Weiner 127-136 |
| DMH final report MCI-Shirley 9/19/08 review and cover (12/3/08) | 2(d) Larry Weiner 137-144 |
| DMH final report MCI-Shirley 3/28/08 review and cover (6/2/08) | 2(d) Larry Weiner 145-151 |
| DOC response to 11/14/08 DMH review SBCC and cover (4/22/09) | 2(d) Larry Weiner 152-155 |
| DMH final report SBCC 11/14/08 review and cover (3/27/09) | 2(d) Larry Weiner 156-167 |
| DOC response to 5/16//08 DMH audit SBCC and cover (10/31/08) | 2(d) Larry Weiner 168-170 |
| DMH final report SBCC 5/16/08 review and cover (8/15/08) | 2(d) Larry Weiner 171-179 |
| DOC response to 3/7//08 DMH review OCCC and cover (7/1/08) | 2(d) Larry Weiner 180-182 |
| DOC response to 3/7/08 DMH review of OCCC (5/28/08) | 2(d) Larry Weiner 183 |

18

| | |
|---|---|
| DMH draft report OCCC review (3/7/08) and cover 4/11/08) | 2(d) Larry Weiner 184-191 |
| DOC response to 4/25/08 DMH review of NCCI and cover (7/24/08) | 2(d) Larry Weiner 192-194 |
| DOC response to 4/25/08 DMH review of NCCI (6/16/08) | 2(d) Larry Weiner 195 |
| DMH draft report NCCI review (4/25/08) and cover 6/22/08) | 2(d) Larry Weiner 196-204 |
| DOC response to 6/13/08 DMH review of MCI-Norfolk (11/4/08) | 2(d) Larry Weiner 205 |
| DMH report MCI-Norfolk 6/13/08 review and cover (11/4/08) | 2(d) Larry Weiner 206-208 |
| DMH draft report MCI-Norfolk 6/13/08 review and cover (8/5/08) | 2(d) Larry Weiner 209-219 |
| DMH final report MCI-Framingham 7/11/08 review and cover (11/24/08) | 2(d) Larry Weiner 220-229 |
| DOC response to 7/11/08 DMH review MCI-Framingham (12/16/08) | 2(d) Larry Weiner 230-233 |
| DOC response to 1/18/08 DMH review MCI-Framingham (6/3/08) | 2(d) Larry Weiner 234-236 |
| DMH draft report MCI-Framingham 1/18/08 review and cover (2/21/08) | 2(d) Larry Weiner 237-245 |
| DOC response to 4/11/08 DMH review MCI-Concord (7/22/08) | 2(d) Larry Weiner 246-250 |
| DMH draft report MCI-Concord review 4/11/08 and cover (5/12/08) | 2(d) Larry Weiner 251-260 |
| DOC response to 9/12/08 DMH review MCI-Cedar Junction (1/12/09) | 2(d) Larry Weiner 261-264 |
| DMH draft report MCI-Cedar Junction 9/12/08 review and cover (10/27/08) | 2(d) Larry Weiner 265-276 |
| DOC response to DMH 2/8/08 review MCI-Cedar Junction (6/26/08) | 2(d) Larry Weiner 277-280 |
| DMH draft report MCI-Cedar Junction review 2/8/08 and cover (3/27/08) | 2(d) Larry Weiner 281-290 |
| DOC response to DMH 7/13/07 review MCI-Framingham and cover (10/16/07) | 2(d) Larry Weiner 291-294 |
| DMH final report MCI-Framingham 7/13/07 review and cover (8/6/07) | 2(d) Larry Weiner 295-300 |
| DOC response to DMH 1/12/07 review MCI-Framingham (5/4/07) | 2(d) Larry Weiner 301-302 |
| DMH final report MCI-Framingham review 1/12/07 and cover (3/23/07) | 2(d) Larry Weiner 303-310 |
| DMH final report OCCC 3/2/07 review and cover (5/18/07) | 2(d) Larry Weiner 311-318 |
| DOC response to DMH 3/2/07 review OCCC and cover (7/11/07) | 2(d) Larry Weiner 319-321 |
| DOC response to DMH 9/21/07 re-visit MCI-Shirley and | 2(d) Larry Weiner 322-326 |

19

| | |
|---|---|
| cover (1/3/08) | |
| DMH report MCI-Shirley follow-up visit 9/21/07 and cover (10/25/07); Letter from Larry Weiner to Nancy Dizio (11/8/07) | 2(d) Larry Weiner 326-331 |
| DOC response to DMH 3/23/07 review MCI-Shirley and cover (7/11/07) | 2(d) Larry Weiner 332-334 |
| DMH final report MCI-Shirley review 3/23/07 and cover (6/19/07) | 2(d) Larry Weiner 335-341 |
| DOC response to DMH 4/27/07 review MCI-Concord and cover (8/15/07) | 2(d) Larry Weiner 342-345 |
| DMH final report MCI-Concord review 4/27/07 and cover (6/19/07) | 2(d) Larry Weiner 346-354; 355-364 (second copy) |
| DMH report NCCI review 4/6/07 and cover (5/4/07) | 2(d) Larry Weiner 364-369 |
| DOC response to DMH 7/20/07 revisit to MCI-Cedar Junction (10/19/07) | 2(d) Larry Weiner 370-373 |
| DMH report MCI-Cedar Junction follow-up visit 7/20/07 | 2(d) Larry Weiner 374-379 |
| DOC response to DMH 2/2/07 MCI-Cedar Junction review and cover (7/23/07) | 2(d) Larry Weiner 380-382 |
| DMH report MCI-Cedar Junction 2/2/07 review and cover (4/20/07) | 2(d) Larry Weiner 383-390 |
| DOC response to DMH 11/16/07 re-visit SBCC and cover (4/4/08) | 2(d) Larry Weiner 391-393 |
| DMH report SBCC 11/16/07 review and cover (2/4/08) | 2(d) Larry Weiner 394-398 |
| DMH report MCI-Norfolk 6/8/07 review and cover (7/26/07) | 2(d) Larry Weiner 399-405 |
| DOC response to DMH 6/8/07 review MCI-Norfolk and cover (8/15/07) | 2(d) Larry Weiner 405-408 |

| Larry Weiner Document | Bates Numbers |
|---|---|
| RTU Admission Update (3/10/08) | 2(d) Larry Weiner 409-410 |
| MHM SBCC RTU Referral Spreadsheet (4/30/08) | 2(d) Larry Weiner 411-412 |
| MHM RTU Referrals (5/5/08) | 2(d) Larry Weiner 414 |
| MHM RTU Referrals (6/9/08) | 2(d) Larry Weiner 415-418 |
| MHM RTU Referrals (7/2/08) | 2(d) Larry Weiner 419-420 |
| MHM RTU Referrals (8/1/08) | 2(d) Larry Weiner 421-424 |
| RTU Referral Form Revised (9/18/08) | 2(d) Larry Weiner 425-427 |
| RTU Open Caseload (10/30/08) | 2(d) Larry Weiner 428 |
| RTU Waiting List (10/30/08) | 2(d) Larry Weiner429 |
| RTU Open Caseload (10/1/09) | 2(d) Larry Weiner 430 |
| RTU Waiting List (10/6/09) | 2(d) Larry Weiner 431 |
| OCCC RTU Program Booklet (3/15/10) | 2(d) Larry Weiner 432-436 |
| RTU General Information (3/15/10) | 2(d) Larry Weiner 437-438: 439-440 (second copy) |
| RTU Brochure (2008) | 2(d) Larry Weiner 441-443 |

20

| | |
|---|---|
| OCCC Mission Change Meeting Agenda (5/19/09) | 2(d) Larry Weiner 447-449 |
| OCCC Mission Conversion Draft Plan (10/7/09) | 2(d) Larry Weiner 450-451 |
| OCCC Mission Conversion Table (11/11/09) | 2(d) Larry Weiner 452-455 |
| OCCC Mission Conversion Redacted (11/11/09) | 2(d) Larry Weiner 456-465 |
| OCCC Mission Conversion Minutes Redacted (11/17/09) | 2(d) Larry Weiner 466-467 |
| OCCC Mission Conversion Draft Plan Redacted (11/17/09) | 2(d) Larry Weiner 468-479 |
| OCCC Mission Conversion Agenda (11/17/09) | 2(d) Larry Weiner 480 |
| RTU Polices and Procedures (11/18/08) | 2(d) Larry Weiner 481-516 |
| Maximum RTU (12/10/09) | 2(d) Larry Weiner 517-543 |
| Maximum RTU Operations Workgroup (12/10/09) | 2(d) Larry Weiner 544-549 |
| RTU Caseload (11/24/09) | 2(d) Larry Weiner 550 |
| RTU Waiting List (12/09) | 2(d) Larry Weiner 551-552 |
| RTU Waiting List (12/17/09) | 2(d) Larry Weiner 553-554 |
| OCCC Mission Change Program Development Workgroup Redacted (12/15/09) | 2(d) Larry Weiner 555-560 |
| Program Development Agenda (12/15/09) | 2(d) Larry Weiner 561 |
| RTU Caseload (12/16/09) | 2(d) Larry Weiner 562 |
| Programs at OCCC (12/17/09) | 2(d) Larry Weiner 563 |
| RTU Phase Grid (12/23/09) | 2(d) Larry Weiner 564 |
| RTU Treatment and Programming Expectations (12/23/09) | 2(d) Larry Weiner 565 |
| RTU Operations Overview Draft (12/23/09) | 2(d) Larry Weiner 566-567 |
| Utilization Chart (12/23/09) | 2(d) Larry Weiner 568-569 |
| SBCC RTU Fourth Draft (12/31/09) | 2(d) Larry Weiner 570-581 |
| RTU Operations Overview Draft (1/7/10) | 2(d) Larry Weiner 582 |
| Diversion Unit Potential List (inmates, staffing) (6/5/07) | 2(d) Larry Weiner 583-584 |
| Diversion Unit Referral Concept (10/10/07) | 2(d) Larry Weiner 585 |
| STP Weekly Schedule – Stabilization Phase (11/9/07) | 2(d) Larry Weiner 586 |
| STP Weekly Schedule – Core Treatment Phase (11/9/07) | 2(d) Larry Weiner 587 |
| STP Weekly Schedule – Transition Phase (11/9/07) | 2(d) Larry Weiner 588 |
| STP Guidelines for Phase Progression and Program Completion (11/9/07( | 2(d) Larry Weiner 589 |
| Secure Treatment Program (10/17/07) | 2(d) Larry Weiner 590-603 |
| Diversion Unit Admission Agreement (11/9/07) | 2(d) Larry Weiner 604 |
| Memorandum, Hal Smith to Terre Marshall, Larry Weiner re: Crisis Stabilization Capacity (8/17/07) | 2(d) Larry Weiner 605-608 |
| Mental Health Services – Residential Units (11/15/07) | 2(d) Larry Weiner 609-610 |
| Diversion Unit Program Proposal (9/28/07) | 2(d) Larry Weiner 611-618 |
| Mental Health Services – Alternative Treatment Units (12/11/07) | 2(d) Larry Weiner 619-621 |
| Three Day Training Schedule (12/11/07) | 2(d) Larry Weiner 622 |
| STP PowerPoint (1/28/08) | 2(d) Larry Weiner 623-653 |
| Suicide Prevention PowerPoint (1/28/07) | 2(d) Larry Weiner 654-673 |
| STP Agenda (1/29/08) | 2(d) Larry Weiner 674; 677 |

| | |
|---|---|
| STP Program Outline (2/8/08) | 2(d) Larry Weiner 675-676 |
| STP Performance Task Assignment | 2(d) Larry Weiner 678 |
| OCCC RTU Program Booklet (5/5/08) | 2(d) Larry Weiner 679-683 |
| Day Treatment Program (5/16/08) | 2(d) Larry Weiner 684-685 |
| OCCC RTU Brochure (5/19/08) | 2(d) Larry Weiner 686-687 |
| Disciplinary Code of Offenses (8/28/08) | 2(d) Larry Weiner 688 |
| STP Informational Report (8/28/08) | 2(d) Larry Weiner 689 |
| STP Brochure (9/2/08) | 2(d) Larry Weiner 690-691 |
| STP Admission Agreement (9/2/08) | 2(d) Larry Weiner 692 |
| STP Announcement (3/7/08) | 2(d) Larry Weiner 693 |
| STP Admission Procedure Draft (9/25/09) | 2(d) Larry Weiner 694-695 |
| RTU General Information (11/6/09) | 2(d) Larry Weiner 696-697 |
| Chart Review Form (4/13/07) | 2(d) Larry Weiner 698 |
| Chart Review Questions (4/13/07) | 2(d) Larry Weiner 699-700 |
| SPMI by Prison (2/4/08) | 2(d) Larry Weiner 701 |
| SPMI Spreadsheet (2/4/08) | 2(d) Larry Weiner 702-713 |
| SPMI OMH February 2008 | 2(d) Larry Weiner 714 |
| Agency Questionnaire House 1896 Draft (4/18/08) | 2(d) Larry Weiner 715 |
| MHM Diagnostic Training – Answer Key Redacted (2/22/08) | 2(d) Larry Weiner 722-752 |
| Memorandum, Aminadav Zakai to Terre Marshall re: Accuracy of Diagnosis (2/12/08) | 2(d) Larry Weiner 753-754 |
| SPMI March 2008 | 2(d) Larry Weiner 755 |
| SPMI April 2008 | 2(d) Larry Weiner 756 |
| SPMI SBCC SPMI May 2008 | 2(d) Larry Weiner 757-758 |
| SPMI June 2008 | 2(d) Larry Weiner 759 |
| SMI Breakdown June 2008 | 2(d) Larry Weiner 760 |
| Out-of-Cell Graphs (7/15/08) | 2(d) Larry Weiner 761-766 |
| SMI Breakdown June 2008 (Reference to Dr. Metzner statement redacted) | 2(d) Larry Weiner 767-768 |
| SMI-Breakdown June 2008 (Reference to Dr. Metzner statement redacted) | 2(d) Larry Weiner769 |
| SBCC SPMI July 2008 (8/1/08) | 2(d) Larry Weiner 770--771 |
| SPMI August 2008 (8/12/08) | 2(d) Larry Weiner 772 |
| SPMI September 2008 (9/3/08) | 2(d) Larry Weiner 773 |
| SPMI November 2008 (11/1/08) | 2(d) Larry Weiner 774 |
| SMI December 2008 (12/3/08) | 2(d) Larry Weiner775 |
| SMI January 2009 (1/5/09) | 2(d) Larry Weiner776 |
| SMI MH Caseload Spreadsheet 1/4/09 | 2(d) Larry Weiner777-778 |
| SMI February 2009 (2/2/09) | 2(d) Larry Weiner779 |
| SMI March 2009 (3/3/09) | 2(d) Larry Weiner780 |
| SMI April 2009 ( | 2(d) Larry Weiner 781 |
| SMI May 2009 | 2(d) Larry Weiner782 |
| SMI June 2009 (6/1/09) | 2(d) Larry Weiner783 |
| SMI July 2009 (7/1/09) | 2(d) Larry Weiner784 |

22

| SMI August 2009 (7/31/09) | 2(d) Larry Weiner 785 |
|---|---|
| SMI September 2009 (9/3/09) | 2(d) Larry Weiner 786 |
| SMI Segregation (9/11/09) | 2(d) Larry Weiner 787-789 |
| MCI-Framingham SIB 1/2006 – 8/2009 (9/14/09) | 2(d) Larry Weiner 790 |
| SMI October 2009 (10/5/09) | 2(d) Larry Weiner 791 |
| SMI November 2009 (11/2/09) | 2(d) Larry Weiner 792 |
| SMI December 2009 (12/1/09) | 2(d) Larry Weiner793 |
| SMI February 2010 (2/2/10) | 2(d) Larry Weiner 794 |
| Memorandum Theresa to Larry Weiner (2/8/10) | 2(d) Larry Weiner 795 |
| MHM Initial Appraisal Form (4/7/09) | 2(d) Larry Weiner 796-799 |
| Draft Corrective Action Plan (2/9/07) | 2(d) Larry Weiner 800-818 |
| Immediate Goals (2/20/07) | 2(d) Larry Weiner 819-826 |
| Draft Corrective Action Plan (2/12/07) | 2(d) Larry Weiner 826-844 |
| Letter, Terre Marshall to Patricia Onorato (2/22/07) | 2(d) Larry Weiner 845-848 |
| Suicide Risk Factors (2/23/07) | 2(d) Larry Weiner 849-853 |
| Lindsay Hayes "Overcoming Obstacles to Prevention" (2007) | 2(d) Larry Weiner 854-867 |
| Lesson Plan – Suicide Prevention, Intervention & Reaction (March 2007) | 2(d) Larry Weiner 868-898 |
| Recruit Training Program: Suicide Prevention in a Correctional Setting (3/19/09) | 2(d) Larry Weiner 899-911 |
| Memorandum, Nancy Agoglia to David Nolan re: Review of Hayes Report (3/21/07) | 2(d) Larry Weiner 912-916 |
| Hayes Report Update (4/5/07) | 2(d) Larry Weiner 917-918 |
| UMass Suicide Prevention Corrective Action Plan Progress Update (April 2007) | 2(d) Larry Weiner 919-924 |
| Hayes Update (4/20/07) | 2(d) Larry Weiner 925-926 |
| Hayes Update (8/15/07) | 2(d) Larry Weiner 927-931 |
| Inmate Suicide Rate (1998-2007) | 2(d) Larry Weiner 932-933 |
| Inmate Suicide Rate (1998-2007) | 2(d) Larry Weiner 934-935 |
| Hayes Update (6/10/08) | 2(d) Larry Weiner 936-944 |
| Suicide Prevention, Intervention, Precautions & Evaluation Handbook (10/5/09) | 2(d) Larry Weiner 945-957 |
| Memorandum, Nancy Di Zio to DOC & MHM Staff re: Suicide Prevention (11/23/09) | 2(d) Larry Weiner 958-959 |
| Self-Harm Definitions | 2(d) Larry Weiner 960 |
| Self-Injurious Behavior, Suicide Attempt Definitions | 2(d) Larry Weiner 961 |
| Behavioral Management Unit Proposal (11/16/09) | 2(d) Larry Weiner 962-988 |
| Mental Health Classification Proposal | 2(d) Larry Weiner 988-992 |
| Draft Mental Health Classification Form (12/21/09) | 2(d) Larry Weiner 993-995 |
| Draft Mental Health Classification Housing Chart (12/30/09) | 2(d) Larry Weiner 996 |
| Draft Mental Health Classification Form (2/11/10) | 2(d) Larry Weiner 997 |
| Draft Mental Health Levels of Care (3/2/10) | 2(d) Larry Weiner 998 |
| Draft Mental Health Classification Form (3/5/10) | 2(d) Larry Weiner 999-1000 |

23

| Larry Weiner Privileged Documents | |
|---|---|
| Document | Privilege |
| 103 DOC 650 Draft Revision RTU (3/4/10) | Attorney-Client; Work Product |
| 103 DOC 650 Draft Revision RTU (3/5/10) | Attorney-Client; Work Product |
| 103 DOC 650 Draft Revision RTU (3/12/10) | Attorney-Client; Work Product |
| SBCC RTU Program Manual Draft -- Dr. Metzner comments | Attorney-Client; Work Product |
| OCCC Proposal -- Considerations for a Facility-Wide Mental Health Mission (11/12/09) | Attorney-Client; Work Product |
| STP Referral Document -- Dr. Metzner comments | Attorney-Client; Work Product |
| STP Incentive Plan -- Dr. Metzner comments | Attorney-Client; Work Product |
| STP Handbook -- Dr. Metzner comments | Attorney-Client; Work Product |
| STP Accountability Status -- Dr. Metzner comments | Attorney-Client; Work Product |
| RTU Manual -- Dr. Metzner comments | Attorney-Client; Work Product |
| Plaintiff's summary of disagreement -- Dr. Metzner comments | Attorney-Client; Work Product |
| Proposed continuum of care for SMI SMU/DDU (7/10/08) | Attorney-Client; Work Product |
| Attorney Client Communication re: Behavior Management (2/4/10) | Attorney-Client; Work Product |
| Overview of Department's Commitment to MH Care (10/23/07) | Attorney-Client; Work Product |
| Northern Sector MH Participation in Disciplinary Process (12/27/07) | Attorney-Client; Work Product |
| Northern Sector Inmates with OMH Cases on 12/28/07 | Attorney-Client; Work Product |

**Terre Marshall**

The following documents are provided:

| DOC Health Services Executive Staff Meetings | |
|---|---|
| Document | Bates Numbers |
| Agendas and Minutes (9/21/05 -- 1/4/10) (non-responsive entries redacted) | 2(d) Executive Staff Meeting Minutes 1-487 |

24

| DOC Health Services Quarterly Meetings | |
|---|---|
| **Document** | **Bates Numbers** |
| SBCC (11/4/05 – 2/5/10) | 2(d) SBCC 1-86 |
| MCI-Shirley (11/4/05 - 2/5/10) | 2(d) Shirley 1-84 |
| NCCI (11/4/05 – 2/5/10) | 2(d) NCCI 1-54 |
| MCI-Concord/NECC (9/9/05 - 1/8/10) | 2(d) Concord 1-51 |
| MCI-Framingham/SMCC (12/9/05 – 12/4/09) | 2(d) Framingham 1-48 |
| MCI-Cedar Junction (10/7/05 - 1/8/10) | 2(d) Cedar Junction 1-79 |
| MCI-Norfolk (10/7/05 – 1/8/10) | 2(d) Norfolk 1-65 |
| OCCC (9/16/05 – 12/18/09) | 2(d) OCCC 1-54 |

| **Terre Marshall Document** | **Bates Numbers** |
|---|---|
| Corrective Action Plan Draft (2/7/07) | 2(d) Terre Marshall 1-19 |
| Corrective Action Plan Progress Report (3/6/07) | 2(d) Terre Marshall 20-55; 56-91 (second copy) |
| Corrective Action Plan Progress Report (3/16/07) | 2(d) Terre Marshall 92-126- |
| Mental Health Services in the Department of Correction (7/6/07) | 2(d) Terre Marshall 127-129 |
| Mental Health Briefing (7/6/07) | 2(d) Terre Marshall 130-131 |
| Mental Health Services in the Department of Correction (3/10/08) | 2(d) Terre Marshall 132-138 |
| Budget Cuts and Hayes (9/16/08) | 2(d) Terre Marshall 139; 140 (extra copy) |
| Proposed Budget Cuts and Potential Impact on Inmate Care and Safety (9/16/08) | 2(d) Terre Marshall 141-147 |
| Mission Change OCCC (5/19/09) | 2(d) Terre Marshall 148-156 |
| DOC Mission Change Power Point (7/09) OCCC only | 2(d) Terre Marshall 156-173 |
| DMH Forensic Services and DOC (9/24/09) | 2(d) Terre Marshall 174 |
| OCCC Conversion Draft Plan Redacted (11/11/09) | 2(d) Terre Marshall 175-181 |
| OCCC Conversion Draft Plan Redacted (11/16/09) | 2(d) Terre Marshall 182-191 |
| OCCC Conversion Draft Plan Redacted (11/17/09) | 2(d) Terre Marshall 192-202 |
| OCCC RTU Training Outline (1/6/10) | 2(d) Terre Marshall 203-208 |
| OCCC Training Plan Proposal (January 2010) | 2(d) Terre Marshall 208-213; 214-219 (second copy) |
| Memorandum, Hal Smith to Terre Marshall re: Diagnostic Training (2/19/08) | 2(d) Terre Marshall 220 |
| Memorandum, Hal Smith to Terre Marshall re: Mental Health Crisis Stabilization (8/17/07) | 2(d) Terre Marshall 221-224 |
| Memorandum, Aminadav Zakai, M.D. to Terre Marshall re: Accuracy of Diagnoses (2/12/08) | 2(d) Terre Marshall 225-226 |
| Diagnostic System Training Material (answer keys redacted) | 2(d) Terre Marshall 227-293 |

25

| | |
|---|---|
| Memorandum, Kathleen Dennehy to Superintendents re: suicide prevention (12/1/06) | 2(d) Terre Marshall 294-295 |
| E-Mail, Phil Silva to Terre Marshall re: DDU Referrals and Medical Records (1/29/07) | 2(d) Terre Marshall 296-298 |
| Mental Health Services – Residential Units (7/1/07) | 2(d) Terre Marshall 299-300 |
| Mental Health Briefing (7/6/07) | 2(d) Terre Marshall 301-302 |
| Letter, Terre Marshall to Steve Wheeler re: contract requirements/modification (7/30/07) | 2(d) Terre Marshall 303-306 |
| Agenda, Mental Health Program Needs and notes (11/7/07) | 2(d) Terre Marshall 307-323 |
| Notes (3/5/08) Telephone and Social Security Number redacted. | 2(d) Terre Marshall 324-325 |
| Joint Committee on Mental Health and Substance Abuse testimony and information (4/9/09) | 2(d) Terre Marshall 326-367 |
| Notes, Response to Suicide | 2(d) Terre Marshall 368-370 |
| Letter, Terre Marshall to George Johns (12/11/09) re: Mortality Reviews | 2(d) Terre Marshall 371 |
| Letter, Terre Marshall to Leonard McGuire (12/11/09) re: Mortality Reviews | 2(d) Terre Marshall 372 |

| Terre Marshall Privileged Documents | |
|---|---|
| Checklist for Decisions by Acting Commissioner (10/29/07) and cover e-mail to DOC Counsel for attorney-client meeting | Attorney-Client Privilege; Work Product |
| Self-Injurious Behavior list (3/07) prepared by counsel for attorney-client meeting | Attorney-Client Privilege; Work Product |

**Veronica Madden**

| Veronica Madden Document | Bates Numbers |
|---|---|
| Two Copies Hayes Corrective Action Plan (2-12-07) with notes | 2(d) Veronica Madden 1-38 |
| Letter, Veronica Madden to Barry J. LaCroix re: Hayes Q5 (2/20/07) | 2(d) Veronica Madden 39 |
| Memorandum, Veronica Madden to Kathleen Dennehy re: Hayes summary (undated) | 2(d) Veronica Madden 40-41 |
| Media Release re: Hayes Report (2/21/07) | 2(d) Veronica Madden 42-43 |
| Summary: Hayes Report/Corrective Action Plan | 2(d) Veronica Madden 44 |
| Memorandum, Veronica Madden to Mary Elizabeth Heffernan re: Hayes implementation costs (2/21/07) | 2(d) Veronica Madden 45 |
| Letter, Ronald T. Duval to Mary Elizabeth Heffernan re: funding for Hayes recommendations (2/22/07) | 2(d) Veronica Madden 46 |
| Letter, Terre Marshall to Patti Onorato re: Hayes Suicide Report, DOC Response and UMCH Requirements | 2(d) Veronica Madden 47-50 |

| | |
|---|---|
| (2/22/07) | |
| Memorandum Terre Marshall to Nancy White (2/22/07) **[privileged attorney-client communication redacted]** | Attorney-Client Privilege |
| Memorandum Veronica Madden to Superintendents re: court trip notifications (2/22/07) | 2(d) Veronica Madden 51 |
| Memorandum, James Bender to Superintendents re: Emergency Response Bag and Rescue tool (2/26/07) | 2(d) Veronica Madden 52 |
| Memorandum, James Bender to Superintendents re: Disciplinary Offense Self-Mutilation (2/27/07) | 2(d) Veronica Madden 53 |
| E-Mail, Kathleen Dennehy to James Bender, Ronald Duval, Timothy Hall, Veronica Madden, Terre Marshall re: Hayes Corrective Action Plan Documentation (2/28/07) | 2(d) Veronica Madden 54-58 |
| E-Mail, Lisa Jackson to James Bender, Ronald Duval, Timothy Hall, Veronica Madden, Terre Marshall re: Hayes Corrective Action Plan Documentation (3/1/07) | 2(d) Veronica Madden 59 |
| Hayes Assignments | 2(d) Veronica Madden 60-68 |
| E-Mail (3/6/07) with Memorandum, Veronica Madden to Superintendents re: Intra-Facility Communication (3/6/07) and attachment | 2(d) Veronica Madden 69-71 |
| Letter, Veronica Madden to Patti Onorato re: update to 2/22/07 letter (3/12/07) with 2/22/07 letter attached | 2(d) Veronica Madden 72-76 |
| Letter, Terre Marshall to Patricia Onorato re: Notice of Contract Non-Compliance (3/15/07) | 2(d) Veronica Madden 77-81; 82-86 (second copy) |
| Memorandum, Kathleen Dennehy to Kevin M. Burke re: Hayes implementation (3/16/07) with cost estimate attached | 2(d) Veronica Madden 87-88-89 |
| Memorandum, Lynn Bissonnette to Kathleen Dennehy re: Crisis Management Treatment Unit (3/19/07) | 2(d) Veronica Madden 90-91 |
| E-Mail, Veronica Madden to David Nolan re: changes to Booking Policy per Hayes recommendations (3/20/07) | 2(d) Veronica Madden 92-107 |
| Memorandum, James R. Bender to Superintendents re: Daily Segregation Form (3/23/07) | 2(d) Veronica Madden 108-109 |
| Letter, Veronica Madden to Barry J. La Croix re: Hayes & Q5 (4/11/07) | 2(d) Veronica Madden 110-111 |
| CJIS Part 15 Suicide Risk File (3/1/00) | 2(d) Veronica Madden 112-123 |
| E-Mail Veronica Madden to Mary Jo Sweeney re: Hayes Report (4/17/07) | 2(d) Veronica Madden 124 |
| Letter, Veronica Madden to James Walsh re: Hayes recommendation on information on new admissions (4/23/07) | 2(d) Veronica Madden 125-126 |
| Memorandum, Kathleen Dennehy to Mary E. Heffernan re: Hayes Update 5 (4/25/07) | 2(d) Veronica Madden 127-137 |
| NCCI RTU Planning Meeting (5/3/07) | 2(d) Veronica Madden 138- |

| | 139 |
|---|---|
| Memorandum, Terre K. Marshall to DOC/UMCH/MHM Executive Committee re: Executive Committee Meetings (7/11/07) | 2(d) Veronica Madden 140-146 |
| Memorandum, Veronica Madden to James Bender re: Hayes Update (9/4/07) with attachments (1) Hayes Update draft; (2) UMCH Therapeutic Supervision policy; and (3) UMCH Management of Potentially Suicidal Inmates policy. | 2(d) Veronica Madden 146-161 |
| Letter, Ronald T. Duval to Mark Nelson re: Funding Transfer Request -- Hayes Report (11/28/08) | 2(d) Veronica Madden 162-163 |
| Memorandum, Paul DiPaolo to Thomas Dickhaut re: STP interview room access (3/4/10) | 2(d) Veronica Madden 164-165 |
| Memorandum, Paul D. Paolo to Thomas Dickhaut re: STP interview room access (3/12/10) | 2(d) Veronica Madden 166 |
| Table of Inmate Suicides (entries prior to 9/15/05 redacted) | To be provided upon issuance of a protective order. |
| Urgent Matter Report (10/7/05) | To be provided upon issuance of a protective order. |
| Urgent Matter Report (5/5/06) | To be provided upon issuance of a protective order. |
| Urgent Matter Report (12/19/09) | To be provided upon issuance of a protective order. |
| Urgent Matter Report (12/20/09) | To be provided upon issuance of a protective order. |
| Diversion Unit Meeting Minutes (5/29/07) | 2(d) Veronica Madden 167 |
| Mental Health Diversion Unit PowerPoint | 2(d) Veronica Madden 168-197 |
| Management Questionnaire: STP Administrator | 2(d) Veronica Madden 198-204 |
| Interview Questions: STP Manager | 2(d) Veronica Madden 205-208 |
| STP Opening Announcement | 2(d) Veronica Madden 209 |
| Mental Health Services -- Alternative Treatment Units -- Programs, Purpose, Status | 2(d) Veronica Madden 210-212 |
| Brief Description of Specialized Programs | 2(d) Veronica Madden 213-216 |
| Collaboration between DOC and DMH | 2(d) Veronica Madden 217 |
| Mental Health Staffing by UMCH in DOC Facilities (5/1/07) | 2(d) Veronica Madden 218-219 |
| Letter, Veronica Madden to Professor Maze-Rothstein & | 2(d) Veronica Madden 220- |

28

| Mr. Marvin Benay re: Northeastern Law School Report (5/12/09), and DOC response | 232 |
|---|---|
| OCCC Mission Change Meeting Minutes (11/17/09) Dates Redacted | 2(d) Veronica Madden 233-234 |
| OCCC Mission Change Overview PowerPoint | 2(d) Veronica Madden 235-244 |
| Hayes Corrective Action Plan Progress Report (3/6/07) | 2(d) Veronica Madden 245-248 |
| Legislative Briefing, Mental Health and Substance Abuse (4/9/09) | 2(d) Veronica Madden 249-259 |
| Mental Health Statistics (March 2009) | 2(d) Veronica Madden 260 |
| Overview of Mental Health Services in DOC | 2(d) Veronica Madden 261-269 |
| Mental Health Services | 2(d) Veronica Madden 270-279 |
| Joint Committee on Mental Health and Substance Abuse (5/1/07) | 2(d) Veronica Madden 280-296 |
| Advisory Council Medical Review Panel Recommendations | 2(d) Veronica Madden 297-300 |
| Calendar Year 2008 Cumulative Statistics for Mental Health Contacts | 2(d) Veronica Madden 301 |
| Mental Health Statistics 12/98-12/08 | 2(d) Veronica Madden 302 |
| Mental Health Staffing (2/1/09) | 2(d) Veronica Madden 303-304 |
| Mental Health Budget (FY 2009) and reductions | 2(d) Veronica Madden 305-308 |
| Recommendations of External Review of Medical and Mental Health Services in the RFR for Medical and Mental Health Services | 2(d) Veronica Madden 309-320 |
| Memorandum, Deborah Mendoza to Veronica Madden re: Status report of external recommendations (4/6/07) | 2(d) Veronica Madden 321-328 |
| Mortality Reviews from January 2003 (4/9/07) | To be provided upon issuance of a protective order. |
| Preliminary Report,      REDACTED | To be provided upon issuance of a protective order. |

| Veronica Madden Privileged Documents ||
|---|---|
| Memorandum, Commissioner Clarke to Secretary Burke re: DLC Litigation Strategy (8/15/08) | Attorney-Client Privilege: Work Product |

## REQUEST 2(e) – Committee, Subcommittee, Task Force and Panel Minutes

All documentation concerning any committees, subcommittees, groups, task forces or other panels, formal or informal (hereinafter "committee" or "committees") assembled on behalf of DOC or its vendors, including the Segregation Review Committee and the self-Injurious Behavior Committee, to address any of the issues in the Complaint, including but not limited to

(1) the development and/or decision-making process with respect to any contemplated units or programs for prisoners with Mental Disorders including but not limited to those for whom segregation may be clinically contraindicated,

(2) the provision of mental health services to prisoners housed in any of the DOC's segregation units and/or units or maximum security residential programs designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial), and

(3) the development of any criteria or definitions to be used in determining whether segregation is clinically contraindicated.

This request is intended to encompass the membership of any such committees, formal minutes of any such meetings, and any notes taken by any of the committee members during the meetings, to the extent that those documents are available in paper form.

## RESPONSE 2(e) Committee, Subcommittee, Task Force and Panel Documents

Objections     This request is overly broad to the extent that it seeks documents pertaining to "maximum security residential program designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial)." The term "Mental Disorder" encompasses all "Mental Disorders" categorized and described by the current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"). The Department's maximum security Secure Treatment Program ("STP" and Residential Treatment Unit ("RTU") are designed to provide services for a selected subset of prisoners with "Mental Disorders." Further, this request is overly broad and confusing to the extent that it seeks documents pertaining to "other prisoners for whom such units may be beneficial." As this request is structured, the reference to "other prisoners" appears to encompass prisoners who do not have Mental Disorders, and therefore, would not have need for mental health treatment services in maximum security residential programs.

Documents concerning current ongoing initiatives by the Department of Correction to improve the provision of mental health services fall within the scope of the attorney-client privilege. Defendants will provide information on these initiatives as the plans crystallize and when it is practical to do so.

Notwithstanding these objections, and without waiver thereof, defendants produce the following:

30

**Self-Injurious Behavior Committee**

Pursuant to Defendants' April 25, 2008 Response to Request for Production of Documents, Defendants provided the following:

1. Electronic Mail dated June 21, 2007 from Kenneth Nelson summarizing the Self-Injurious Behavior ("SIB") meeting held on June 21, 2007;
2. Agenda for July 6, 2007 SIB meeting;
3. Follow-up to July 7, 2007 SIB meeting;
4. Electronic Mail dated July 16, 2007 from Kenneth Nelson summarizing the SIB meeting held on July 16, 2007;
5. Self-Injurious Behavior Data for July 16, 2007 meeting;
6. PowerPoint: When Ordinary Interventions Don't Work: Behavior and Risk Management with the Self-Injurious Inmate," John S. Wilson, Ph.D. & Hal Smith, MPS, CCHP, August 23, 2007;
7. References for "When Ordinary Interventions Don't Work;"
8. Minutes for October 11, 2007 SIB meeting;
9. Agenda for November 29, 2007 SIB meeting;
10. Minutes for November 29, 2007 SIB meeting;
11. Behavior Management Plan for
12. Behavior Management Plan for REDACTED
13. Behavior Management Plan for ı;
14. Behavior Management Plan (unspecified);
15. Minutes for January 24, 2007 SIB meeting;
16. SIB list (handwritten) July 1, 2006 to June 30, 2007;
17. DOC/UMCH Self-Inflicted Injury Data;
18. MCI-Cedar Junction Incident Monitor List (by inmate name)
19. MCI-Cedar Junction Incident Monitor List (by date – June 28, 2006 to June 29, 2007);
20. MCI-Cedar Junction Incident Monitor List (with staff hour, security cost and medical cost);
21. Incident Tables;
22. Agenda for April 3, 2008 SIB Meeting.

The following documents are provided:

| Self-Injurious Behavior Committee Document | Bates Numbers |
|---|---|
| Minutes (6/19/08) | 2(e) SIB 1-3 |
| Minutes (3/11/09) | 2(e) SIB 4 |
| 2009 High Incident Inmates Spreadsheet | 2(e) SIB 5 |
| 2009 Self-Injurious Behavior by Type Spreadsheet | 2(e) SIB 6-7 |

**Central Office Segregation Review Committee**

The following documents are provided:

| Central Office Segregation Review Committee Document | Bates Numbers |
|---|---|
| Segregation Review Committee document | 2(e) Seg Review 1 |
| Central Office Segregation Review Committee Summary | 2(e) Seg Review 2 |
| March 24, 2009 Review | 2(e) Seg Review 3-6 |
| May 7, 2009 Review | 2(e) Seg Review 7-10 |
| June 15, 2009 Review | 2(e) Seg Review 11-16 |
| July 23, 2009 Review | 2(e) Seg Review 17-19 |
| August 31, 2009 Review | 2(e) Seg Review 20-22 |
| September 28, 2009 Review | 2(e) Seg Review 23-26 |
| November 6, 2009 Review | 2(e) Seg Review 27-30 |
| December 14, 2009 Review | 2(e) Seg Review 31-33 |
| January 25, 2010 Review | 2(e) Seg Review 34-37 |
| February 22, 2010 Review | 2(e) Seg Review 38-42 |
| March 29, 2010 Review (Redacted) | 2(e) Seg Review 43-44 |
| April 26, 2010 Review (Redacted) | 2(e) Seg Review 48-52 |
| May 24, 2010 Review (Redacted) | 2(e) Seg Review 53-57 |
| June 26, 2010 Review | 2(e) Seg Review 44-47 |

## Executive Meetings

Executive Staff, Command Staff and Superintendent meeting minutes from September 15, 2005 compiled in electronic form were searched for the appearance of terms relevant to the complaint (e.g., mental health, suicide, Disability Law Center). Responsive entries are provided. Redactions of privileged entries are noted where made. Copies of the non-privileged relevant pages of the minutes are provided where the entries are very lengthy, and the document Bate Stamp numbers are noted.

| Date | Meeting Type: Command, Supt., Executive | Entry |
|---|---|---|
| 1/03/06 | C | Hard to Place Inmates with Mental Health Histories – some inmates w/mental health issues preclude them from DDU placement.  Some of these inmates are extremely violent.  How do we manage these cases?  They need to be on the DDU level of restriction.   UMass states we need a therapeutic secure environment.  Need a level 6 RTU.  Umass will do research in other states to see what is the national mode.  Directors Hallet and Vicari are researching various programs and workbooks that can be in effect in DDU.    AC Madden spoke about implementing the programming prior to reopening the unit. |
| 1/17/06 | C | DDU – ahead of schedule on the contract issues.  Caulking and painting still need to be done.  Original target date was late February, but they are close to wrapping up. Interim |

32

|  |  |  |
|---|---|---|
|  |  | Superintendent Marshall wants to have everything painted by mid-February. Caulking people will be in, in approximately one week. Interim Superintendent Marshall is hoping to have everything done by March 1st. He and ADC Hall toured a facility in Connecticut last week to observe the management of inmates with mental health issues. The Deputy Commissioner feels we need options for mentally ill inmates in DDU. Money is an issue. KMD feels this may have to be packaged as a budget expansion request, perhaps as a GCCR package. Spoke about the need for programs and a phase-out from DDU. The Commissioner spoke about bringing in an expert. AC Duval set aside money for a consultant. Acting Superintendent Marshall and ADC Hall will develop a concept paper by April 2nd. Spoke about Unit Management at SBCC and CJ but no money to fund the positions is an issue. Directors Hallett and Vicari are developing program enhancements for DDU. We also need a reentry plan for DDU as some of these inmates are released from DDU to street. |
| 2/21/06 | C | <u>Legislative Hearing for Mental Health and Substance Abuse</u> on March 20th. Information being gathered on psych meds, total cost and types of meds. Is there anyway to obtain how many mental health watches conducted throughout the DOC. Staffing matrix needs to be reviewed. Also need substance abuse expenditures. |
| 3/15/06 | S | <u>Suicide Prevention</u> – Superintendents are to check housing units to ensure there are shears to cut inmates down from hanging attempts. Finding that staff were bringing in their own knifes for this purpose. DOC 501 policy now includes language prohibiting personal knives – effective April 1, 2006. supt. Nelson suggested to test the shears every month – as some staff may use them to cut soap, paper etc. dulling them. |
| 4/18/06 | C | <u>Mental Health Public Hearing – Reminder</u> – At a recent Mental Health Public Hearing there were family members of inmates _REDACTED_ who committed suicide. The Commissioner stated the autopsy for Rodriguez came in on Friday and she referred to AC Madden. Also the Commissioner is looking to have the investigation finalized and then Legal to review and redact. The Commissioner will be meeting with family members of inmates _REDACTED_ on Monday, May 1st. |
| 5/16/06 | S | <u>Use of K-9's</u> – in the process of rewriting the K-9 policy. We will outlaw the use of K-9's for cell extractions. There are a disproportionate number of level six inmates with |

| | | mental health issues.  The Commissioner believes we will see something published nationally about the use of K-9's in corrections. |
|---|---|---|
| 7/12/06 | S | The Commissioner and other EStaff members met with inmate families and MCSL who attended the March Mental Health Public hearings.  They have asked for investigations as related to their relative's suicides |
| 7/18/06 | C | Closed door restrictive awaiting action status policy – Commissioner Dennehy stated we need a sense of UMass's response to request to screen individuals with open mental health cases for closed door status.  AC Madden will check with Health Services and Acting ADC Nelson will check with Interim Superintendent Marshall. |
| 8/01/06 | C | Suicide – Commissioner announced along with AC Madden that Lindsey Hayes who is a consultant and national expert in this area has agreed to look at our suicide curriculum and the identification of higher risk offenders. |
| 9/19/06 | C | Mental Health hearing with Legislature –   REDACTED investigations.   Commissioner Dennehy stated these investigations need to be redacted by Legal as the families requested these.   UMass and DOC will have a follow up meeting with other families and MCLS who attended the March Mental Health Public Hearing at the State House <br> Suicide Prevention -- Commissioner Dennehy advised we approach national expert Lindsey Hayes to conduct a system wide review of our policies and procedures.  Larry Weiner is scheduling site visits to facilities.   Superintends are to identify a liaison to take Mr. Hayes on tours.  Director Dupre should be involved in site visits.  The Commissioner wants Mr. Hayes to look at each facility's site procedures for the 650 policy.  The Commissioner wants Legal involved in the process.   Mortality reviews follow-up is not discoverable.  The Commissioner wants AC Madden and her to meet with Mr. Hayes to highlight our concerns. |
| 10/11/06 | S | Consultant Lindsey Hayes – The Commissioner advised staff that Mr Hayes is recognized as a national expert on prison suicide.  He will look at our practice and procedure.  Our goal is to improve the practice.  The review is in process. <br> Segregation Units housing inmates for extended periods of time – DC Bender stated there appears to be a problem in the sense that inmates are kept in segregation for an extended period of time.  If an inmate is in segregation due to a PC issue, he should be placed in a PC unit.  There are inmates in segregation awaiting DDU hearings & placement at MCI-CJ.  The units at MCI-CJ should be completed within two weeks. |

34

| | | |
|---|---|---|
| | | States won't take mental health and security threat group inmates per Director Mici. Spoke about looking at administrative protective custody. Director Mici will get the Deputy Commissioner a list of those inmates who are in segregation. |
| 11/07/06 | C | Closed Door Status – Commissioner Dennehy stated this has to do with MCI-Cedar Junctions procedures = they are not finalized yet – need mental health piece. November 14th is the next scheduled meeting of AC Madden, General Counsel White and ADC Hall. |
| 11/15/06 | S | Disability Law Center (DLC) Review – Commissioner Dennehy stated the DLC will be conducting tours at MCI-Cedar Junction and SBCC – specifically touring segregation units, DDU and mental health services to inmates in segregation. General Counsel White added that we've had very limited interaction with them to date. The Commissioner and General Counsel White are meeting with them prior to the tours. Commissioner Dennehy stated this organization can do their own investigation. We need to be open and transparent and cooperative. They will be touring CJ and SBCC in late November. |
| 1/16/07 | C | The Commissioner noted the Congressional Quarterly Researcher report. This addition pertains to prison health care and mental illness. Director Martin will distribute to the former CAC members, U/S Heffernan and Representative Festa. Again, the Commissioner stated we need to establish a list of stakeholders to send information to. |
| 2/06/07 | C | Suicide Shears – will be deferred. Commissioner Dennehy stated the suicide rate has increased in the past couple years. The DOC reached out to Lindsay Hayes, who is a national expert on suicides. His report is lengthy and hard-hitting. It will take several days to develop an action plan and response. We need a communication strategy on how to release it. Once we have an action plan that can be distributed, the report will also be distributed. Need to ensure that EOPS and Governor's Office are properly informed. Director Matin and Director Wiffin will put together a press package and include an executive summary. Mental Health – Disability Law Center (DLC) – The Commissioner stated the DLC is an advocacy group. We are in ongoing discussions with them. Consideration of filing a class action suit regarding mental health inmates. Many of their concerns will be rectified with the new RFR. We are in the process of preparing a written response to keep them apprised of what we plan to do. |

35

| 2/14/07 | S | Viewing of 2/11/07 "60 Minutes Segment on Michigan DOC" – Death of mentally ill inmate in the Michigan DOC. Commissioner Dennehy asked the Superintendents and Department Heads to think of two things – why it couldn't happen here? And what about our system could allow this to happen? |
|---|---|---|
| | | The Commissioner encouraged managers to read newspapers, specifically the Boston Globe and the Boston Herald |
| | | The topic of mentally ill offenders in corrections is in the media – particularly the number of suicides. We will never eliminate the risk for suicide but we need to reduce it. We need to recognize at time of admission inmates mental health issues. Particularly troublesome is the fact that half of the suicides were not open mental health cases. Some of the suicides occurred in segregation and some in the health services unit, one in a residential treatment unit and one in general population. Last April, Commissioner Dennehy reached out to Lindsey Hayes whose expertise is the prevention of suicides in correctional settings. He's written a report on our system. Mr Hayes began in September 2006 and was finalizing it in December – however over the holiday season in December we had 3 suicides. Therefore we asked him to extend his contract and look at those suicides as well for a more comprehensive review. We received this report last week. The Commissioner will give copies of the Hayes report and the Executive Staff's action plan in response to this report once she gets the green light from EOPS. We have to be strategic on how we release this report, as we need to educate stakeholders and employees. There are some outside agencies that are mentioned within this report (ie county inmates should not come to DOC without their mental health status). We need to extend a professional courtesy to the agencies noted within this report. Hayes recommendations fall mostly under training – annual training and pre-employment training. Director Dupre is already at work on this and training is in place for the next class that begins Monday. Need to revise policy language to make our expectations clear. Other recommendations were around identification and screening and adjusting Q5 and IMS entries. Need to work with union staff. |
| | | Commissioner directed Superintendents not to go back and change any operations!! Or negotiate with union stewards. Direction will be given in writing, particularly to Superintendents. We must also improve communications between agencies and line staff. The Commissioner stated E |

| | | |
|---|---|---|
| | | Staff has been in preliminary discussions with the Disability Law Center (DLC) in conjunction with other advocacy groups who are considering filing a class action law suit around our handling of mentally ill inmates. They've done this to Ohio, Indiana and Connecticut. They've put together a settlement agreement. We've shared Hayes' report with DLC. |
| 3/14/07 | S | DLC Lawsuit – Commissioner Dennehy stated that if anyone asks anything about this lawsuit, our official comment is "No Comment". Commissioner Dennehy directed to staff that the 650 policy mush be followed and memorized. Superintendents own it. |
| 4/03/07 | C | Suicide Prevention Training – Curriculum for eight hour training distributed. Director Dupre stated that two classes have been held already and both sessions went well. Recruits gave great feedback – they understand issues around the special needs population.<br>Several issues: Mental health watch protocols – need interpretation; code 99 response to suicide attempts, especially hangings – securing the inmate on a safety standpoint (cuffed, etc) General type of message must be given. The Commissioner cannot see handcuffing in the event of a suicide attempt by hanging. The Commissioner asked Director Nolan to reach out to NIC and Fort Devens to inquire as to their protocol for inmates on segregation status vs. general population inmates. The Commissioner wants Directors Marshall, Nolan and Dupre, the Deputy Commissioner and ADC Nelson to meet as a group to discuss these issues. ADC Nelson will chair. We need to determine our position, relate it to the Union, and then to staff. Protocols will go to Superintendents and ITO's to incorporate in their mock drills. Site specific will change to Monday following new employee orientation to accommodate the extra curriculum. |
| 5/15/07 | C | 15 Minute HSU Rounds – Began 15 minute rounds in HSU on May 13th. Hope to implement 15 minute rounds in segregation units within 30 days – we are waiting for funding. Does a round period begin at the beginning of the round or at the conclusion of the round? We may have to decide if we want to do 15 minute rounds – how feasible it would be, as the cost is high. Mr Duval will discuss with Mr Bender to decide. |
| 7/03/07 | E | Command Staff Small<br>650 – Mental Health Services (Terre Marshall)<br>External Stakeholders Feedback (Acting Comm Bender)<br>Discussion about Globe Spotlight Team (Sue Martin) |

37

| | | | |
|---|---|---|---|
| | | | Diversion Unit (Acting Deputy Commissioner Hall) Redacted Minutes – **Bates Numbers: 2(e) Hayes Training 266-267.** |
| 7/11/07 | E | | Command Staff Large <br> <u>Globe Spotlight Team</u>- Many of you have hosted the Globe doing interviews with inmates at some facilities. This issue started back in December of 2006 with inmate Rommel Jones late release. They want mortality reviews, information on suicides, category I & II, information on late and early releases. Inmates they are talking to have either mental health issues, attempted suicide, some have roomed with or shared same tier where inmates committed suicide. Common thread- what is it like here, how are the CO's, have you witnessed any suicide. Director Wiffin does not know when this story will be coming out.   Reporters have been very complimentary of staff. |
| 8/08/07 | E | | Command Staff Large <br> <u>Contract Transition (UMASS & MHM)</u> <br> AC Madden stated UMASS, MHM, Spectrum and FHS will meet to discuss issues (medical/mental health/substance abuse). This should improve communication. On August 3rd Acting Commissioner Bender sent an email regarding new procedures involving inmates who are open mental health cases. Inmates with open mental health cases will be screened for segregation placement within 4 hours by a mental health clinician. MHM personnel is too thin to accommodate at this point. Compromise is to place inmate on eyeball 1 on1 watch in HSU pending the arrival of the mental health clinician to conduct the segregation screening, the next morning  if there's no staff a the facility at the time. |
| 10/10/07 | E | | Command Staff Large <br> <u>Globe Spotlight Team Update</u> -- started in December 2006 after the issuance of the DLC lawsuit. The Team is getting a lot of info from MCLS Leslie Walker. Over 25 inmates have been interviewed and over 20 FOIAs have been submitted. We have done everything to be open and transparent.  The Team has toured the facilities including DDU. Per Director Terre Marshall, it was clear that the intent of the Globe is to split UMass and the DOC, but that did not happen. <br> It appears that the article will be negative toward the DOC. We have acknowledged that we have had staff issues from management down the ranks and discipline has been taken. It may go to print in early November.  The article will be shown to the Acting Commissioner prior to going to print. If there are any false issues, the reporter has agreed to review it with him.  It is clear that the Team is striving for a Pulitzer |

38

| | | Prize for this article. |
|---|---|---|
| | | Per Director Susan Martin, the DOC is preparing a response strategy. |
| | | The DOC will get interviews with television and radio stations after the article is published. |
| 12/14/07 | E | Assignment of Mental Health Regional Administrators - We did get the supplemental funding for expansion positions. 39.1 positions - this includes Souza Baranowski Correction Center RTU and Secure Treatment Program.  Maximum security segregation units will have an assigned clinician to be available daily. MCI Cedar Junction will have an increase in psychiatry - 2 additional clinicians assigned to DDU and 10 Block and the behavior management unit. MCI Framingham will have additional services; behavior management unit, crisis intervention - to provide services for intense mental health issues to awaiting trial inmates. |
| | | MCI Norfolk and MCI Concord will have additional psychiatry. North Central Correctional Institution will get one additional position for the RTU.  Every inmate entering MCI Concord with history of mental illness will have complete review within one week of admission. Expansion also includes Norfolk Infirmary - 16.45 additional infirmary positions to provide 24/7 coverage. Mental health includes Bridgewater State Hospital and expansion for their infirmary. |
| | | Globe Spotlight Series- Deputy Commissioner Bender thanked Director Martin and especially Director Diane Wiffin of Public Affairs for their work over the last year. 25 FOIA's and interviews and attended each one. |
| | | Director Martin stated the Globe ran a 3 part story starting 12/9 – 12/11. There were editorials and letters to the editor. Also a press conference by Representative Ruth Balser regarding no mentally ill inmates should be placed in segregation.  We don't know how this will play out with the Disability Law Center (DLC) lawsuit or legislature. |
| | | Don't believe the stories were as hard hitting as they could have been to the DOC - there hasn't been an outcry of calls. We are working on a response from Commissioner Clarke and Department of Mental Health Commissioner Leadholm beginning next week. Department of Mental Health Commissioner toured MCI Cedar Junction with Commissioner Clarke and she was impressed.  The articles did not address the fact that the DOC has acknowledged the shortcomings of handling our mental health inmates. No mention of the GCCR recommendations, the medical RFR, the Hayes report.  The impression of staff who tells inmates |

39

| | | |
|---|---|---|
| | | to hang it up was not a representative number - it would be more like 5 officers who had said this to reporters with out DOC permission.<br>On the Globe website - there are videos, photos of families and inmates -- other articles on this site.<br>The Commissioner has been asked to be interviewed by 3 Globe reporters. It may happen after the holidays.<br>Director Martin thanked Command Staff for their cooperation when doing media tours and when we've asked for information. |
| 1/29/08 | E | Disability Law Center (DLC) Lawsuit - We are meeting internally with DOC staff as well as with DLC. We are under tight deadlines of information exchanges. We have a meeting with them tomorrow. There is disagreement between us in regards with terms of diagnosis. We are working with MHM to come up with a meaningful clinical assessment.  Also need to come up with the numbers we are dealing with. Per Deputy Commissioner Duval, some funding is on the way. Commissioner Clarke stated further conversations are needed on this topic.<br>House Bill 1313- AN ACT RELATIVE TO CONFINEMENT CONDITIONS AND TREATMENT OF PRISONERS WITH MENTAL ILLNESS. We have until today to respond to EOPSS, as they need to get the information to Representative Balser by 2pm today. |
| 2/05/08 | E | Disability Law Center Lawsuit - struggling with number of inmates who are open mental health cases. Meeting with DLC this Thursday and their attorney's.   Mental Health Regional Administrator  Larry Weiner did some numbers for us - 2.744 open cases - 2, 089 males - balance is females. We should go 10-15% above what we've recognized. There are 1,351 that fit the definition. We are looking to see who is currently incarcerated in the special housing units. Looking at beds and where we would like this unit designated - looking at Old Colony Correctional Center (OCCC). Deputy Commissioner Bender asked how many of the 1,351 are in segregation. MH Regional Administrator Weiner stated about 100. Deputy Commissioner Duval stated if we look at OCCC we can control the inmates in the housing units with their own yards -- and have one place where staff are trained and one place the mental health staff would have to go. From a cost effective stand point. modifications to the facility would be minor. Commissioner Clarke stated we should continue this conversation sooner than later. Executive Assistant Farrell to coordinate meeting with the 3 Deputy Commissioners. |

40

| 2/19/08 | E | Mental Health Watches – about a week ago, IMS screens were updated to include changes that were identified via the Hayes recommendation for recreation of inmates on mental health watches. ADC Hall asked if this was ready to be implemented. One of the themes of the Hayes report is we treat inmates on mental health watches punitively – we take everything away from them, take away visits, etc. At Bridgewater State Hospital they take a different approach- they place inmates in specific housing units- 15 minute checks- they're allowed to recreate with other inmates in that unit- when they go back to their room, they're strip searched. Is this something we want to look at doing at other facilities? DC Bender asked where would you take them to for recreation. Do we have the staff to do this?  How are we going to do this? DC Duval stated within the 53 slots, we've asked the superintendents to factor that in.  ADC Hall stated we are not ready at this point to implement, as we need to look at the plans further.<br>Eyeball Watches - ADC Hall stated we need to look at the cells at MCI Cedar Junction, as there was an incident where an inmate was on an eyeball watch, but was hiding under the bed and an officer couldn't see him. DC Duval suggested that some cells have bunks and mattresses in others? Legislative Manager O'Malley suggested a jumpsuit that's not porous- hazmat material like the police officers wear. Commissioner Clarke asked DC Bender to meet with the ADC's and others to look at this issue.  Acting Director Fox stated there are hazmat jumpsuits that are available and inexpensive.   DC Bender will ask Acting Director Fox to meet as well.<br>Hayes report - The 9 block was identified for renovations - barred cell doors.   There is $15 million in bond bill for renovation of infrastructures. Deputy Commissioner Duval stated we need to remove the furnishings - not staffed at the moment. We need approximately $500,000 to complete the 9 block.  Industries is finishing the beds and they should be installed in a week or so per Director Silva.<br>Commissioner Clarke, Deputy Commissioner Madden, Director Diane Wiffin all met with EOPSS, Legislators and the Department of Mental Health Commissioner regarding mental health and where we stand. They refuse to acknowledge what we've done. Deputy Commissioner Madden has done an outstanding job of conveying what we've done. We have established a working relationship at this time. |
| 2/12/08 | E | Inmate Attempted Suicide at MCI Concord - Inmate was sent |

41

| | | |
|---|---|---|
| | | to the hospital Saturday night according to Superintendent Pepe. ADC Hall is concerned with inmates attempting to hang themselves off their beds. ADC Hall suggested we remove the beds from these cells and look into purchasing special types of beds. Director Marshall will talk to MHM to see if there are any other suppliers. Director Silva stated Industries is fabricated beds for the 9 block and will install for all to see, there are no corners on these beds. |
| 3/04/08 | E | Mental Health/Suicides- Commissioner Clarke asked Deputy Commissioner Madden to draft a thank you letter to Representative Balser and Representative Khan, etc. for meeting with them on February 14th. Deputy Commissioner Madden will have this letter ready today. <br> Disability Law Center Lawsuit (DLC) – General Counsel White is waiting for Judge Wolf to schedule a status hearing. Lois Russo, Lindsay Hayes, Peter Heffernan were all served. DLC needs to get back to us on the dates we have on hold. |
| 3/18/08 | E | Disability Law Center (DLC) Lawsuit – Commissioner Clarke met with the Disability Law Center the Executive Directors and MCLS. Last week, Stan Eichner made an announcement that he will be leaving DLC. Deputy Commissioner Madden and Director Marshall will be meeting with Judge Wolf on Friday at 11 a.m. in regards to the status conference. |
| 3/25/08 | E | Secure Treatment Program (STP)-Acting Commissioner Madden distributed a draft announcement of this program to go out to staff via the Intranet and external stakeholders to include Legislators and media.   Director Sue Martin suggested we also do a press release. Acting Commissioner Madden would like to release this upon Commissioner Clarke return. We should also send this to EOPSS. We are seeing positive reaction with this population. We are placing two more inmates into the program today and two more next week, bringing the total up to eight.   Then we'll review to see if we can increase the numbers.   Director Silva will advise when Director Karr will have the suicide prevention furnishings set up in a cell for all to see before making more. <br> Disability Law Suit (DLC) – [Privileged Attorney-Client Communication redacted]. <br> House Bill 1896 – An Act Relative to the Treatment of Prisoners- We need to submit a briefing to EOPSS by end of the day.   This bill is in regards to a prisoner who either commits self-mutilation or attempts suicide shall not be disciplined or punished for such behavior, nor shall the prisoner be segregated or isolated except to the extent specifically authorized by medical staff for treatment. The |

42

| | | |
|---|---|---|
| | | use of "closed solid door isolation," so-called, to punish or manage suicidal or self-mutilating prisoners is specifically prohibited.  A prisoner who commits self-mutilation or attempts suicide shall immediately receive appropriate medical attention and shall be interviewed by a licensed psychiatrist within twelve hours of the incident.  Legislative Manager O'Malley asked to meet with Acting Commissioner Madden, General Counsel White, and Acting Director Weiner after this meeting. |
| 4/01/08 | E | Disability Law Center (DLC) Lawsuit- Director Marshall stated plaintiffs and defendants need to file by Friday - they propose a mediator. |
| 4/09/08 | E | Mental Health Security Beds – Supt Pepe had two attempts at suicide, one serious. Each inmate tied a device around his neck and tied it to the bed. Per Kyra Silva, Industries made a stainless steel suicide resistant bed that's being installed at CJ. However, an inmate cannot be restrained to the bed. The Commissioner wants a group formed to research and find an appropriate bed.   D.C. Bender will appoint the members. |
| 4/15/08 | E | Update on the Disability Law Center Lawsuit – [Privileged Attorney-Client Communication redacted]. |
| 4/22/08 | E | Disability Law Center (DLC) Update – Last Thursday we exchanged settlement proposals. DLC has gone further than what they have asked for. They are looking for another clinician other than UMASS to assess inmates – looking to have a monitor.  We have until 5/6 to respond back to them. |
| 5/20/08 | E | Assistant Deputy Commissioner (ADC) Hall informed the group that an inmate at North Central Correctional Institution (NCCI) was placed in mental health restraints, which hasn't occurred in a long time.  Director Marshall hopes that this may be a change in practice as the decision to place an inmate in these restraints should be a clinical decision. She further stated that the current mental health provider M.H.M. does not make this decision as they follow the Bridgewater State Hospital (BSH) standard.  The responsibility of placing an inmate in mental health restraints is often placed back on security staff when it shouldn't be. Discussion of the differences in an "eye ball watch" vs. "15 minute watch".   These types of watches are based on a clinician's judgment as well as the degree of risk.  Director Marshall states that the situation over the weekend shows that alternatives are being used.  Discussion of qualifiers for mental health restraints. ADC Nelson stated the following three things are needed prior to placing an inmate in mental health restraints which are: required any time an inmate has |

43

| | | |
|---|---|---|
| | | an open mental health case prior to being placed in a Special Management Unit (SMU), an inmate goes on an eyeball watch until they can be seen by appropriate medical personnel, and the least restrictive means should be utilized to maintain inmate and staff safety.  There is a risk to both staff and inmates when an individual is placed in restraints when it is not necessary.  Discussion of direction given to Superintendent approximately 14 months ago that there should be no push back with mental health staff in regards to the types of watches as well as durations. This directive appears to be going well. |
| | | Discussion of the number of eyeball watches and 15 minute watches and its impact on staffing.  Further discussion on alternative methods that may be cost effective such as cameras and MCI-Framingham's current practice of placing two women in a cell together.  Commissioner Clarke would like to revisit this matter with Director Marshall and appropriate DOC personnel and subsequently invite a representative from M.H.M to join DOC personnel in these discussions. |
| 5/27/08 | E | Disability Law Center Lawsuit – General Counsel White had a meeting last Monday with the attorneys only. The internal conversation was in regards to exchanging ideas. The next meeting is being held next Wednesday to discuss: 1) segregation centralized process; 2) quoting their expert, enhanced services; they would like us to think about the information that was received. [**Privileged Attorney-Client Communication redacted**]. |
| 6/11/08 | E | [**Privileged Attorney-Client Communication redacted**]. |
| 6/24/08 | E | General Counsel White provided a brief update on the DLC. She advised that they exchanged information last week and has not heard from them. There is a meeting scheduled for Friday.<br><br>ADC Hall initiated a brief discussion regarding segregation screenings and eyeball watches. He indicated that perhaps there should be an on-call person on the weekends for this purpose as no one is available to clear individuals on watches which results in rising costs to the department. Deputy Commissioner Duval stated that Commissioner Clarke would like this issue discussed further as well as looking at ways to reduce costs associated with these watches.  Director Marshall indicated that she believed a meeting has been tentatively scheduled to discuss these issues. |
| 7/08/08 | E | DOJ Worcester County and HOC Report<br>[Worcester] Failure to Provide an Appropriate Array of |

44

| | | Mental Health Services<br>Hayes Report Status Updates as of June 10, 2008<br>Redacted Minutes - **Bates Numbers 2(e) Hayes Training 268-273.** |
|---|---|---|
| 7/29/08 | E | Deputy Commissioner Madden stated that the Disability Law Center toured Souza Baranowski Correctional Center on 7/28 – this went well. Tony, Rollie and Emily did a presentation on the Secure Treatment Program (STP). The Disability Law Center would like to meet again on 8/19 -- and gather their experts together to meet the following week. Inmates were out in their therapeutic modules. |
| 8/26/08 | E | <u>Mental Health Unit</u> -- we are looking to concentrate most of our mental health cases to one institution. We are looking to create a Mental Health unit at Old Colony Correctional Center. This request has been submitted to EOPSS and is approved and supported. Commissioner Leadholm has been invited to think about what we are proposing to do and join us in conversation. Deputy Commissioner Madden and Director Mici along other staff members will be getting together to discuss this issue. Director Marshall stated that we are meeting with the Department of Mental Health and MHM on September 11th and the 19th to discuss these issues. We are still in the planning stage.<br><u>Disability Law Center Lawsuit (DLC)</u> – **[Privileged Attorney-Client communication redacted.]** |
| 9/18/08 | E | <u>Q-5</u> – lot of questions about flagging of Q-5 for mental health watches. If it's in relation to suicidal ideation or an attempt at suicide, it should be flagged in Q-5. CHSB is on-board with this, so counties and lock-ups will be on same page.<br><u>Health Services</u> – they found our services to be good and even recommended reducing mental health care. MGT was surprised on how many mental health admissions we have and how BSH is the hospital to which people are committed. Also noted were 30-day commitments to MASAC and the serious medical conditions as well as those at BSH. They made recommendations for the care of terminally ill inmates (hospice care, compassionate medical releases, and long-term care.)<br>The Commissioner spoke about how Massachusetts has a challenge in relation to suicides and suicide attempts. We need to discover why we have these challenges. |
| 9/23/08 | E | #8 – Ongoing – no new update.<br>Deputy Commissioner Madden noted a recent discussion regarding DLC negotiations, relative to mental health watches. A directive was put in place requiring a mental |

45

| | | |
|---|---|---|
| | | health staff person to clear an inmate from a mental health watch. She would now like to propose to change this back to having nurses clear the mental health watch. More training has been provided to the nurses since they Hayes Report recommendations and it is felt that this can be done effectively by the nurses. **[Privileged attorney-client communication redacted]**. Commissioner Clarke approved and ADC Terre Marshall will draft a directive to staff.<br><br>Deputy Commissioner Madden asked when the George Camp report will be finalized, as DLC is requesting a copy. Deputy Commissioner Bender will reach out to Mr. Camp and will advise.<br><br>Deputy Commissioner Duval<br>#11 – A lot of this has been done. Director Jeff Quick is taking a look at what has been done to date to the cells for suicide watches.   D/C Duval will report back once he receives the information from Director Quick. |
| 11/04/08 | E | Exercise for Inmates on Mental Health Watches - twice we have gone ahead and assessed the facilities that have the abilities to provide exercise for inmates who are on mental health watches. ADC Hall stated Superintendent Bissonnette submitted the 103 DOC 650 Mental Health Services procedure was objected. Deputy Commissioner Madden stated that we agreed that it would be a clinical assessment - could they receive phone calls, showers, under impression only a few facilities that could not do this if determined appropriate – it all depends on the custody level. If we agreed that they could exercise – this would not take place everyday due to staff shortage. This should not be punishment and we should not be taken exercise out of the regulations. ADC Hall stated we will look at those plans and move forward. |
| 12/16/08 | E | Slide 8- specialized services for mental health population. General Counsel White added to the talking points - mentally ill offenders are being incarcerated and it is a reality and the department has to provide care and treatment for this population. Commissioner Clarke stated cross discipline we need to get everyone's input putting these slides together. We need to build a better case with this slide. |
| 1/27/09 | E | Deputy Commissioner Madden stated that Deputy Commissioner Bender and she have convened segregation review committees. She sent out an email late last night to superintendents for their staff to identify inmates with SMI for over 30 days and we will begin review within 30 days. Deputy Commissioner Madden also mentioned the Globe article this morning in regards to the recent suicide. Leslie |

46

| | | |
|---|---|---|
| | | Walker of MCLS commented in the article that this inmate was beaten badly by officers and was transported to an outside hospital. Commissioner Clarke wants to be able to go back to the Globe and tell them that this is not true - we should be aggressive in our response. If the incident did not occur than we need to say this. Deputy Commissioner Bender will look to see if there is an investigation in regards to this specific matter. |
| 2/03/09 | E | <u>Suicide</u> - the inmate suicide continues to be under investigation as it generated a lot of interest to include inquires from the Governor's office. There are questions regarding staff response time, timing of ambulance - host of issues that need to be addressed and reviewed. Number of lessons learned and changes that need to occur. We can not say that they played a part in the inmate's death - we need to look at our practices and polices and training for staff. |
| 3/11/09 | E | <u>Joel Andrade, Clinical Operations Specialist/MHM Services</u> (e-mail **[Redacted e-mail address]**) <br> <u>Violence in Correctional Facilities: Assessment, Treatment and Risk Management</u> <br> <u>Other areas of the presentation:</u> <br> Mental Illness and Prison Violence; <br> Personality Disorders, Psychopathy and Prison Violence (Common Personality Disorders in Correctional Systems: Antisocial P.D., Borderline P.D. and Paranoid P.D.); <br> Why differentiate between "normal" and mentally ill offenders; <br> Treating Personality Disorders: A long-term Risk |
| 5/12/09 | E | Commissioner Clarke was concerned that the inmate had been in segregation for several days without being notified as to why. Commissioner Clarke stated that this is not acceptable and requested that a directive be issued that all inmates should be told within 24 hours of why they are being placed in segregation. Clarification regarding what can be told to inmates was discussed regarding pending investigation cases, and the Commissioner stated that something must be told to the inmate as to why they are being placed in segregation. Commissioner asked for the ongoing practice of how we notify inmates currently. Discussion ensued regarding our current policy. Acting Deputy Commissioner DiPaolo to retrieve policy and discuss with Commissioner. |
| 8/25/09 | E | On September 9th there is a mental health hearing where three (3) bills that have some affect on us - repeat bills from previous years and standardize all mental health services at |

47

| | | |
|---|---|---|
| | | all correctional facilities – we do this already and it is the counties that will be adversely affected. Representative Khan is still looking for full accreditation and one from Biron Rushing that we are not able to discipline inmates for suicide attempts - which we already do not. |
| 10/06/09 | E | <u>OCCC Mission Change</u> - ADC Marshall and Mici stated they met as a group with OCCC administration and HSU staff regarding the converting of OCCC to a mental health facility. SBCC RTU inmates to OCCC. The question was how separate and apart do we need to keep these inmates. Maximum/medium security or establish 2 RTU's to manage these populations.  ADC Mici stated one maximum unit 45-50 inmates it will clearly be dual custody, the only difference would be the property- we transport them the same, feed in. You can mix custody levels- OCCC Staff is concerned with the property for medium, level, as the maximum would get same. One large unit at OCCC depends on how we want to keep them. Commissioner Clarke stated it is his experience with maximum institutions is can the perimeter secure against maximum inmates- yes it can. Internally no difference in how you treat them, only transporting maximum vs. medium custody levels is different. ADC Mici agreed and stated there is no difference- we do so by risk level. Level A's would no go below maximum as they are not eligible. Deputy Superintendent Ferreira will do a comparison on property. How many inmates who score out at maximum with mental health behavior issues? ADC Mici stated she will look at that information today. ADC Marshall stated that she will put together a plan. DC Duval stated there may be issues with union if we treat inmates definitely. ADC Marshall stated Larry Weiner will be meeting with MHM to discuss the classification tool, clinical needs for outpatient/inpatient or residential based on clinical observation. Classification to OCCC- we have 1800 inmates broadly identified by DLC- for movement to OCCC- one in/one out basis. OCCC need 200 inmates to run Industries and permanent workforce. There are 31 rooms that are doubled. The Commissioner asked what our need for mental health beds are. DC Madden responded it's difficult to say as we have 2400 open mental health cases DOC wide, we don't' that many as they can function elsewhere. This is for must need, intensive treatment. Looking at 620 beds for mental health. Also be looking at staffing as well. Due to the new class graduating. OCCC can expect recruits.  Do we want to do away with classification due to the security level. ADC Marshall stated she thinks we need to do dual facility. |

48

| | | | |
|---|---|---|---|
| | | | Commissioner Clarke stated he has no problem with calling it a treatment facility, but if have maximum inmates there, we need to ensure same standards apply for security levels. DC Madden stated we'll formalize a plan for the Commissioner to review. |
| 1/13/10 | E | | Suicide Prevention – mandatory standard required at all facilities. There are annual training requirements for all staff with offender supervision.  There is E-learning for non-security staff.  Mental Health developed a two-page bullet point appendix for suicide awareness and prevention that will be a permanent part of the 512 policy.  Briefings will remain on post orders for a two-week period.  It must be documented that staff have reviewed the briefings/post orders.  Flash page on the network will be provided.  Every two weeks these will be uploaded to the post orders. Reminders will be put out.  Documentation for the ACA folder will be the training credits entered by the training officer. |

**Consultants**

| Document | Bates Numbers |
|---|---|
| Massachusetts Governor's Commission on Correction Reform Recommendation #12, Dedicated External Review of Inmate Health and Mental Health Services | 2(e) 1 – 2(e) 113 |
| Hayes, Linday M., "Technical Assistance Report on Suicide Prevention Practices within the Massachusetts Department of Correction," January 31, 2007 with February 1, 2007 cover letter. | 2(e) 113 (duplicate number) -178 |
| Corrective Action Plan (2/12/07) | 2(e) 179-197 |
| DOC Press Release – Hayes Report (2/21/07) | 2(e) 198-203 |
| DOC Update of Hayes Report Recommendations (3/9/07) with cover memorandum from Commissioner Dennehy to Undersecretary Heffernan, | 2(e) 204-217 |
| DOC Update of Hayes Report Recommendations, Bi-weekly Report # 2 (3/23/07) | 2(e) 218-222 |
| DOC Update of Hayes Report Recommendations, Bi-weekly Report # 3 (3/23/07), with cover memorandum from Commissioner Dennehy to Undersecretary | 2(e) 223-231 |

49

| Heffernan (3/30/07) | |
|---|---|
| Corrective Action Plan: Progress Review and Compliance Status (4/9/07) | 2(e) 232-237 |
| DOC Update of Hayes Report Recommendations, Bi-weekly Report # 4 (4/6/07), with cover memorandum from Commissioner Dennehy to Undersecretary Heffernan (4/13/07) | 2(e) 238-246 |
| DOC Update of Hayes Report Recommendations, Bi-weekly Report # 5 (4/20/07), with cover memorandum from Commissioner Dennehy to Undersecretary Heffernan (4/25/07) | 2(e) 247-257 |
| Update: Implementation of Hayes Report Recommendations (8/29/07) | 2(e) 258-267 |
| November 1, 2007 Interdepartmental Service Agreement between the Executive Office of Administration and Finance and the Department of Correction relating to the Hayes Report. | 2(e) 268-274 |
| MGT of America, Inc., "A Presentation to the Massachusetts Department of Correction for the Comprehensive Operations Assessment" (relevant portions only) | 2(e) 275-295 |
| Hayes renovations at MCI-Cedar Junction and MCI-Framingham. Employee home address and personal identifiers are redacted. Reference to a recommendation from Dr. Metzner in 1/28/10 e-mail from Allison Hallett to Peter Macchi is redacted. | 2(e) Consultants 1-466 |
| Watch Cell Assessment (February 2007). Documents provided only for maximum security prisons and medium security prisons with special management units. Photographs are not provided for reason of security. Copy of Hayes report included in Watch Cell Assessment not provided as redundant. | 2(e) Consultants 467-717 |
| Memorandum, Ronald Duval to James Bender re: Addendum to 102 DOC 216, Training and Staff Development (4/30/07) | 2(e) Hayes Training 114-115 |
| Suicide Prevention, Intervention and Reaction Recruit Training/Pre-service (March 2007) | 2(e) Hayes Training 116-221 |
| Suicide Prevention, Intervention and | 2(e) Hayes Training 116-221 |

| | |
|---|---|
| Reaction Recruit Training/Pre-service (March 2007) | |
| Hayes Project at MCI-Cedar Junction, Memorandum from Jeffrey J. Quick to Pamela Gerrior (6/30/07) and purchase documents | 2(e) Hayes Training 222-236 (Note: mislabeled as "training") |
| Department Training Plan, TY 2010, Table of Contents and Appendix V, Suicide Prevention/Intervention & Mental Illness | 2(e) Hayes Training 237-265 |
| Memorandum, Jason McCall to DOC, UMass and MHM staff re: Suicide Prevention (11/2/09) | 2(e) Hayes Training 266-267 |
| MCI-Cedar Junction Labor/Management Meeting Minutes 1(0/30/09) – Non-Responsive Entries Redacted | 2(e) Hayes Training 268-302 |
| March 10, 2006 Testimony of Commissioner Dennehy, Joint Committee on Mental Health & Substance Abuse | 2(e) Hayes Training 296-301 |
| Commonwealth of Massachusetts Division of Capital Asset Management, Corrections Master Plan, Draft Report September 2009 | Relevant portions to be provided upon the release of the report. |

**REQUEST 2(f) – Segregation and Special Unit Review Documents**

Documentation concerning any "morning meeting" or other segregation review meeting of DOC and/or MHM clinical staff where either the segregation status of, or provision of mental health services to, Prisoners with Mental Disorders housed in any of the DOC's segregation units and/or maximum security residential program designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial) was addressed (hereinafter "meeting or meetings"). This request is intended to encompass the (sic) all individuals in attendance at of (sic) any such meetings, any formal minutes of any such meetings, and any notes taken during the meetings by any of the individuals in attendance at the meetings, to the extent that those documents are available in paper form.

**RESPONSE 2(f) –Segregation and Special Unit Review Documents**

Objection    This request is overly broad to the extent that it seeks documents pertaining to "maximum security residential program designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial)." The term "Mental Disorder" encompasses all "Mental Disorders" categorized and described by the current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"). The Department's maximum security Secure Treatment Program ("STP" and Residential Treatment Unit ("RTU") are designed and provided to provide services for a selective sub-set of prisoners with "Mental Disorders." Further, this request is overly broad and confusing to the extent that it seeks documents pertaining to "other prisoners

51

for whom such units may be beneficial." As this request is structured, the reference to "other prisoners" appears to encompass prisoners who do not have Mental Disorders, and therefore, would not have need for mental health treatment services in maximum security residential programs.

Notwithstanding this objection, and without waiver thereof, the following documents are provided:

| Prison | Document | Bates Numbers |
|---|---|---|
| **SBCC** | SBCC Daily Triage Meeting Minutes (Mental Health) (3/17/08 - 2/25/10) | 2(f) SBCC Daily Triage 1-1074 |
| | SBCC Daily Management Briefing Minutes Medical Mental Health (6/10/09 – 2/26/10) (non-mental health entries redacted) | 2(f) SBCC 1-539 |
| | SBCC RTU MHM Weekly Triage Minutes (Samples 11/3/09, 11/9/09, 11/10/09, 11/12/09, 11/19/09, 11/20/09 and 11/24/09) | 2(f) SBCC 540-546 |
| | SBCC Deputy Superintendent of Classification & Programs HSU Staff Meeting Minutes 5/18/05, 7/6/05, 9/7/05, 11/18/05, 11/9/05 (agenda), 12/7/05 (agenda), 12/16/05, 11/1/06, 1/5/06 (agenda), 3/8/06, 4/13/06, 7/26/06, 6/14/06, 6/21/06, 11/5/08 to 2/17/10) (non-mental health entries redacted); 11/26/06; 12/13/06; 12/20/06; 1/3/07; 1/10/07; 1/17/07; 1/17/07; 1/31/07; 2/21/07; 2/28/07; 3/8/07; 3/14/07; 3/21/07; 3/28/07; 4/4/07; 4/5/07; 5/2/07; 5/30/07 | 2(f) SBCC 547-699; 874-878; 883-885; 889; 1280-1309 |
| | SBCC Deputy Superintendent of Classification & Programs Staff Meeting Minutes (9/14/05 – 9/24/08) (non-mental health entries redacted) | 2(f) SBCC 700-873; 879-882; 886-888; 890-905 |
| | SBCC Senior Staff Meeting Minutes 3/17/08-4/27/09; 1/2/09-6/1/09; 9/3/08-12/31/08 | 2(f) SBCC 906-1279; 1310-1590; 1591-1789; 1790-1917; 1929-2717. Note: 1918-1928 are duplicates. |
| | SBCC STP Mental Health Treatment Plan Review (Sample, James Burns 2/16/10) | 2(f) SBCC STP Samples 1-4 |
| | SBCC STP Daily Triage Meeting Log (Sample 1/11/10) | 2(f) SBCC STP Samples 5 |

52

|  | SBCC STP Daily Triage Meeting Minutes (Samples 3/6/09, 4/29/09) | 2(f) SBCC STP Samples 6-7 |
|  | SBCC STP Weekly Door Sheet (Sample Dennis Hardy, 1/3/10 – 1/9/10), 1/17/10 – 1/23/10 | 2(f) SBCC STP Samples 8-9 |
|  | SBCC STP Informational Report (Sample James Burns 3/6/10) | 2(f) SBCC STP Samples 10 |
|  | SBCC STP Clinician Mental Health Statistics (Samples Kristin Dame 2/17/10; Courtney Hagan 2/24/10; Stacey Sparks 2/26/10) | 2(f) SBCC STP Samples 11-13 |
|  | SBCC STP Clinician Rounds Sheets (Sample 12/29/09) | 2(f) SBCC STP Samples 14-15 |
|  | SBCC STP Weekly Participation Log (Sample James Burns 3/1/10 – 3/5/10) | 2(f) SBCC STP Samples 16 |
|  | SBCC STP Program Schedule (Sample 3/8/12 – 3/12/12) | 2(f) SBCC STP Samples 17-18 |
|  | SBCC STP Inventive Program Policy Final Draft (1/15/09) | 2(f) SBCC STP Samples 19-20 |
|  | SBCC STP Incentive Program Chart (Sample 1/1/10 – 1/7/10) | 2(f) SBCC STP Samples 21 |
|  | SBCC STP Incentives List (Sample 1/8/10) | 2(f) SBCC STP Samples 22 |
|  | SBCC STP Incentive Program Order Form (Sample Paul Allen 1/1/10 – 1/7/10) | 2(f) SBCC STP Samples 23 |
|  | SBCC STP Memorandum from Roland Rheault to Staff and Inmates re: Tier Tables (6/24/09) | 2(f) SBCC STP Samples 24 |
|  | SBCC STP Memorandum from Roland Rheault & Kristin Dame re: Tier Tables (10/30/09) | 2(f) SBCC STP Samples 25 |
|  | SBCC STP Unit Runner Guidelines and Restrictions (1/6/10) | 2(f) SBCC STP Samples 26 |
| **MCI-Shirley** | *Documents will be provided when obtained* |  |
| **NCCI** | SMU Reviews (9/14/05 – 3/3/10) (non-mental health entries redacted) | 2(f) NCCI 230-2020; 2(f) Concord (Mislabeled) 1-118 |
|  | NCCI Senior Staff Meeting Minutes (2/14/07 – 3/3/10) (non-mental health entries redacted) | 2(f) NCCI 1-229 |
| **MCI-Concord** | *Documents will be provided when obtained* |  |
| **MCI-Framingham** | Labor-Management Meeting Minutes 12/15/09 and 1/26/10 entries re: | 2(f) Framingham 1-6 |

53

| | | |
|---|---|---|
| | electric razors. Non-responsive entries are redacted. | |
| | *Other documents will be provided when obtained* | |
| **MCI-Cedar Junction** | Morning Meeting Minutes (9/15/05 – 11/15/05; 2/13/07 – 12/31/07; 1/2/08-12/31/08; 1/2/09 – 12/31/09; 1/4/10 – 3/11/10) | 2(f) Cedar Junction 1-1744 |
| **MCI-Norfolk** | SMU Reviews (IMS) (1/3/06 – 3/1/10) (non-mental health entries redacted) | 2(f) Norfolk 1-4413; 1-137 (duplicate numbers in error for January through March 1, 2010) |
| **OCCC** | Morning Briefing Minutes 2008-2010 (non-mental health entries redacted) | 2(f) OCCC 1-322; 456-657 (Note SBCC documents were mislabeled as 2(f) OCCC 323-455) |
| | SMU Reviews 2005-2007 (non-mental health entries redacted) | 2(f) OCCC 658-1166 |
| | Weekly Triage Meetings (with notes of Carol Lawton) | 2(f) OCCC 1-80 (Note: duplicate numbers) |
| | RTU Weekly Triage Minutes | 2(f) OCCC 81-276 (Note: duplicate numbers) |
| | SMU Reviews 2005 | 2(f) OCCC 277-301 (Note: duplicate numbers) |
| | Weekly Triage Meetings (non-mental health entries redacted) | 2(f) OCCC 302-495 (Note: duplicate numbers) |
| | Morning Meeting Minutes (non-mental health entries redacted) | 2(f) OCCC 496-900 (Note: duplicate numbers) |
| | SMU Reviews (non-mental health entries redacted) | 2(f) OCCC 901-939 (Note: duplicate numbers) |
| | SMU Reviews (non-mental health entries redacted) | 2F OCCC 901-2652 |

Defendants also refer Plaintiff to the following:

Response 2(a) – STP and RTU forms, listed therein.

**REQUEST 2(g) –Case Conference Minutes and Notes**

54

Case conference minutes and notes concerning any Prisoner with a Mental Disorder in segregation or a maximum security treatment unit or program designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial).

## RESPONSE 2(g) –Case Conference Minutes and Notes

Objection    This request is overly broad to the extent that it seeks documents pertaining to "maximum security residential program designed for Prisoners with Mental Disorders (and other prisoners for whom such units may be beneficial)." The term "Mental Disorder" encompasses all "Mental Disorders" categorized and described by the current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"). The Department's maximum security Secure Treatment Program ("STP" and Residential Treatment Unit ("RTU") are designed to provide services for a selected sub-set of prisoners with "Mental Disorders." Further, this request is overly broad and confusing to the extent that it seeks documents pertaining to "other prisoners for whom such units may be beneficial." As this request is structured, the reference to "other prisoners" appears to encompass prisoners who do not have Mental Disorders, and therefore, would not have need for mental health treatment services in maximum security residential programs.

To the extent that the request encompasses case conferences described by 103 DOC 601.06(3), defendants state that such case conference notes are maintained in the individual medical records, not separately. The Department of Correction does not maintain a list of prisoners who have been the subject of medical or mental health case conferences. Review of each individual medical record to identify each prisoner who had a case conference addressing mental health issues since September 15, 2005 would be unduly burdensome.

Notwithstanding this objection and without waiver thereof, defendants refer plaintiff to the following:

> Response 2(f) - Sample Triage Notes SBCC RTU;
> Response 2(f) - Sample Triage Notes SBCC STP.

## REQUEST 2(h) – Current DOC Initiatives

To the extent not already encompassed by the above requests, all documents concerning the various units and initiatives currently being undertaken by DOC to address the issues raised in the Complaint, as reflected in DOC's representations to the Court in its January 15, 2010 submission (the unredacted version). These include:

(1)    the development and operation of the secure Treatment Program ("STP");
(2)    the development, operation and relocation of the maximum security Residential Treatment Unit;
(3)    the development of a Behavioral Management Unit ("BMU") at MCI-Cedar Junction;

55

    (4)    estimates of the number of residential level treatment beds that would be necessary to allow DOC to adopt a formal exclusionary rule to preclude the confinement of Prisoners with Mental Disorders beyond an established period of time;

    (5)    the development of a transition housing unit at SBCC: and

    (6)    all documents concerning the "verbal recommendation(s)" (and written, if any) made by Dr. Metzner during his December 7 and 8, 2009 "consultation" with the DOC, as described in the January 15, 2010 submission, and DOC's ongoing response(s) thereto.

## RESPONSE 2(h) – Current DOC Initiatives

<u>Objection</u> - Documents concerning current ongoing initiatives by the Department of Correction to improve the provision of mental health services to fall within the scope of the attorney-client privilege. Documents will be provided when final plans are established. Notwithstanding this objection, and without waiver thereof, the following documents are provided:

(1)    <u>The development and operation of the secure Treatment Program ("STP")</u>

    Documents pertaining to the STP are provided in the responses to Section 2(a) and Section 2(f). The following documents are also provided:

| Document | Bates Numbers |
|---|---|
| E-Mail, Anthony Mendonsa to Jeffery Guerin & others, re: STP Yard Access (4/21/10) | 2(h)(1) 1 |
| E-Mail, Roland Rheault to Thomas Dickhaut, re: New Wall (5/5/10) | 2(h)(1) 2 |
| E-Mail, Roland Rheault to Thomas Dickhaut, re: Yard Access (6/8/10) | 2(h)(1) 3 |
| Draft STP Program Description Manual | 2(h)(1) 4-17 |
| Draft STP Guidelines for Phase Progression & Program Completion | 2(h)(1) 18-19 |
| Draft STP Incentives/Matrix Table | 2(h)(1) 20-21 |
| SBCC STP Program Outline | 2(h)(1) 22-25 |

(2)    <u>The development, operation and relocation of the maximum security Residential Treatment Unit</u>

    Documents pertaining to the Maximum Security RTU are provided as set forth in the responses to Section 2(a) and Section 2(f). The following documents are also provided:

| Document | Bates Numbers |
|---|---|
| Memorandum, Commissioner Clarke to Secretary Burke | 2(h) OCCC 4 |

56

| | |
|---|---|
| re: dedicated facility (8/15/08) | |
| Memorandum, Assistant Deputy Commissioner DiPaolo v. Commissioner Clarke re: RTU property (3/10/10); Memorandum, Superintendent O'Brien to Assistant Deputy Commissioner DiPaolo, re: RTU property. | 2(h) OCCC 1-2 |
| OCCC Mission Change Staff Training Outline | 2(h) OCCC 3 |
| Residential Treatment Unit – OCCC -- Program Outline | 2(h) OCCC 5-9 |
| Training Plan Proposal OCCC Mission Change January 2010 | 2(h) OCCC 10-12 |
| Residential Treatment Unit – OCCC – 24-Hour Specialized Training Program Outline | 2(h) OCCC 13-15 |
| Minutes 12/15/09 Meeting | 2(h) OCCC 16 |
| Program Development Agenda (12/15/09) | 2(h) OCCC 17-20 |
| Mental Health Classification Form | 2(h) OCCC 21 |
| Memorandum, Commissioner Clarke to ELT re: EGT Expansion (6/3/10) | 2(h) OCCC 22-23 |
| RTU EGT Procedures | 2(h) OCCC 24 |
| EGT Document | 2(h) OCCC 25 |
| Memorandum, Commissioner Clarke to Inmates re: EGT Expansion (6/3/10) | 2(h) OCCC 26-28 |

(3)   The development of a Behavioral Management Unit ("BMU") at MCI-Cedar Junction

Objection - Documents concerning current ongoing initiatives by the Department of Correction to improve the provision of mental health services to fall within the scope of the attorney-client privilege. Documents will be provided when final plans are established. Defendants object further to providing blueprints and engineering documents for the 9-Block Unit at MCI-Cedar Junction because such documents would reveal security sensitive information about the physical structure of the unit. Notwithstanding this objection, and without waiver thereof, defendants produce the following:

| Behavior Management Unit Documents | Bates Numbers |
|---|---|
| MCI-Cedar Junction Labor/Management Meeting Minutes (4/6/10) – Non-responsive entries redacted. | 2(h)(3) 1-3 |
| MCI-Cedar Junction Labor/Management Meeting Minutes (5/11/10) – Non-responsive entries redacted. | 2(h)(3) 4-6 |
| Minutes, Behavior Management Unit meeting (3/1/10) (Security sensitive information redacted) | 2(h)(3) 7-9 |
| Minutes, Behavior Management Unit meeting (3/30/10) | 2(h)(3) 10-13 |
| Minutes, Behavior Management Unit meeting (4/8/10) (Security sensitive information redacted) | 2(h)(3) 14-17 |
| Minutes, Behavior Management Unit meeting (4/16/10) (Security sensitive information and redacted) | 2(h)(3) 18-20 |
| Minutes, Behavior Management Unit meeting (4/22/10) (Security sensitive information redacted) | 2(h)(3) 21-23 |

57

| Minutes, Behavior Management Unit meeting (4/29/10) (Security sensitive information redacted) | 2(h)(3) 24-26 |
| Minutes, Behavior Management Unit meeting (5/5/10) | 2(h)(3) 27-30 |
| Minutes, Behavior Management Unit meeting (5/14/10) (Security sensitive information redacted) | 3(h)(3) 31-33 |
| Minutes, Behavior Management Unit meeting (5/24/10) (Security sensitive information redacted) | 2(h)(3) 34-36 |
| Minutes, Behavior Management Unit meeting with MCOFU E-Board (5/27/10) (Security sensitive information redacted) | 2(h)(3) 37-39 |
| Minutes, Behavior Management Unit meeting (6/7/10) (Security sensitive information redacted) | 2(h)(3) 40-42 |

(4)     Estimates of the number of residential level treatment beds that would be necessary to allow DOC to adopt a formal exclusionary rule to preclude the confinement of Prisoners with Mental Disorders beyond an established period of time.

The term "Mental Disorder" encompasses all "Mental Disorders" categorized and described by the current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"). The Department's maximum security Secure Treatment Program ("STP" and Residential Treatment Unit ("RTU") are designed to provide services for a selected sub-set of prisoners with "Mental Disorders," not to all prisoners with "Mental Disorders."

At this time, there are no documents responsive to this request. A formal determination of the number of beds providing a "residential treatment unit" level of care to permit the adoption of a formal "exclusionary rule" is necessarily dependent upon several factors, including (1) the admission criteria each unit; (2) the number of prisoners who meet the admission criteria; (3) the established maximum period of segregation confinement prior "exclusion," and (4) the establishment of any exceptions. Defendants will supplement this response when information is available.

(5)     The development of a transition housing unit at SBCC.

Objection - Documents concerning current ongoing initiatives by the Department of Correction to improve the provision of mental health services to fall within the scope of the attorney-client privilege. Documents will be provided when final plans are established.

| Document | Bates Numbers |
|---|---|
| SBCC Transition Unit Inmate Orientation Booklet (5/7/10) | 2(h)(5) 1-5 |
| SBCC Transition Unit Institutional Procedures (5/7/10) | 2(h)(5) 6-10 |
| Transition Unit description PowerPoint slides | 2(h)(5) 11-12 |

58

(6)    All documents concerning the "verbal recommendation(s)" (and written, if any) made by Dr. Metzner during his December 7 and 8, 2009 "consultation" with the DOC, as described in the January 15, 2010 submission, and DOC's ongoing response(s) thereto.

Objection - All written communications with Dr. Metzner have been by Department of Correction counsel. Meetings with Dr. Metzner have been convened with Department of Correction Counsel present. All recommendations provided by Dr. Metzner in connection with his December 7 and 8, 2009 site visit were oral. All communications with Dr. Metzner are privileged. Counsel's notes of Dr. Metzner's recommendations constitute attorney work product. The scheduling order requires expert designation and disclosure pursuant to Fed.R.Civ.P. 26(a)(2) on February 7, 2011. At that time, we will provide any required non-privileged information.

### REQUEST 2(i) – Morbidity and Mortality Reviews

Documents concerning the morbidity and mortality reviews performed by the DOC or its agents during the time period addressed in Paragraph #1, above, including the reviews themselves.

### RESPONSE 2(i) – Morbidity and Mortality Reviews

By the February 2, 2007 cover letter from Charles W. Anderson, Jr., Esq. to Karen O. Talley, Esq., the Department of Correction provided the Disability Law Center with the following mortality reviews:

1.    Death investigation packet for
2.    Death investigation packet for     _REDACTED_
3.    Death investigation packet for
4.    Quality Assurance Mortality Suicide Review for
5.    Quality Assurance Mortality Suicide Review for
6.    Quality Assurance Mortality Suicide Review for     _REDACTED_   and
7.    Quality Assurance Mortality Suicide Review for

Upon the issuance of a mutually agreeable protective order, DOC will provide the mortality reviews listed below. Additionally, as set forth in Attorney Anderson's February 2, 2007 letter, the provision of the Quality Assurance Mortality Suicide Review for '  _REDACTED_  : will require a release from Mary Peters, the executor for Michael Keohane, or a court order.

| Mortality Review Document | Bates Numbers |
| --- | --- |

REDACTED

59

REDACTED

REDACTED

REDACTED

## REQUEST 2(j) – IMS Segregation Contraindication Notations

Documents reflecting the identity of each prisoner for whom a notation has been made on the IMS "Substance Abuse/Mental Health History" screen, as required by 103 DOC 650.12, that segregation is contraindicated, and any action taken as a result of that notation, including the subsequent "progress notes" and other "assessments required by the policy.

## RESPONSE 2(j) – IMS Segregation Contraindication Notations

In 103 DOC 650.12 reference to the IMS "Substance Abuse/Mental Health History" screen is as follows:

C.     A qualified mental health professional shall personally interview and prepare a written report on any inmate remaining in disciplinary segregation, administrative segregation (including placement on AA/PI status) or the DDU for more than thirty (30) days.  If confinement continues beyond thirty (30) days, a mental health assessment, by a qualified mental health professional, shall be made following 90 days of confinement and every 90 days thereafter unless more frequently if prescribed by the medical doctor or Director of Mental Health. Documentation of these assessments shall be entered on the Mental Health/Substance Abuse History screen in IMS.

The Mental Health Substance Abuse History screen is reprinted below:



The purpose of the IMS screen is to document medical restrictions for prisoners who are confined to Special Management Units or the Departmental Disciplinary Unit. The "Restrictions" button at the bottom of the form opens a second screen entitled "Medical Restrictions". The "Medical Restrictions" screen is reprinted below (with identifying information redacted).



Restrictions are listed in a "drop down" menu. In addition to the restrictions depicted on the screen reproduction above, the list of restrictions also includes: "Feed In", "Foot Basin", "Handicapped Cell", "Head Scarf", "Hearing", "Hernia Belt", "Infirmary", "Knee Sleeve", "Light Work", "Medical Van", "Mobility", "No Ankle Restraints", "No Cotton Blankets", "No Handcuffs", "No Hvy Heig/Mach", "No Waistchains", No Wool Blankets", "No Work", "No Lift Above 20", "No Lift Above 50", No Running", "Prescipt. Sun Glasses", "Prosthetic Device", "RTU", "Recreation Restriction", "Single Level", "Single Room", "Vehicle w/ Car Seat", "Visual", "Walker", "Wheelchair". Mental health contraindications to segregation are documented in individual medical records. Reviewing each medical record for prisoners with open mental health cases for mental health contraindications to segregation would be unduly burdensome.

## REQUEST 3 – Additional Documents

### Outstanding Requests for Prisoner Records

Defendants have responded to all DLC requests for individual prisoner records submitted outside the scope of formal discovery. Defendants will respond upon receipt of additional requests from DLC.

### Inmate Management System ("IMS") Material

62

DLC has requested material describing the content of the Inmate Management System ("IMS"). DOC does not maintain a standard set of IMS "screen shots." In order to provide DLC with information regarding the content and capability of IMS, the following sections of the IMS Manual are provided:

| IMS Document | Bates Numbers |
| --- | --- |
| IMS Manual Table of Contents | 3 IMS 1 |
| IMS Appendix A – IMS Reports (February 2009) | 3 IMS 2-16 |
| Working within the IMS System (December 2007) | 3 IMS 17-29 |
| Administration (July 2003) | 3 IMS 30-48 |
| Incidents (May 2004) | 3 IMS 49-59 |
| Medical (July 2003) | 3 IMS 60-73 |
| Movement (July 2003) | 3 IMS 74-79 |
| Unit Operations (July 2003) | 3 IMS 80-111 |

Please do not hesitate to contact me if you have any questions.

Very truly yours,

William D. Saltzman

Encl.