# Exhibit B

C TO JUDGE  KW

HONORABLE BARBARA J. ROTHSTEIN

FILED ____ ENTERED
____ LODGED ____ RECEIVED

AUG 21 1998   KN

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

SEAN G. DUFFY, et al.,          )
                                )      No. C92-1596R
              Plaintiffs,       )      No. C93-637R
                                )
     v.                         )      STIPULATION AND ORDER
                                )
CHASE RIVELAND, et al.,         )
                                )
              Defendants.       )
                                )

## I.   STIPULATION

The parties, Defendants Chase Riveland, Joseph Lehman, James
Spalding, Tom Rolfs, Dave Savage, and Craig Yost; Washington
Department of Corrections, through their attorneys, Christine O.
Gregoire, Attorney General, and Daniel J. Judge, Assistant
Attorney General, and Plaintiffs Sean Duffy and Charles Atkins
and the class they represent, through their attorneys, David C
Fathi and Jeff Crollard; and Leonard J. Feldman, Felix Luna, and
Marc P. Charmatz hereby agree that the following Order shall b
entered, subject to the approval of the Court and notice to th
class members. This Stipulation and Order are entered to resolv

STIPULATION AND ORDER  -1

AD- 4789
Compliance

PO Box 40116



1 | and settle Plaintiffs' claims set forth in Plaintiffs'
2 | Consolidated Complaint filed February 10, 1998 under this cause
3 | number.   This stipulation is not to be construed or deemed an
4 | admission by either party regarding liability or violation by
5 | Defendants.   The parties enter into the Stipulation for purposes
6 | of settling disputed contentions and controversies arising from
7 | this action.
8 | Respectfully submitted this ____ day of _____, 1998.

9

10 | COLUMBIA LEGAL SERVICES
11 | DAVID C. FATHI
| WSBA # 24893
12 | JEFF CROLLARD
| WSBA # 15561
13

14

15 | HELLER, EHRMAN, WHITE and
| McAULIFFE
16 | LEONARD J. FELDMAN
| WSBA # 20961
17 | FELIX LUNA
| WSBA #27087
18 | Attorneys for Plaintiffs

ATTORNEY GENERAL'S OFFICE
THOMAS J. YOUNG
WSBA # 17366
DANIEL J. JUDGE
WSBA # 17392
Attorneys for Defendants

19 | II. **ORDER**
20 | This matter having been heard by the Honorable Barbara J.
21 | Rothstein, United States District Judge, the parties having
22 | stipulated to the entry of this order, notice to class members
23 | having been issued, and all comments from class members considered
24 | by the Court, the Court approves and enters the following ORDER:
25 | 1.   This matter was filed on behalf of the named plaintiffs,
26 | and the members of the proposed class against defendants Chase

STIPULATION AND ORDER  -2

AD- 4790
Compliance

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116

1   Riveland, Joseph Lehman, James Spalding, Tom Rolfs, Dave Savage,

2   and Craig Yost; Washington Department of Corrections.

3       2.   The Plaintiffs' Class consists of: "All inmates

4   incarcerated in Washington State Department of Corrections (DOC)

5   facilities now or in the future who are deaf or whose hearing

6   impairment substantially limits a major life activity." The Court

7   finds that the requirements of Fed. R. Civ. P. 23(a) and (b)(2)

8   are satisfied, and certifies this plaintiff class.

9       3.   This order is based upon a fair, reasonable, and adequate

10  settlement agreement, attached to this order as Attachment 1 and

11  incorporated by reference herein in its entirety. This settlement

12  agreement sufficiently protects the class in accordance with Fed.

13  R. Civ. P. 23(e). Therefore, this Court approves the settlement

14  agreement. The Court finds that the relief set forth in the

15  Settlement Agreement is narrowly drawn, extends no further than

16  necessary to correct violations of federal rights, and is the

17  least intrusive means necessary to correct violations of federal

18  rights.

19      4.   In accordance with the terms and conditions of the

20  settlement agreement attached to this order as Attachment 1,

21  Plaintiffs' Consolidated Class Action Complaint is dismissed with

22  prejudice.

23      5.   As set forth in Attachment 1, this settlement agreement

24  may be enforced by appropriate motion in this Court by Plaintiffs

25  or Defendants' counsel after: (1) reasonable notice and an

26  opportunity to correct alleged deficiencies; and (2) the parties

1   have reasonably attempted to confer and resolve their disputes

2   under this agreement through meetings and non-binding mediation.

3       6.  This stipulation and order is not an admission by either

4   party regarding liability or violation of any law by defendants,

5   and this agreement may not be used as evidence in any proceeding

6   other than for the sole and limited purpose of enforcing this

7   agreement.   The parties enter into the settlement agreement for

8   purposes of settling the disputed contentions and controversies

9   arising from this action.

10      7.  The clerk is directed to send copies of this order and

11  Attachment 1 to counsel for plaintiffs and counsel for defendants.

12      DATED this 31st day of _____August_____, 1998.

13

14                          _____
                                        JUDGE

15

16  Presented by:

17

18  THOMAS J. YOUNG WSBA # 17366
    DANIEL J. JUDGE WSBA # 17392
    Assistant Attorney General

19

20  Approved for entry:

21

22

23  DAVID FATHI WSBA # 24893
    JEFF CROLLARD WSBA # 15561
    Attorneys for Plaintiffs

24

25

26  LEONARD FELDMAN WSBA # 20961
    FELIX LUNA WSBA # 27087
    Attorneys for Plaintiffs

    STIPULATION AND ORDER  -4

    AD- 4792
    Compliance

    ATTORNEY GENERAL OF WASHINGTON
    Corrections Division
    PO Box 40116

HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| SEAN G. DUFFY, et al., | ) | No. C92-1596R |
| Plaintiff, | ) | No. C93-637R |
| v. | ) | SETTLEMENT AGREEMENT |
| CHASE RIVELAND, et al., | ) | |
| Defendants. | ) | |

## I.   INTRODUCTION

A.    The parties, defendants Chase Riveland, Joseph Lehman, James Spalding, Tom Rolfs, Dave Savage, and Craig Yost; Washington Department of Corrections, through their attorneys, Christine O. Gregoire, Attorney General, and Daniel J. Judge, and Thomas J. Young, Assistant Attorneys General, and plaintiffs Sean Duffy and Charles Atkins, and the class they represent, through their attorneys, David Fathi and Jeff Crollard; and Leonard Feldman, Felix G. Luna, and Marc P. Charmatz hereby agree that the attached Stipulation and Order shall be entered, subject to the approval of the Court and notice to the class members.     AD- 4793
Compliance

SETTLEMENT AGREEMENT - 1

1  B.   The parties agree that this settlement agreement,

2  together with the stipulation and order to which it is attached,

3  are entered to resolve and settle all claims for injunctive

4  relief, attorneys' fees, and costs stated in Plaintiffs'

5  Consolidated Complaint filed February 10, 1998 under this cause

6  number.

7  C.   This settlement agreement is not an admission by either

8  party regarding liability or violation of any law by defendants,

9  and this agreement may not be used as evidence in any proceeding

10  other than for the sole and limited purpose of enforcing this

11  agreement.   The parties enter into the settlement agreement for

12  purposes of settling the disputed contentions and controversies

13  arising from this action.

14  ## II.  DEFINITIONS

15  A.   Deaf and Hearing-Impaired Prisoners:   All inmates

16  incarcerated in Washington State Department of Corrections (DOC)

17  facilities now or in the future who are deaf or whose hearing

18  impairment substantially limits a major life activity.

19  B.   Defendants: Defendants include the named defendants in

20  this action and their supervisors, officers, agents, successors,

21  employees and the Washington State Department of Corrections

22  (DOC).

23  C.   Plaintiffs:   Plaintiffs are Sean Duffy and Charles

24  Atkins, and all deaf and hearing impaired prisoners as defined

25  above, who are now, or who will in the future be, in the custody

26  of the DOC.

AD- 4794
Compliance

SETTLEMENT AGREEMENT - 2

III.  TERMS AND CONDITIONS OF THIS SETTLEMENT AGREEMENT

A.   Defendants and Plaintiffs and Plaintiffs' class agree that the plan adopted under this settlement agreement provides a fair and equitable settlement of all claims for injunctive relief, attorneys' fees, and costs stated in Plaintiffs' Consolidated Complaint filed February 10, 1998 under this cause number.

B.   On or by September 1, 1998, the Defendants shall implement DOC Policy 490.050, attached to this agreement as Appendix A, incorporated herein by reference.  Thereafter, Defendants and their successors shall maintain and enforce the provisions pertaining to deaf and hearing-impaired prisoners contained in DOC Policy 490.050 in substantially the same terms as indicated in Appendix A.  Nothing in this agreement shall be construed to give Plaintiffs any right to enforce under this agreement language under DOC Policy 490.050 that does not pertain to deaf and hearing impaired prisoners. Nothing in this agreement shall be construed to give individuals who are not Plaintiffs as defined above any right to enforce this agreement.

C.   Plaintiffs agree to cooperate in good faith with all services provided under this agreement subject to an individual plaintiff's right to waive services provided under this agreement and to object in good faith to the adequacy of the accommodation provided.

D.   Within 30 days after entry of the final order of dismissal, Defendants agree to pay Plaintiffs' counsel $150,000.00. Defendants' payment of this sum will resolve and

SETTLEMENT AGREEMENT - 3

AD- 4795
Compliance

ATTORNEY GENERAL OF WASHINGTON
Criminal Justice Division

1  settle all of Plaintiffs' claims for attorneys' fees and costs.

2      E.  Upon acceptance of this agreement by the court in this

3  matter, the parties agree that Plaintiffs' consolidated

4  complaint/class action shall be dismissed with prejudice.

5  However, this settlement agreement may be enforced by appropriate

6  motion in this Court by Plaintiffs or Defendants after: (1)

7  reasonable notice and an opportunity to correct alleged

8  deficiencies; and (2) the parties have reasonably attempted to

9  confer and resolve their disputes under this agreement through

10  meetings and non-binding mediation.

11      F.  This settlement agreement shall be a contract and shall

12  be enforceable in a court of competent jurisdiction according to

13  the law of contracts of the State of Washington.

14      G.  For a three year period, Plaintiffs' counsel shall

15  receive copies of the following documents beginning six months

16  after the execution of this Settlement Agreement, and every six

17  months thereafter:

18    1.  Copies of DOC Policy 490.050, all directives, field instructions, and administrative bulletins implementing that

19  Policy, and any modifications to such Policy, directives, field instruction, or administrative bulletins as pertains to

20  deaf and hearing impaired prisoners.

21    2.  Copies of the notification of rights form given to deaf and hearing impaired prisoners, and any modifications to that

22  form.

23    3.  Copies of grievances filed by deaf and hearing impaired prisoners, and DOC staff responses thereto.

24
25    4.  Copies of written approvals of qualified interpreters who are not certified interpreters and a written summary of the qualifications of such qualified interpreters.

26                AD- 4796
              Compliance

SETTLEMENT AGREEMENT - 4

5.   Defendants shall permit plaintiffs' counsel and plaintiffs' experts reasonable access to the DOC records of members of the plaintiff class.   Plaintiffs' counsel may request copies of additional documents relevant to monitoring defendants' compliance with this Settlement Agreement.

H.   Rejection by the court of this agreement shall render this settlement agreement null and void.

I.   This agreement may be modified at any time by a written and signed document executed by mutual agreement of Defendants and Plaintiffs' counsel.

J.   The parties stipulate, based upon the entire record, that the relief set forth in this Settlement Agreement is narrowly drawn, extends no further than necessary to correct violations of federal rights, and is the least intrusive means necessary to correct violations of federal rights.

K.   In order to give the provisions contained herein an opportunity to be implemented and evaluated, both parties agree not to challenge this agreement for a period of four years.

Executed this 3rd day of June, 1998.


DANIEL J. JUDGE
Attorney for Defendants
WSBA # 17392


THOMAS J. YOUNG
Attorney for Defendants
WSBA # 17366


JOSEPH D. LEHMAN
Secretary, Department of Corrections
State of Washington

AD- 4797
Compliance

SETTLEMENT AGREEMENT - 5

ATTORNEY GENERAL OF WASHINGTON
Criminal Justice Division

1

2   Executed this 4th day of June , 1998.

3

4   DAVID FATHI
    WSBA # 24893

5   JEFF CROLLARD
    WSBA # 15561

6   Attorneys for Plaintiffs

7

8   LEONARD FELDMAN
    WSBA # 20961

9   FELIX LUNA
    WSBA # 27087

10  Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      AD- 4798
        Compliance
26

SETTLEMENT AGREEMENT - 6

ATTORNEY GENERAL OF WASHINGTON
Criminal Justice Division

DEPARTMENT
OF
CORRECTIONS



# POLICY

POLICY NUMBER

490.050

| TITLE | DISABLED OFFENDERS | Page 1 of 11 |

**EFFECTIVE DATE:** September 1, 1998

**SUPERSESSION:**

None

**AUTHORITY:**

General authority of the Secretary of the Department of Corrections to manage and direct the Department, RCW 72.09.050.

**PURPOSE:**

To provide guidelines to identify disabled offenders, to assist disabled offenders with appropriate housing and program opportunities; and to ensure that their constitutional rights are met in a manner consistent with legitimate penological interest.

**APPLICABILITY:**

Department-wide

**DEFINITIONS:**

Assistive Device - An implement prescribed to assist or provide accommodation for disabled offenders. These devices include, but are not limited to: canes, crutches, wheelchairs, hearing aids, corrective lens, etc. Authorized or prescribed assistive devices shall only be removed for "cause."

Certified Interpreter - A visual language interpreter who is certified by the state or is certified by the Registry Of Interpreters For The Deaf to hold the comprehensive skills certificate or both certificates of interpretation and transliteration.

Cause - The necessary removal of an assistive device to ensure the safety of persons, the security of the facility, or to maintain the integrity of an investigation, including collecting the device as evidence in a criminal or disciplinary investigation.

Disability - A physical impairment that substantially limits one or more of the major life activities of an individual.

Disabled Offender - For the purpose of this policy, a disabled offender is an offender who has a severe disability (i.e., Permanent Mobility Impairment, Permanent Hearing Impairment, Permanent Vision Impairment, Permanent Speech Impairment) as defined in this policy.

Effective Access - Means of access that provides the offender an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity. To provide such access, the Department may utilize alternative methods which may be less costly or intrusive to existing programs. The method, auxiliary aid, or service requested by the disabled offender will be given substantial consideration in the decision.

APPENDIX A

AD- 4799
Compliance

DEPARTMENT
OF
CORRECTIONS



# POLICY

POLICY NUMBER

490.050

TITLE

DISABLED OFFENDERS

Page 2 of 11

To ensure effective access to programs, activities, and services, the Department of Corrections (Department) shall, as needed by disabled offenders: 1) make reasonable modifications in policies, practices or procedures; 2) remove barriers to access; and 3) provide auxiliary aids and services. If the action needed to provide effective access would create an undue burden, then the action shall not be required.

P-U-L-H-E-S-D-X-T - A coding system that assigns a functional grade to offenders by utilizing a physical profiling system to evaluate the function of various organs, systems, and integral parts of the body: P - Physical Capability, U - Upper Extremities, L - Lower Extremities, H - Hearing, E - Vision, S - Mental Functioning, D - Dental, X - Functional Capacity, T - Transportation Demand.

Recognized Severe Disabilities:

1. Permanent Mobility Impairments:

   - Permanent Wheelchair-Medical - Offenders with permanent medical conditions (a condition expected to last longer than six months) who use a wheelchair due to a permanent disability and who are currently housed or who require placement in a medical facility because of a medical condition(s).

   - Permanent Wheelchair-Mental Health - Offenders with a mental condition who use a wheelchair due to a permanent disability and need placement in a facility that provides mental health services.

   - Permanent Wheelchair - Offenders who are in wheelchairs due to permanent disability, require little or no medical assistance, can manage their own activities of daily living, and are able to live in an accessible general population setting.

   - Permanent Mobility Impaired (non-wheelchair) - Offenders who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking (e.g., cannot walk 100 yards on a level surface or climb a flight of stairs without a pause). Such an impairment may require the use of a cane, prosthesis, walker, etc.

2. Permanent Hearing Impairments - Offenders who are deaf or whose hearing impairment substantially limits a major life activity.

3. Permanent Vision Impairments - Offenders who are blind or who have a vision impairment not correctable to central vision acuity of less than 20/200, even with corrective lenses.

4. Permanent Speech Impairments - Offenders who have a permanent speech impairment (e.g. indiscernible speech or mute) and who cannot communicate effectively in writing.

5. Qualified Interpreter - a sign language interpreter who: 1) is approved in writing by a certified interpreter as able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary; and 2) promises in writing to abide by the Registry of Interpreters for the Deaf (R.I.D.) code of ethics for sign language interpreters. A qualified interpreter may only be approved by a certified interpreter. A certified interpreter is also a qualified interpreter.

6. TTY - Tele-Typewriter

AD- 4800
Compliance

 

| DEPARTMENT OF CORRECTIONS | | POLICY | | POLICY NUMBER 490.050 |
|---|---|---|---|---|

| TITLE | | |
|---|---|---|
| | DISABLED OFFENDERS | Page 3 of 11 |

7. TDD - Telecommunication device for deaf persons.

8. Undue Burden - An undue burden is defined as: (1) causing fundamental alteration of a service, program, or activity; or (2) causing undue financial and administrative burdens. The decision that an undue burden would result must be made by the Secretary or his designee after considering factors (1) and (2) above. In considering factor (2), the Secretary or his designee shall consider all resources available for use in the funding and operation of the Department's service, program, or activity. If the action would create an undue burden, then the Department shall take other steps to provide effective access.

POLICY:

I. Standards:

A. The following standards are applicable to all DOC facilities that have custody of disabled offenders.

1. Effective Communications:

a. The Department shall take appropriate steps to ensure disabled offenders' communication with staff, other offenders, and where applicable, the public, are as effective as non-disabled offenders' communication with such persons.

b. The Department shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability the equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity.

c. Auxiliary aids which are reasonable, effective, and appropriate to the needs of the offenders shall be provided when simple written or oral communication is not effective. Such aids may include, but are not limited to: certified interpreters, qualified interpreters, readers, sound amplification or tactile devices, captioned television/video text displays, TTYs, taped texts, Braille materials, and large print materials.

d. Although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication. In determining what type of auxiliary aid and service is necessary, the Department shall give substantial consideration to the requests of the individual with disabilities.

e. Disabled Offenders shall be provided effective access to the courts, attorneys, and health care services. Communications for health care services shall maintain the need for confidentiality between the health care provider and the offender. Communications where the offender's life may be in danger, or where there is an expectation of privacy, shall also maintain the need for confidentiality to the offender.

AD- 4801
Compliance

DEPARTMENT
OF
CORRECTIONS

 **POLICY**

POLICY NUMBER

490.050

| TITLE | | |
|---|---|---|
| | DISABLED OFFENDERS | Page 4 of 11 |

II.  General Requirements:

A.  Disabled offenders, to the extent they are able, are responsible for making their needs known to medical and/or classification staff.

B.  To ensure effective access to programs, activities, and services, the Department of Corrections (Department) shall, as needed by disabled offenders: 1) make reasonable modifications in policies, practices or procedures; 2) remove barriers to access; and 3) provide auxiliary aids and services.  If the action needed to provide effective access would create an undue burden, then the action shall not be required.

C.  Facilities that house disabled offenders shall ensure that the offender receives effective access as outlined in this policy and through state or federal law.

D.  Offenders with specified disabilities of a temporary nature or of lesser severity than defined in this policy can be provided effective access while in the general population.  Facilities are responsible for providing housing and programming for these offenders on a case-by-case basis.

E.  Regional Administrators shall assign a coordinator for each region, who shall be responsible for maintaining a resource directory for use in finding assistive devices, qualified and certified interpreters, and other resources that may be necessary to implement this policy.

F.  When a certified or qualified interpreter, or other assistive device or service, is not otherwise required under this policy, nothing in this policy shall be construed to prevent or discourage Department staff from communicating with deaf or hearing impaired offenders through written notes, pantomime, gestures, sign language, or other forms of communication.

G.  An offender may waive services provided for under this policy.  If an inmate requests an interpreter other than a qualified interpreter, such an interpreter may be provided.

III.  Identification:

A.  Identification of disabled offenders shall normally occur during Reception Center Processing.  The extent of the disability and what accommodations are necessary shall be assessed by persons qualified to evaluate the disabled offender's disability and accommodation needs.

B.  An offender may be referred to health care staff when:

1.  The offender voluntarily self-identifies or claims to have a disability;

2.  During interaction with the offender, staff observe signs of a disability; or

3.  Health care or central file record contains documentation regarding a disability.

C.  Health care staff shall conduct a medical evaluation of the offender to verify or rule out the existence of a disability.  The evaluation and findings shall be documented.  The documentation shall be placed in the offender's health record, and on OBTS HS.

AD- 4802
Compliance

DEPARTMENT
OF
CORRECTIONS

 **POLICY**

POLICY NUMBER

490.050

| TITLE | DISABLED OFFENDERS | Page 5 of 11 |

IV. Facility Placement

    A. In those situations where a disabled offender does not have any additional health care problems, the offender shall be placed into a facility consistent with his/her safety and security needs.

    B. Disabled offenders with additional health care concerns should be placed in a facility that has established health care program(s) suited to treat those specific health care concern(s).

V. Tracking

    A. Disabled offenders shall be tracked in the Offender Based Tracking System (OBTS) by (P-U-L-H-E-S-D-X-T) = The Physical Profiling System.

    B. Offenders identified as disabled shall be flagged on the OBTS D I-14 screen.

VI. Safety and Security Concerns

    A. Legitimate safety and security concerns shall take precedence over any accommodation afforded disabled offenders and may result in the temporary or permanent suspension of any accommodation for cause. The Department is not required to provide accommodation for disabled offenders:

        1. If the accommodation poses a threat to the safety and/or security of facility, staff, offenders, or the public;

        2. When the accommodation adversely affects legitimate penological interests such as protection of the health and safety interests of offenders and staff, deterrence of crime, and maintenance of offender discipline;

        3. If the accommodation poses a direct threat of substantial harm to the health or safety of the offender or others, including staff, other offenders or the public; or

        4. If the accommodation would create an undue burden.

VII. General Identification and Notification

    A. Facilities shall develop processes to address and provide for the effective identification and notification of disabled offenders.

        1. An ID card/picture of hearing and visually impaired offenders shall be maintained in an appropriate unit location to ensure that unit staff can easily identify and assist these offenders when needed.

        2. The front of ID cards of deaf and blind offenders will be clearly marked with the words "DEAF" or "BLIND".

        3. Procedures shall be put into effect to instruct staff to contact hearing-impaired offenders, using effective means of communication, to provide access to public address announcements and/or reporting instructions. Visual alerting devices may also be used if feasible.

AD- 4803
Compliance

DEPARTMENT
OF
CORRECTIONS

 POLICY 

POLICY NUMBER

490.050

TITLE

DISABLED OFFENDERS

Page 6 of 11

4. Procedures shall be put into effect instructing staff on proper methods of providing visually impaired offenders with notices, announcements, and other printed materials that offenders need to know.

VIII. Emergencies

A. Facility evacuation procedures shall address and provide for the effective evacuation of disabled offenders.

B. When a disabled offender is assigned to a facility, s/he shall be instructed on local evacuation procedures which address and provide for his/her effective evacuation.

C. Staff are responsible for assisting disabled offenders in an emergency.

IX. Use of Restraints

A. Restraints shall be applied in such a manner as to maintain custody and control of offenders. Offenders whose disability precludes prescribed application\method of restraint equipment shall be provided reasonable modification under the direction of the supervisor in charge to ensure effective application. Offenders who need a sign language interpreter for effective communication shall be allowed use of their hands for signing after staff has determined it is safe to not restrain their hands.

X. Searches

A. Clothed and unclothed body searches shall be conducted in a manner that maintains prudent security practices. The shift supervisor/designee shall provide directions for searching offenders whose disability precludes routine search methods.

XI. Disciplinary Process

A. Disabled offenders shall be provided the same disciplinary process as other offenders with the following exceptions:

1. Offenders shall be provided effective access to these proceedings.

2. Effective communication between staff and disabled offenders in the offender disciplinary process may require other assistive devices to communicate effectively. Such methods include, but are not limited to:

a. A qualified interpreter or reader;

b. Aids such as:

1) Tactile alerting devices,
2) Sound amplification devices,
3) Captioned television/video displays,
4) TTY,
5) Taped texts,
6) Braille materials, and/or
7) Large print materials;

AD- 4804
Compliance



| DEPARTMENT OF CORRECTIONS | **POLICY** | POLICY NUMBER 490.050 |
| --- | --- | --- |

TITLE                    DISABLED OFFENDERS                    Page 7 of 11

    c. Use of a staff advisor.

    3. During major disciplinary hearings, certified interpreters must provide assistance to offenders who because of a hearing or speech impairment cannot readily understand or communicate in spoken language.

## XII. Orientation

A. Upon arrival at a facility, including the Reception Centers, disabled offenders shall be provided an adequate orientation via an effective means of communication including, but not limited to, the attached notice of rights.

## XIII. Telephone Use

A. Facilities shall provide procedures necessary for permanent hearing impaired offenders to have effective access to telephonic communications.

B. The following means of telephonic communication shall be provided to permanent hearing impaired offenders:

    1. TTY: A TTY shall be made available for personal telephone calls between offenders and family/friends and for legal telephone calls with attorneys.

    2. TTY/Voice Relay Services: The TTY/voice relay service allows communication between persons with hearing impairments even when one does not have a TTY. This process is very time consuming because all verbal communication from the hearing person must be teletyped to the deaf person, and the deaf person must teletype the message back to the operator.

    3. TTY calls shall be allowed extended time increments due to the time delay caused by the TTY relay process.

## XIV. Visiting

A. Disabled offenders shall have effective access to visiting consistent with that of other offenders.

## XV. Recreation

A. Disabled offenders shall be provided effective access to recreation. Staff shall be made aware of the identity of disabled offenders and the nature of the disability so they can provide assistance if needed.

## XVI. Property

A. Approved health appliances and/or assistive devices shall not be included in the space limits established for offender personal property.

B. Consideration and approval for the procurement of health appliances and/or assistive devices shall be made by the facility health care manager. Health appliances and/or assistive devices shall be transferred with the offender in accordance with DOC 440.000 Offender Personal Property.



AD- 4805 Compliance

DEPARTMENT
OF
CORRECTIONS

# POLICY

POLICY NUMBER

490.050

TITLE
## DISABLED OFFENDERS
Page 8 of 11

XVII. Issuance of Wheelchairs\Assistive Device(s)

   A.  When an offender is received in the custody of DOC and has personal possession of his\her wheelchair, the offender may request to retain the wheelchair. The Superintendent shall make the final decision based upon whether the device can meet safety and security requirements or can be modified to meet safety and security requirements.

   B.  Any offender who requires the use of a wheelchair, prosthetic device(s), or other assistive device(s) shall be referred to health care services for verification of specific equipment needs.

      1.  Health care shall prescribe a wheelchair and/or assistive device(s) for offender use and shall determine if the equipment needed is temporary or permanent. This requirement shall be documented in the offender's health care record and on OBTS HS.

      2.  The cost of repairs to wheelchair(s) and/or assistive device(s) owned by offenders shall be handled in accordance with the Health Care Plan.

   C.  The Superintendent/designee may, on a case by case basis, permit offenders with customized wheelchairs and/or assistive devices to retain those items following release. In those cases where state owned wheelchairs and assistive devices return to state property upon the offender's release, a DOC representative will assist the offender with obtaining necessary devices from other sources.

XVIII. Offender Programs

   A.  Programs must be modified for disabled offenders. Exclusion shall be based on one of the following criteria:

      1.  The disability presents a valid safety and/or security concern;

      2.  In order to provide the modification for access, it would substantially alter the nature of the program;

      3.  In order to provide modification for access, it would present an undue burden to the facility/Department;

      4.  The offender is unable to perform basic or essential functions of the program; with or without reasonable accommodations, or

      5.  The offender is not qualified for the program.

   B.  Evaluation of an offender's eligibility for a facility program assignment shall be done on a case-by-case basis.

XIX. Program Access Determination

   A.  Disabled offenders shall be evaluated by Health Care Staff and Classification Committee staff for their ability to participate in work, education, or other program activity. Staff qualified to evaluate an offender's disability shall participate in the evaluation of an offender's ability to participate in the program activity.

AD- 4806
Compliance

DEPARTMENT
OF
CORRECTIONS

 POLICY

POLICY NUMBER

490.050

TITLE

DISABLED OFFENDERS

Page 9 of 11

B. The Department shall afford disabled offenders the opportunity to participate in a work program. If the offender has been provided effective access, the offender must be able to perform basic and/or essential functions of the work assignment.

C. Academic assignments should be adaptable to the needs of disabled offenders who can perform the essential functions necessary for achieving the goals of the class and who are otherwise qualified for the class.

XX. Minimum Facility/Pre-Release/Work Release Placements

A. Disabled offenders shall not be precluded from assignment to a minimum facility, pre-release, or work release based solely upon their disabilities. The Department shall evaluate the offender's disability, on a case-by-case basis, in considering assignment to a minimum, pre-release, or work release facility.

XXI. Transportation

A. Special or particular needs of disabled offenders shall be taken into consideration and accessible means of transportation provided. Disabled offenders normally will not be transferred without their special aids or assistive equipment.

XXII. Removal of Assistive Devices

A. Authorized or prescribed assistive devices shall be removed from disabled offenders only for "cause."

1. If an assistive device was used in a serious incident (i.e., assault, weapons manufacture, etc.) or presents a direct and immediate safety and security concern, it may be immediately removed by any custody employee present as soon as it is safe to do so.

2. Department officials may remove assistive devices to curtail use of such devices to violate prison rules, or as part of a sanction from a disciplinary proceeding resulting from such behavior, or both.

   a. A pattern of behavior involving the inappropriate use of an assistive device over a reasonable period of time may result in removal of the device for an indeterminate period. When an assistive device is removed for an indeterminate period, the need to continue removal shall be reviewed initially within one month of removal and at least monthly thereafter. These reviews shall include a medical evaluation of the offender's progress without the device.

   b. If the device is restricted for a determinate period, the offender shall be issued an infraction. The offender shall be referred to the Classification Committee for a hearing for confirmation of the restriction from the assistive device pending adjudication of the disciplinary charges. If the restriction is confirmed and the offender is found guilty, the restriction period shall be assessed according to the offense. The restriction period shall commence on the day the assistive device was first removed from the offender. The need to continue the restriction shall be reviewed every 90 days by the Classification Committee. This review shall include a medical evaluation of the offender's progress without the device.

AD- 4807
Compliance

 

DEPARTMENT
OF
CORRECTIONS

# POLICY

POLICY NUMBER

490.050

3.  The Shift Commander may temporarily authorize a continued disallowance of an assistive device based on cause; however, the steps below must be followed as soon as possible or on the following work day. This process should in no way infringe upon standard procedures for crime scene preservation, evidence collection, emergency response, or any other measure necessary to ensure safety and security.

    a.  Consult the Health Care Manager/designee regarding the offender's ability to function in the cell without the device and explore alternative means of "in-cell" modification (i.e., scoot stools for wheelchairs, etc.)

    b.  Inform the Superintendent/designee of the incident and the options for in-cell modification, and request authorization to remove the device or make a modification.

    c.  If a decision is made to remove the device, the assistive device will be removed and stored in a designated alternate location in the unit. The original assistive device will be made available to the offender when s/he is removed from the cell for yard, escorts, visits, etc.

XXIII. Administrative Segregation/Intensive Management Units

A.  Accessible housing shall be established at designated facilities. Where not currently available, alternative secured housing may be temporarily established in appropriate locations.

    1.  All assistive devices must be approved for retention by the Administrative Segregation/Intensive Management Unit Manager. Decisions to disallow assistive devices shall be made within three working days of placement in accordance with DOC 320.200.

    2.  Whenever it becomes necessary to remove an assistive device from a disabled offender housed in administrative segregation or the Intensive Management Unit to ensure the safety of persons or the security of the facility, the Unit Manager shall ensure the steps in XXII. A. 3. a – c of this policy are followed.

XXIV. Training

A.  Department staff having direct contact with deaf or hearing-impaired offenders shall be trained regarding the special communication needs of deaf and hearing-impaired offenders and this policy.

XXV. Grievances

A.  The inmate grievance system will receive complaints from disabled offenders. Disabled offenders may request through that process accommodations that were not previously provided. Denial of an accommodation based on undue burden shall be made in writing, pursuant to the definition of undue burden above, in response to a grievance. Disabled offenders shall be offered and provided effective access to the grievance system.

REVIEW:

The Policy Coordination Committee shall coordinate the review of Department policies at least every two years and update as needed.

AD- 4808
Compliance

DEPARTMENT OF CORRECTIONS  POLICY 

POLICY NUMBER

**490.050**

TITLE                    **DISABLED OFFENDERS**                    Page 11 of 11

REFERENCES:

DOC Policy 300.380;  DOC Policy 500.000; Americans With Disabilities Act 42 U.S.C. Section 12101 et seq.; Rehabilitation Action of 1973 Section 504(a), as amended, 29 U.S.C.A. Section 794(a)

ATTACHMENTS:

Notice Advising of Rights

_____
Joseph D. Lehman, Secretary

_____
6/2/98
Date

AD- 4809
Compliance