# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

Filed _____ 4:00 PM

AUG 2 0 1997

_____
DEPUTY CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

UNITED STATES OF AMERICA,          )
                                    )
        Plaintiff,                  )
                                    )
              v.                    )
                                    )
CLAY COUNTY, GEORGIA, et al.,       )
                                    )
        Defendants.                 )
                                    )

CONSENT DECREE

TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

II.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . 1

III.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   SUBSTANTIVE PROVISIONS . . . . . . . . . . . . . . . . . 3

      New Jail . . . . . . . . . . . . . . . . . . . . . . . . 3

      Correctional Issues . . . . . . . . . . . . . . . . . . 4
      A.   Staffing and supervision . . . . . . . . . . . . . 4
      B.   Exercise . . . . . . . . . . . . . . . . . . . . . 5
      C.   Religious services . . . . . . . . . . . . . . . . 5
      D.   Reading materials and access to the courts . . . . 5

      Medical, Mental Health, and Suicide Prevention . . . . 7
      A.   Policies and procedures . . . . . . . . . . . . . 7
      B.   Intake screening . . . . . . . . . . . . . . . . . 7
      C.   Sick call . . . . . . . . . . . . . . . . . . . . 8
      D.   Physician care . . . . . . . . . . . . . . . . . . 8
      E.   Medication practices . . . . . . . . . . . . . . . 9
      F.   Mental health care and suicide prevention . . . . 9
      G.   Communicable diseases . . . . . . . . . . . . . . 10

      Environmental Health and Safety . . . . . . . . . . . 10
      A.   General sanitation . . . . . . . . . . . . . . . 10
      B.   Fire safety . . . . . . . . . . . . . . . . . . . 10
      C.   Plumbing . . . . . . . . . . . . . . . . . . . . 11
      D.   Bedding supplies . . . . . . . . . . . . . . . . 11
      E.   Food service . . . . . . . . . . . . . . . . . . 11
      F.   Lighting . . . . . . . . . . . . . . . . . . . . 12

V.    CONSTRUCTION, IMPLEMENTATION, AND TIMING OF COMPLIANCE   12

VI.   STIPULATION PURSUANT TO THE PRISON LITIGATION REFORM ACT,
      18 U.S.C. § 3626 . . . . . . . . . . . . . . . . . . . 14

VII.  TERMINATION . . . . . . . . . . . . . . . . . . . . . . 15

## I.  INTRODUCTION

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345.

2.  Venue in the Middle District of Georgia is appropriate pursuant to 28 U.S.C. § 1391(b).

3.  The United States has met all pre-filing requirements stated in the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 et seq.

## II.  DEFINITIONS

4.  "Plaintiff" shall refer to the United States of America.

5.  "Defendants" shall refer to Clay County, Georgia, the Sheriff of Clay County, in his official capacity, the members of the Clay County Board of Commissioners, in their official capacity, and their agents and successors in office.

6.  The term "Clay County Jail" (Jail) includes the existing Jail as well as any other Clay County institutions built, leased, or otherwise used, to replace the current Jail or Jail components.

7.  The terms "inmate" or "inmates" shall refer to one or more individuals sentenced to, incarcerated in, detained at, or otherwise confined at either the existing Clay County Jail or any institution that is built or used to replace the Jail or any part of the Jail.

8.  "Qualified professional" shall refer to an individual qualified to render requisite and appropriate care, treatment,

1

judgment(s), training and service, based on credentials recognized in a specific field.

## III. BACKGROUND

9.   The Defendant Clay County owns and operates the Jail, located in Clay County, Georgia.

10.   The Defendant Sheriff is responsible for the day-to-day operation of the Jail.  In his official capacity, the Sheriff has the custody, rule, and charge of the Jail and Jail inmates.

11.   On November 18, 1994, United States Department of Justice attorneys and their consultants in the fields of penology, correctional health care, and environmental health and safety, toured the Jail pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 et seq.  On June 1, 1995, the United States issued a findings letter regarding conditions of confinement at the Jail based upon the Justice Department's investigation and expert tour of the facility.

12.   The United States' findings letter detailed certain constitutional deficiencies.

13.   The parties to this Consent Decree recognize the constitutional rights of inmates confined in the Jail.  These rights include, but are not limited to, the right to: (1) adequate staffing and supervision to ensure reasonable inmate safety, (2) adequate medical and mental health care, (3) a safe and sanitary physical plant which does not pose an unreasonable

2

threat to safety, (4) reasonable opportunity for exercise, and (5) access to the courts including meaningful access to counsel and law materials.

14.   In order to avoid protracted litigation regarding the constitutionality of conditions of confinement at the Jail, the parties agree to the provisions set forth in this Consent Decree.

15.   The parties agree that the provisions of this Decree are a reasonable, lawful and fundamentally fair resolution of this case.

IV.   SUBSTANTIVE PROVISIONS

NEW JAIL

16.   Defendants shall renovate the existing Jail within 90 days of entry of this Decree by removing the current partitions in the existing cell blocks to provide additional square footage available for inmate use.  Defendants shall provide an adequate amount of space per inmate consistent with generally accepted correctional practices.  Additional inmate population shall be housed on a per diem basis in adjoining county facilities having available space.  The Defendants shall continue to maintain the existing Jail in the above-referenced manner and as otherwise provided herein.

The Defendants are currently exploring the feasibility of the construction of a regional jail facility to house its inmates.  The anticipated completion of a regional jail facility is within three (3) years of authorization, provided such a regional jail is authorized.

3

The Defendants may elect to replace the existing jail with a new jail constructed in compliance with American Correctional Association standards, the National Fire Protection Association's Life Safety Code, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. and associated regulations, state and county building codes, and the terms of this Decree.  Such new construction shall be done by qualified, professional contractors.  The Defendants shall consult with the United States during the design of the new or renovated Jail as to the appropriate services and staffing necessary to implement such services.

CORRECTIONAL ISSUES

A.  Staffing and supervision.

17.  Defendants shall ensure that there are at least two qualified jailers on-site per shift.  Rounds will be conducted at least once every half hour at irregular intervals, and shall include logged, visual inspections of all housing areas.

18.  Defendants shall document all incidents involving inmate violence.  Such records shall be maintained and reviewed at appropriate intervals in order to better inform Defendants of patterns of inmate violence so that professionally appropriate measures may be taken.

B.  Exercise.

19.  Inmates shall be given exercise five days a week for one hour a day, outdoors weather permitting.

4

20. Defendants shall allow inmates the equivalent time for indoor exercise in the event weather prevents outdoor exercise.

C. **Religious services.**

21. Inmates shall be provided reasonable access to religious services and consultations approved by the Sheriff. Approval of such religious services and consultations shall not be unreasonably withheld; however, such religious services and consultations shall be limited to recognized religious organizations. Religious services and consultations for interested inmates shall be on a weekly basis.

D. **Reading materials and access to the courts.**

22. At their own expense, inmates may receive by mail directly from publishers, a reasonable number of periodicals, newspapers, books and reading materials which do not pose a threat to security. Such material shall be maintained in the inmate cell blocks as long as it does not create a fire hazard.

23. At no cost to the Defendants, inmates will be permitted to purchase and receive whatever law books and any other legal research materials that they wish. This material may be maintained by the inmates in their cells consistent with security and fire safety requirements.

24. Defendants shall provide inmates with access to legal materials consistent with the following:

> a. a leading law dictionary;
> b. a book on criminal procedure and a book on civil procedure;
> c. a simple treatise on evidence;
> d. a general guide to legal research; and

5

     e.  Court Rules, including mailing addresses of State Courts, United States District Court for the Middle District of Georgia, the Georgia Supreme Court and the Georgia Court of Appeals.

25.  The above listed legal materials shall be maintained in the Chief Jailer's office and made available, upon request by the inmate, between 8:00 a.m. and 5:00 p.m., seven (7) days per week, within 12 hours of a request.  In the event that an inmate is facing a specific court deadline, the Defendants shall make reasonable efforts to allow the inmate additional access to the legal materials, upon request.

26.  Defendants shall develop and implement policies and procedures to provide inmates with access to the legal materials contained in the County Law Library located in the County Courthouse.  The County Law Library shall have available the following legal materials:

     a.  A current copy of the Code of Georgia and an index of the Code;
     b.  A current copy of the Georgia Digest; and
     c.  Georgia Reports and/or Southeastern Reporters.

Such procedures shall ensure that inmates are provided with sufficient time with the legal materials for a reasonable opportunity to conduct legal research.  In the event an inmate is represented by counsel, the Defendants shall not be obligated to provide legal material unless the issue which an inmate wishes to research is independent of the representation provided by counsel.

## MEDICAL, MENTAL HEALTH AND SUICIDE PREVENTION

### A.  Policies and procedures.

27.  Defendants shall contract with the County Health
Department to implement medical policies and procedures that
include, but are not limited to provisions regarding: (1) initial
screening and health appraisals, (2) communicable disease testing
and control, (3) access to medical care and sick call, (4) pill
call and medication management, (5) medical records, (6) staff
training, (7) mental health care, 8) dental care, and
(9) emergency medical care and transport.

### B.  Intake screening.

28.  Contractual services with a Responsible Health
Authority (RHA) shall provide intake screening to include routine
screening of inmates upon arrival for potential medical and
mental health problems including, but not limited to, suicide
risk and communicable diseases.  The contract shall provide that
the policies and procedures shall include a minimum of the
following:

(1) Written sick call request slips.

(2) A collection method without inmate/trustee
involvement, where the request slips go directly to the health
care professional, including collection of oral requests by
illiterate inmates by jailer.

(3) Logging procedures to record each request for sick
call services.

7

(4) Review of inmate request by RHA directly to determine the emergency of the need to be examined.

(5) A method of recording the results of sick calls in inmate records in a generally accepted format, to be maintained separately from custody records and access limited only to authorized personnel.

C.  Sick call.

29.  Defendants' sick call policy shall include an on-site sick call clinic held at least once per week conducted by the RHA.

D.  Physician care.

30.  Defendants shall ensure that there is a RHA in charge of medical care at the Jail.  The RHA must be a qualified medical professional (physician or registered nurse under the supervision of a licensed physician) and should have regular, daily hours. The RHA used should be "on call" and available for telephone consultation during emergencies.  The RHA shall interview and examine patients who submit sick call requests.  Defendants shall enter into a written contract with a RHA to ensure that there is a formal system of RHA supervised medical care for the Jail.  The medical care contract should include provisions for conducting regular physical examinations, health appraisals, providing specialty care, and communicable disease testing.  The RHA must have adequate space, supplies and equipment.

E.   Medication practices.

31.   All medications shall be professionally managed and securely stored at the Jail as directed by the RHA.   The dispensing of such medication shall be restricted to the RHA or physician instructions.   A separate inventory log shall be maintained by Jail personnel of all dispensing and receiving of medication from the RHA and inmate.

F.   Mental health care and suicide prevention.

32.   Defendants' contract with the RHA shall provide mental health sick call services as needed.   Mentally ill inmates shall be housed in an appropriate environment for the supervision and personal safety of the inmate.   Inmates requiring psychiatric hospitalization shall be promptly transported to an adequate hospital facility.

33.   Defendants shall ensure that all staff are trained in recognizing and promptly referring to the RHA or a qualified professional, individuals exhibiting common symptoms of mental illness, mental retardation or suicidal behavior.

34.   Defendants shall ensure that suicidal patients are adequately supervised.   Actively suicidal patients shall be placed under constant, direct observation by adequately trained staff.   For inmates with lower levels of suicide risk, staff shall check on the inmates once every fifteen minutes or more often as necessary.   These checks shall include logged, direct visual observation of the inmate's condition.

9

G.  Communicable diseases.

35.  Defendants' contract with the RHA shall provide for communicable disease testing and referrals for appropriate treatment for all inmates.  Each inmate at the Jail for more than 7 days shall be tested for tuberculosis no later than 14 days after arrival.

ENVIRONMENTAL HEALTH AND SAFETY

A.  General sanitation.

36.  Defendants shall regularly clean and maintain the Jail pursuant to a general housekeeping plan.  Inmates shall be provided cleaning materials on a daily basis, but the Defendants are ultimately responsible for the Jail's cleanliness and physical condition.  Defendants shall document compliance with the housekeeping plan.  Any new Jail or renovated Jail must also be kept clean and in good physical condition.

B.  Fire safety.

37.  Defendants shall provide heat rise smoke detectors throughout the housing areas.

38.  Defendants shall provide automatic notification to the fire department in the event of fire or similar emergency.

39.  Defendants shall immediately develop, based upon consultation with an appropriate professional, written plans for an emergency disaster.

40. Defendants shall continue to maintain and routinely test the emergency generator. Testing compliance will be documented.

41. Defendants shall continue to eliminate all electrical hazards and provide ground fault circuit interrupters where necessary.

C. Plumbing.

42. Defendants shall repair and maintain in good working order all toilets, showers and lavatories.

43. Defendants shall eliminate the 18 inch step leading to each shower stall.

44. Defendants shall continue to ensure the provision of vacuum breakers to prevent back siphonage and water contamination.

D. Bedding supplies.

45. Defendants shall provide to each inmate a mattress, mattress cover, sheets, pillow, blanket, washcloth, and a towel. All bed linen, towels, washcloths, inmate clothes and uniforms shall be cleaned at least once per week.

E. Food service.

46. Food transported from outside establishments must be kept at safe temperatures in insulated, heated, or cooled transport containers. Prepared food shall be served to inmates promptly.

F.  Lighting.

47.  Defendants shall provide at least 20 footcandles of lighting for all housing and work areas.

V.  CONSTRUCTION, IMPLEMENTATION, AND TIMING OF COMPLIANCE.

48.  This Decree shall be applicable to and binding upon all parties, their officers, agents, employees, assigns, and their successors in office.

49.  The Court shall retain jurisdiction for all purposes under this Decree until the Defendants have fully and faithfully implemented all provisions of this Decree and the judgment is discharged.  If Defendants fail to comply with the requirements of this Decree in a timely manner, the United States has the right to seek additional relief from the Court.

50.  Except where otherwise specifically indicated, the Defendants shall complete implementation of all the provisions of this Decree within one hundred and eighty (180) days of the entry of the Decree.

51.  Defendants shall submit quarterly compliance reports to the United States and the Court, the first of which shall be submitted within sixty (60) days after the entry of this Decree. Thereafter, the reports shall be submitted fifteen (15) days after the termination of each quarter continuing until the Decree is terminated.  The reports shall describe the actions the Defendants have taken during the reporting period to implement this Decree and shall make specific reference to the Decree provisions being implemented.

12

52. Defendants shall keep such records as will fully document that the requirements of this Decree are being properly implemented and shall make such records available at the Jail at all reasonable times for inspection and copying by the United States.

53. Defendants shall submit records or other documents to verify that they have taken such actions as described in their compliance reports and will also provide all documents reasonably requested by the United States. As part of this compliance process, documents submitted shall include a daily population count for the Jail, a separate count of the number of inmates in each cell or dorm, and staffing levels.

54. All parties shall bear their own costs, including attorney fees.

55. During the period in which the Court maintains jurisdiction over this action, the United States and its attorneys, consultants, and agents shall have unrestricted access to the Jail, Jail inmates, Jail staff, and documents as necessary to address issues affected by this Decree. The United States' unrestricted access shall not conflict with the orderly operation of the Jail. Nothing in this Decree prohibits discovery pursuant to the Federal Rules of Civil Procedure.

56. Defendants shall immediately explain the terms of this Decree to all persons connected with the Jail, including Jail and medical contractor staff, in order to ensure their understanding of the requirements of this Decree and the necessity for strict

13

compliance with the Decree.  All Jail staff members and other individuals responsible for implementing this Decree shall sign a statement indicating that they have read and understand this Decree.  Such statements shall be retained by the Defendants. Defendants shall require strict compliance with this Decree by their respective employees, agents, assigns, or successors.

57.  Within ten (10) days of the signing of this Decree, the Defendants shall provide continuous notice of this Decree to all inmates by providing a copy to any inmate upon request and by providing a copy to inmates upon incarceration.  In addition, the inmate handbook shall advise inmates of the fact that the Jail is operating under the terms and conditions of a Settlement Decree entered by the United States District Court for the Middle District of Georgia and that upon request, any inmate shall be given a copy of the complete Decree.

VI.  STIPULATION PURSUANT TO THE PRISON LITIGATION REFORM ACT
     (PLRA), 18 U.S.C. § 3626.

58.  For purposes of this lawsuit only and in order to settle this matter, the Defendants stipulate that they have violated certain federal rights of inmates as alleged in the pleadings.  The parties further stipulate and agree that the prospective relief in this Decree is narrowly drawn, extends no further than necessary to correct these certain violations of federal rights set forth in the Complaint, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal

14

justice system.  Accordingly, the parties agree and represent to the Court that the Decree complies in all respects with the provisions of 18 U.S.C. § 3626(a), and may serve as the factual and legal basis for a court order issued pursuant to those provisions.

59.  The issue of liability has not been litigated.  The parties ask the Court to approve this Decree without a full hearing on the merits, on the basis of the United States' Complaint and the above stipulation.

60.  This Decree is not intended to have any preclusive effect except between the parties.  Should the issue of the preclusive effect of this Decree be raised in any proceedings other than this civil action, the parties agree to certify that this Decree was intended to have no such preclusive effect.

VII.  TERMINATION.

61.  The Court shall maintain jurisdiction in this case to ensure that all settlement decree provisions are fully implemented and maintained one (1) year after renovations to the existing jail facility are completed and the Court finds upon a joint motion by the parties that the Defendants fully and faithfully implemented all terms of this Decree.  This Decree shall terminate upon joint motion of the parties upon the election by the Defendants to cease operations of the existing jail facility or upon housing of its inmate population in a regional jail facility.

62.   Notwithstanding provision 61, the Defendants may, at
any time after 6 months of entry of this Decree, unilaterally
move for discharge.  Discharge shall be granted unless the United
States objects in writing within ninety (90) days after receipt
of the Defendants' motion.  If an objection is made, the Court
shall hold a hearing on the motion, and the burden shall be upon
the Defendants to demonstrate that they have fully and faithfully
implemented and maintained all provisions of this Decree.  If the
Defendants meet this burden, the judgment shall be discharged,
the injunctions shall be dissolved, jurisdiction shall terminate,
and the case shall be closed and dismissed with prejudice.

Agreed to by:

COUNSEL FOR UNITED STATES:

Date: August 19, 1997

H. RANDOLPH ADERHOLD
United States Attorney
Middle District of Georgia
P.O. Box U
Macon, GA 31202

ISABELLE KATZ PINZLER
Acting Assistant Attorney
General
Civil Rights Division
United States Department of Justice

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

MELLIE H. NELSON
Deputy Chief
Special Litigation Section

16

*Shanetta Y. Brown Cutlar*

SHANETTA Y. BROWN CUTLAR
DAVID DEUTSCH
CHRISTOPHER N. CHENG
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
(202) 514-0195


COUNSEL FOR DEFENDANTS - CLAY COUNTY, CLAY COUNTY SHERIFF, AND
CLAY COUNTY BOARD OF COMMISSIONERS

Date: _____, 1997

William H. Mills
Clay County Attorney
P.O. Box 565
Blakely, GA 31723

17